UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

ASSATA ACEY, : CIVIL ACTION
    *Plaintiff* :
    v. :
     :
INDUCTEV, :
    *Defendant.* :
     :
     : No. 2:23-1438

## Motion to Reconsider Doc 74

Motion is presented for the court to reconsider or otherwise amend its order denying motions to sanction opposing counsel and to both compel Defendant's production of documents (which includes witness identification) and sanction them for their nonproduction.

## Order on Motion to Sanction Defense Counsel

1. In the third footnote of Doc 74, the court purports its declination to sanction counsel as a declination to sanction "good faith participation in discovery process". (Doc 74, Footnote 3).
2. While this note is construed to reject my concerns of legal advice, it appears to label statements such as "if you were an attorney, the Court would consider sanctioning that kind of behavior" as merely good-faith efforts to coordinate discovery with a pro se plaintiff"; it is unclear how these hypotheticals have any place in discovery coordination involving a Pro Se Plaintiff. (Doc 60, ¶ 6 of Motion to Sanction Counsel, p.10).
3. Additionally, even as these statements appear to the court as being made in good faith, they are also a form of harassment because they are made **with the advanced knowledge that such advice is both unsolicited and unwanted.**
4. I began to complain about the counsel's provision of legal advice as early as 06/30/2023:
    > "15. In the same reply, and in response to a letter to this court where I apologized and requested clarity on stipulations between the parties as unentered in court, the

> Defense saw fit to inform me of the judges in eastern district: "…unlike some other federal district courts are not fans of mail. Will see" (ECF No. 20-4(p.3)).
>
> 16. **I have never understood the appropriateness** of Defense out-of-court complaints to me about attorney Schauer's personal engagements, bias complaints, self-esteem, or beliefs regarding court leaning for mail.
>
> 17. **I am at a loss to understand these communications as professional**, and in the scope of recent actions, **I am unable to process these as not being meant to intimidate me."**
>
> (Doc 22, ¶¶ 15-17, pp. 2-3).

5. Counsel's response to those paragraphs suggested he was aware of my expression of neither wanting his legal advice nor seeing it to be ethically appropriate:

> "… undersigned counsel agrees that the purpose or intent of the cited communications was not understood by Plaintiff to have been offered in the spirit and context in which they were offered." (Doc 24, ¶¶ 16, p. 4).

6. My position has remained the same regarding this:

> 1. "Regarding Attorney Schauer's disclaimer, our prior discussions, and the pending motion: Going forward, **please do not advise me of the regular happenings of court, especially what I should regard as normal;** even if you have good intentions, it is not your job to close the knowledge gap during the litigation of this case, and as stated before--**the conflict of interest is too high for opposing counsel to be offering education on court/litigation customs and rules. Please only explain legal matters as they relate to the availability, objections and positions of your party/clients."** (Email response to counsel on March 15, 2024, Doc 62-4, p.2 (4[th]-to last paragraph)).
>
> 2. "Please indicate to me at your earliest convenience whether your position remains unchanged, so that the court can make a timely determination in this dispute." (Ending of email to counsel on Mar 8, 2024, p. 24 of Doc 60-1).
>
> 3. "Please let me know if your position remains unchanged, so that we can seek clarification from the court." (Email to counsel on Mar 6, 2024(third highlighted portion), p. 8 of Doc 55-1).

    4. "Please consider this and inform me of your party's position." (Email to counsel on February 28, 2024(bottom of page), p. 19 of Doc 60-1).

7. While I understand that concerns of harassment may not be appropriately raised in civil court, the court's declination gives an impression to others that they may continue to assert **personal and potentially biased notions of the unwritten traditions and customs of the court and process to unrepresented persons**—even when asked explicitly to state or explain only their party's position and or objection to specific issues.
8. I respectfully request that the court reconsider its declination and characterization of opposing counsel's communications towards me.

## Order on the Motion to Compel Documents (including witness contact information) and Sanction the Defendant

1. In the first footnote of the court's decision, the court supported its designation of the motion to compel as premature through the Defendant's statement that they "are in receipt of my most recent request and in the process of responding to same". Doc 74, footnote 1.
2. This statement does nothing to address the negligence with which the defendant failed and refused to provide identification for witnesses (last known address, phone number and email) nor does it address the ongoing prejudice suffered by me in coordinating and serving subpoenas to witnesses that I lack correct address information for:

    "21. The Defendant has prejudiced my preparation of the case by denying me vital contact information: there is no evidence that all of these persons would have been unwilling to provide any of the requested information (or to discuss their employment experience) had I been able to ask for it directly.

    22. My efforts to cure the defendant's non-production are costly and continue to be hampered by the defendant: subpoenas must be personally served—without knowing the addresses and numbers of persons, I am forced to scour public databases and make my best guess. This has resulted in lost fees and is likely to cause future losses because I am unable to confirm the best address to find these

>    recipients or use contact information to coordinate the service (Ex. 8-9)."
>
>    (p.6 of Doc 60, ¶¶ 21-22).

3. The defendant is enabled to use witness contact information throughout the duration of this discovery period, and yet my access to this information and ability to use this information during the course of discovery is cut short by their negligence.
4. Even if witness identification is provided 31 days after the request (which would be today, April 5 (request was sent Mar 4, 2024, and March has 31 days), there is still not enough time to give notice of and submit subpoenas to additional witnesses for depositions or document requests.
5. The court also fails to address any prejudice suffered by the defendant's advantage in deposing former employees while they retain access to employment documents and pay information that I do not have:

   > "15. Through their motion to dismiss, and their interrogatories, the defendants acknowledged my pleadings' involvement of the promotion information of those persons and of the relevance of that information to my position." (p. 5 of Doc 60, ¶ 15).

6. Furthermore, the court's decision makes no discussion or mention of prejudice at all or any designation of the defendant's original responsibility to provide this information in a timely manner, nor does it address the apparent falseness of their previous excuse for delaying the production of Teams messages:

   1. "9. At that time, **the then active HR executive Patti Rensel, and former coordinator-now head of HR Diana Wilmes were involved in the discussion and review of my Teams communication with Wendschuh;** both women also acted as company agents to identify and save records that they believed would aid the Defendant against my claims. (Ex.10-11, Rensel addressing recent Teams messaging history between Wendschuh's my accounts, Rensel advising Wilmes to save my email to May Mon Post, Appendix, pp.34-38)." (pp. 3-4 of Doc 72, Supplemental Brief in support of Doc 60, ¶ 9).

2. "37. Therefore, in conjunction with line 9 of this brief, the Defendants (through their acting agents Patti Rensel and Diana Wilmes), not only **knew of the existence of those Teams messages**, not only **made the choice to convert those Teams messages** into PDF format , not only **elected this choice to the deficit of my and the court's time**- but the Defendant was capable of completing production in their preferred format—**without further extension from the court**." (p. 8 of Doc 60 ¶ 37).

7. For these and other reasons, I request that the court reconsider its denial of the motion to compel and sanction the defendant for this production of documents and information and with the details and precedents identified in document 73.

8. In further discussion, I am attaching lines 40-61 of Doc 72 to confirm the court's declination to consider the facts, judicial precedent, and arguments presented in Doc 72:

   40. On 08/23/2023 **the defendant alleged 149 documents** in their production as being represented by a placeholder page (blank page stating "Technical Issue—No Images") due to "Native issues" **caused by "being corrupted/in unknown format** ". (Ex.877 of Doc 40-2(p. [1814]), Appendix p.[125])

   41. In that same communication, the Defendant also admitted that audio/video files were being designated as "Documents Produced in Native Format", because they reasonably, "can not be converted to PDF. (Ex.877 of Doc 40-2(p. 1814), Appendix p. 125).

   42. While those averments were made by Opposing Counsel's Paralegal, opposing counsel was cc'd on the email and neither attorney reached out to correct her statement; rather, when I identified specific missing documents, opposing counsel stated that they would "review" and "get back to me"; that was the Defendant's last email response to that thread and the concerns voiced therein. (Ex.877 of Doc 40-2(pp. 1814, 1817-18), Appendix pp. 125, 128-9).

   43. While it is unknown what those non-audio/video documents might have been (or how critical they could have been for my case), the combined averment that audio/video files are referenced also as "documents" produced in native format only, and that 149 documents were incompletely/inaccessibly produced due to "native issues", leads me to believe that some of those corrupted files were audio/video. (Ex.877 of Doc 40-2(p. 1814), Appendix p. 125)

44. Aside from two accessible video files of a Ted Talk used in the Defendant's diversity training, I have not found any accessible audio files within the defendant's production and assume those files "represented" by a placeholder page. majority of voice messages produced by the defendant.

45. In the event of data corruption, Microsoft has established peer replication ("ensur[ing] that there are always multiple live copies of any data") to be their solution to data recovery. (Ex. 18, Microsoft Measures in Dealing with Data Corruption, Appendix p.131)

46. To date, the defendant is not known to have made any claims of taking any efforts to recover these corrupted files; no such efforts were disclosed when the Defendant admitted to the corruption of those files in xx; instead the Defendants cited the task of "deduplication" (Defined by Microsoft as an optional, non-default feature that only effects the number of copies exported) as a part of their "costly and xx" production of previously unproduced Teams files. (Ex.877 of Doc 40-2(p. 1814), Appendix p. 125).

(Doc 21-2(p.8), Appendix p.63). (Ex. 19, Deduplication in Microsoft eDiscovery, Appendix p.134)

47. Because they have an "assigned ESI vendor" whom they authorized to address complex issues "including problems with the data folder structure, issues of de-duplication...", I have assumed that the defendants were told or had the opportunity to inquire about the procedures for possible recovery of these corrupted files (Doc 21, p.8(paragraph 2), Appendix p. 63).

48. At least one of these audio messages has been evidenced to come from Judy Talis, whose actions and intentions have been central to my complaint. (Ex. 20, Microsoft auto transcript of a Teams voicemail Talis left after discussing the cell phone incident, appendix pp. 135-136)

49. The number of communications between me and my former supervisor has been admitted by the defendant to be "approximately 25,000 ". (Doc 21, p.8 (top of page), Appendix p. 63).

50. The defendant's claim leads me to believe that some of these inaccessible audio messages were between me and my boss and my tendency to discuss workplace complaints with my boss (as evidenced throughout those transcripts provided in doc 40) also suggests that those corrupted files may have been useful to the claims of my complaint.

51. In losing that audio evidence, I have lost an irredeemable benefit to my case; audio evidence of my interactions with HR may have met the threshold for establishing their intentional mishandling of my racial harassment complaint in my dismissed claims; the voice volume, talking speed, or

other perceptible cues available through audio evidence are not available through written communications.

52. Furthermore, the prejudice I have asserted (lost opportunity to question and assess the knowledge of witnesses) by defendants intentional withholding of witness identification (address contact number and e-mail) is recognized by the 3rd Circuit Court [as][dimming] of witness memory.

53. The Defendants refusal to comply with the order to produce hiring information for these persons (through the ordered following of the discovery protocol on May 2, 2023) has inflicted prejudicial burden of delay on me as well as unnecessary risk of creating more corrupted files (that might have been recoverable or produced pre-corruption).

54. Burden of delay is also recognized by the third circuit for Poulis factor consideration.

55. The pattern of delay- in the defendant's provision of evidence-- appears to begin with the EEOC in 08/2022, persist with disclosures, and 06/2023, and continue with renewed noncompliance to initial discovery protocol through 03/2024, even as they continue to assert rights to initial disclosure under the court's protocols and FRCP 26 (Ex. 21, Appendix p. 138-139).

56. The defendant has made no acknowledgment to these actions and shows no sign of stopping.

Argument

57. In 1986, two years after establishing the six Poulis factors in *Poulis v. State Farm Fire and Casualty Co.*, the Third circuit expanded the required analysis of those factors (from sanctions of dismissal) to sanctions "result[ing] in a grant of summary judgment establishing defendants' liability on [even] one count". Ali v. Sims, Id. at 15, F.2D 788, 954.

58. The precedent of Ali v. Sims continues to be referenced throughout the Third Circuit's opinions and was precedentially reaffirmed in 2011 through Knoll v. City of Allentown. (p7) [Doc 003111172228 Case no: 12-1635].

59. However, there are also concessions to the consideration of these factors: in the precedential decision of USA V. Robert Brace, et al upheld their 1992 precedent of Mindek v. Rigatti: "Litigants flout court rules at their peril. District courts have broad discretion to punish them by striking their briefs if needed. We will not upset these sanctions lightly"(p.2). "Not all the Poulis factors need to be satisfied" (p.12) [Doc 54 of case no: 201892].

60. In review of the facts presented and the first three of the Poulis factors:

- Poulis Factor 1: The defendant was solely responsible for the preservation and timely production of initial disclosure documents (including Teams messaging, witness identification, and documents related to the allegations of my complaint)
- Poulis Factor 2: I was significantly prejudiced in terms of "forever irretrievable evidence, burden and costs of filing, and dimming of witness and memory" by the Defendant's spoliation (through negligence and withholding alike) of evidence.
- Poulis Factor 3: The defendant has displayed a pattern of dilatory production now several times.

61. The conduct of the Defendant rises to a level of seriousness, such that, had I committed those same acts, would have granted authority to this court to dismiss my complaint in its entirety."
(pp. 8-11 of Doc 72, ¶¶40-61).

## Prayer of Relief

For this and all other applicable reasons (especially those stated in Doc 72), plaintiff requests that the court reconsider its order in Doc 74 concerning sanctions to the Defendant and Defense Counsel.

Sincerely,

/s/ Assata Acey Hackman

Assata Acey Hackman (Pro Se)
5121 Brown St,
Philadelphia, PA 19139
aceyassata@gmail.com
770-231-1017

Date: 04/05/2024

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

ASSATA ACEY, : CIVIL ACTION
    *Plaintiff* :
    v. :
:
INDUCTEV, :
    *Defendant.* :
:
: No. 2:23-1438

## PROPOSED ORDER

AND NOW, this ___ day of _____, 2024, upon consideration of Plaintiff Assata Acey's motions for reconsideration (Doc 76), and the facts and arguments presented in Doc.60, Doc 71, and Doc. 72 and any response thereof, it is hereby **ORDERED** that:

1. Ms. Acey's motion is GRANTED
2. The InductEV and their counsel are separately sanctioned by the court, an appropriate memorandum to follow

BY THE COURT:

_____
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASSATA ACEY, | : |
| *Plaintiff* | : CIVIL ACTION |
| v. | : |
| INDUCTEV, | : |
| *Defendant.* | : |
| | : No. 2:23-1438 |

**Verification of Service**

Letter is to confirm that:

I submitted my Motion to Reconsider Doc 74 in person at the Court Clerk's office on 04/05/2024 at 2:08 pm. This was subsequently filed by court staff via entry onto the ECF (Electronic Case Filing) system, at which time service of Defendant was made complete through ECF's Notice of Electronic Filing.

Sincerely,

/s/ Assata Acey Hackman

Assata Acey Hackman (Pro Se)

5121 Brown St,

Philadelphia, PA 19139

aceyassata@gmail.com

770-231-1017

Date: 04/05/2024