UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASSATA ACEY, | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| | : | |
| INDUCTEV, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |
| | : | No. 2:23-1438 |

**<u>Amended Rule 56 Motion for Partial Summary Judgement</u>**

The motion submitted yesterday (Doc 89) was incomplete. Apologies for any confusion. This is the completed motion.

I, Plaintiff, submit this motion for summary judgment of those remaining (undismissed) complaint counts pertaining to retaliation (XVII, XVIII, and XIX).

Concurrent Determination of Claims

Regarding concurrent evaluation of state and federal employment discrimination claims, the third circuit's 2002 precedent was upheld again in *Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323, 327 (3d Cir. 2015):

> "'[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently,' Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir.2002)"

Applicable Tests

I.  Retaliation Tests

As upheld in *Jones v. Se. Pa. Transp. Auth.,* 796 F.3d 323, 329 (3d Cir. 2015):

> "'A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.' Allstate, 778 F.3d at 449")

Also upheld in *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015):

"first we ask whether the plaintiff has stated a prima facie case of discrimination or retaliation; if she has, we ask whether the employer has advanced a legitimate reason for its conduct; and finally we give the plaintiff an opportunity to prove that the employer's proffered reason is pretextual. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994)."

Those precedents upheld by *Jones v. Se. Pa. Transp. Auth.* continue to be upheld by *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303 (3d Cir. 2018), *Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289, 292-93 (3d Cir. 2019), and *Crosbie v. Highmark Inc.,* 47 F.4th 140, 144 and 146 (3d Cir. 2022)

## Proposed Facts and Conclusions of Law

I. Retaliation counts (XVII, XVIII and XIX)

A) Test 1

    i) On 05/08/2022, I filed my original dual-filed complaint with EEOC and PHRC against the defendant (pp. 2, 9 Doc 15-5, Appendix p. 3).

    ii) On 09/19/2022, I attended a virtual mediation session with the Defendant. (Ex 1, Appendix p. 5)

    iii) Adverse Action 1: On 09/23/2022, I was informed by the Defendant that I was not permitted to take PTO during my disability leave. (p. 1 of Doc 15-75, Denial of PTO, Appendix p. 63).

    iv) Causal Connection: This communication occurred 4 days after the mediation session.

    v) Adverse Action 2: On 09/27/2022, my employment was deemed terminated and I was locked out of my employee accounts. (Doc 10-5, Appendix p. 9). (Ex. 2, Appendix p.15)

    vi) Causal Connection 2: The termination occurred 7 days after my virtual mediation session with the Defendant and was concurrent with the Defendant's submission of a written contract to resign and dismiss my claims in exchange for $50, 000. (Ex. 1, Appendix p. 5). (Doc 10-5, Appendix p. 9).

 vii) Adverse action and Causal Connection 3: On 10/17/2022 the Defendant informed me that

  if I continued to pursue my claims and reject their contract the defendant would sue me:

> You cannot void or invalidate your agreement by stating it "was contingent on a contract that included agreeable material terms." Regardless, the document I provided includes all of and only the material terms the parties agreed upon (including, for example, you agreeing to a general release, non-disparagement and confidentiality, and InductEV agreeing to provide a neutral reference). Any other language is immaterial to the agreement to settle your claims and was included because it is either standard practice or legally required. In any event, I do appreciate you may have been taken aback by a document containing legal language you may be unfamiliar with. We strongly recommend that you retain a lawyer to help you understand all the terms. If you do not plan to hire one, I am willing to simplify the document and/or remove specific language you are uncomfortable with, provided those changes do not modify the material terms we agreed to on September 19th.
>
> Regardless of whether we have a formal signed document memorializing of our settlement, our agreement is a binding, enforceable contract. If you continue pursuing your claims against my client this will constitute breach of contract. When the matter reaches court, InductEV will seek dismissal of your claims and enforcement of the settlement agreement. More importantly, InductEV will sue for breach of contract and demand reimbursement of all attorneys' fees it has incurred as a result of your breach, including all fees spent on defending against claims you already agreed to settle. InductEV may take any other legal and equitable action available to it regarding your breach, now or in the future. My client reserves all rights and waives none.

  (Ex. 3, Email from May Mon Post on 10/17/2022, Appendix p. 21)

B) Test 2

 i) On 09/23/2022 the Defendant stated via email that I was not permitted to take PTO

  because it could not be taken during disability leave:

> I understand that you requested to take PTO for September 22 and 23. Please be advised that you are unable to put in for PTO as you are still on disability leave and you cannot take PTO unless you are back to work. (Also, per your doctor's

  . (p.1 of Doc 15-75, Email from May Mon Post, Appendix p. 63)

 ii) On 06/17/2022 and 06/17/2022 I had received assurances by then-CAO Judy Talis, that I

  would be permitted to use PTO during my disability leave:

> share any additional information please do not hesitate to contact me. As noted below, you become eligible for job-protected Family and Medical Leave (FMLA) as of June 14, 2022. Based upon the information that has already been provided, we are enclosing your Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act. This leave would be unpaid, although you remain entitled to your STD payments and may use your accrued PTO. Kindly sign and return the Notice on or before June 29, 2022 if your leave will extend beyond June 17, 2022.

  (Ex. 12 and 13, 06/07/2022 Email from Ms. Talis, Appendix p.65, 68)

 iii) The defendant has claimed that they were legally acting on a verbal agreement to resign

  and drop my claims in exchange for $50,000.

  (pp.5-6, Part I of Discussion in 02/28/2024 Memorandum (Doc 49)) Appendix, p. 17)

 iv) The defendant has failed to produce any compelling evidence of there being a final

  agreement between myself and the Defendant to release all of my claims and resign in

  exchange for $50,000.

  (pp.5-6, Part I of Discussion in 02/28/2024 Memorandum (Doc 49)) Appendix, p. 18)

    v)        The only attendees of the mediation on the Defendant's behalf were Alexa Heisler, Patti Rensel and May Mon Post:

>  19 Okay. So we had a virtual mediation
> 
>  20 set up privately, Ms. Acey, you had suggested
> 
>  21 through -- I don't recall the name -- I only
> 
>  22 remember the woman's name was Serena that we
> 
>  23 exchanged information with -- was setup a
> 
>  24 mediation with Barbara, Tracy, and then I
> 
> Page 10
> 
>  1 think in attendance on our side was May-Mon
> 
>  2 and Ms. Patti Rensel, and myself.
> 
> (Ex. 4: p.9 lines 19-24 and p.10 lines 1-2 of Alexa Heisler Deposition Transcript, Appendix p. 27)

    vi)       In her deposition, Ms. Heisler, (who is former counsel for the defendant and who was represented by the defendant's legal counsel) admitted that she was not present for the second half of mediation and had not witnessed any agreement being reached:

>  12 Q. Okay. Can you recall any specific
> 
>  13 words that I spoke conveying an agreement to
> 
>  14 Induct EV's s terms during mediation?
> 
>  15 A. No. I wasn't on the call throughout.
> 
>  16 So the last part when I was there with the
> 
>  17 company, and you had not come to an agreement
> 
>  18 at that time
> 
> (Ex. 4 lines 12-18 of p. 11 of Alexa Heisler Deposition Transcript, Appendix p. 27)

    vii)      In her Deposition, Ms. Rensel testified that she was not aware of any particular wording or statement used to convey my agreement, and that she was unable to recall several terms in May Mon Post's alleged agreement:

>  9 Q. Okay. Do you recall discussion
> 
>  10 regarding a general release at the mediation

>> 11 between Ms. Acey and Momentum?
>>
>> 12 A. I do not recall.
>>
>> 13 Q. Do you recall discussions regarding a
>>
>> 14 non-disparagement -- I'm going to say a
>>
>> 15 clause -- in the mediation involving Ms. Acey
>>
>> 16 and Momentum?
>>
>> 17 A. I don't recall.
>>
>> 18 Q. Do you recall discussions regarding a
>>
>> 19 confidentiality clause in the Mediation
>>
>> 20 between Ms. Acey and Momentum?
>>
>> 21 A. I don't recall.
>
> (p.22 lines 9-21 of Patti Rensel Deposition Transcript, Appendix p. 42)
>
>> 17 BY MS. ACEY:
>>
>> 18 Q. Ms. Rensel, do you recall any specific
>>
>> 19 wording or anything said by me to convey my
>>
>> 20 agreement during mediation?
>>
>> 21 A. I do not.
>
> (p.24 lines 17-21 of Patti Rensel Deposition Transcript, Appendix p. 42)

viii) The only remaining witness to the mediation (on defendant's behalf) is May Mon Post, and the email that alleged a final binding agreement (including terms of resignation, general release, confidentiality etc.) was sent from her email account. (Doc 10-5, Appendix p. 9).

ix) May Mon Post has not been disclosed on the defendant's witness list and was not called for deposition.

x)   The morning after mediation, I attended therapy with Chantele Mallory, of which she noted my anxiety over not having reached a final agreement:

**Patient:** Assata Acey  
**Provider:** Chantele Mallory, LCSW  
**DOB:** ▮▮▮▮▮▮  
**Visit:** 09/20/2022 10:00AM  
**Sex:** F  
**Chart:** ACAS000002

Therapy Type: supportive, interpersonal
Focus: mood, stressors

Session Note: Patient spoke about recent mediation with job and feeling physically drained. Provider supported patient with exploring emotion related to mediation. ==Patient seemed to struggle with identification of any feelings of relief due to an unclear resolution.== Patient supported with increasing awareness to successes throughout the process and effort placed with self-advocacy.
Patient also reports being placed on a new medication to manage flare-ups related to medical condition. Patient recognizes an increase in flare-ups when managing stressful situations and recognizes the past few months have been a challenge. Patient was reflective of traumatic experiences and how this impacts her

(Ex. 4, 09/20/2022 Session Note from Response to Defendant's Subpoena, Appendix p. 50)

xi)   Less than 36hours after mediation, I texted my former supervisor that a final agreement had not been reached, and outlined the anticipated process for settlement and any outstanding conditions precedent:

| | | | |
|---|---|---|---|
| Sent | 09/20/2022 8:26:49 PM | Joren(boss) (+12033003990) | Resignation process is as follows. I have to get a letter from my doctor certifying that I can work it's okay if I need accommodations. I have to send that to the new head of HR. ==The special lawyer they hired has to send me their settlement draft based off of the key things that we negotiated. I have to have that draft reviewed by a lawyer based off of the additional confidentiality terms that she might tag on. If everything checks out it would be signed. If not it would be thrown out and I would just go to investigation cuz I'm not dealing with those people.== |
| Sent | 09/20/2022 8:27:42 PM | Joren(boss) (+12033003990) | ==After it was signed, I would have to you know resign.== I'm assuming they would comp my vacation days. Unsure if I'd have to mail my laptop in. |
| Sent | 09/20/2022 8:28:07 PM | Joren(boss) (+12033003990) | So yeah ==until my doctor updates the note and Patty acknowledges it and I get a lawyer to review the new contract and stuff I wouldn't actually be resigned.== |

(Ex. 7, Text messages from myself to Joren Wendschuh on 09/20/2022, Appendix p. 52)

C)   Damages

i)   At the time of my termination, the defendant was allowing employees to be paid for time spent completing their virtual osha-40 training.

ii)   After submitting my return-to-work letter, I continued to receive disability benefits totaling $3,348 per month, in the amount of $10,044.

iii) At the time of Termination, my employment with the defendant included terms of $35.19 per hour, 3% 401k match, and $100 biweekly health plan opt-out payments:

| EARNINGS | BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 80.00 | 35.1900 | 2815.20 | 722.00 | 25024.00 |
| | | OOP | | | 100.00 | | 900.00 |
| | | Overtime | | | | 35.00 | 1835.87 |
| | | Total Hours | 80.00 | | | 757.00 | |
| | | Gross Earnings | | | 2915.20 | | 27759.87 |
| | | Total Hrs Worked | 80.00 | | | | |
| OTHER Do not increase Net Pay | | DESCRIPTION | | | THIS PERIOD ($) | | YTD ($) |
| | | 401k ER Match | | | 84.46 | | 805.80 |

(Ex. 11 Paystub for 04/29/2022, Appendix p. 61)

iv) I continued to interview and search for new roles in my field that would accommodate my disability through December 31, 2022, but never received a job offer.

v) Had I continued to work for the defendant (through Dec 31, 2022) at my previous hourly rate of $35.19 with reduced hours of 30hrs/week, my net pay would have been $12,668, which is $2,624.40 more than I received on disability. Had I returned to work for the defendant full time with accommodations, my net pay would have been $16,891, which is a difference of $6,847.

vi) The 3% gross income 401k match and $100 biweekly health coverage opt out payments would have then amounted to $980 had I worked reduced hours of 30hr/wk and $1,106 had I worked full time with accommodations.

vii) Therefore, the defendant's termination of my employment cost me a total of $3,604 at least and $7,953 at most in lost wages and benefits, not including interest.

viii) A week after my termination, I attended my then-weekly therapy with Chantele Mallory, who noted a psychosomatic effect from termination:

**Patient:** Assata Acey  **DOB:** ▮▮▮▮  **Sex:** F
**Provider:** Chantele Mallory, LCSW  **Visit:** 10/04/2022 10:00AM  **Chart:** ACAS000002

Therapy Type: supportive, interpersonal
Focus: mood, stressors

Session Note: Patient reports focusing a lot of attention on her home and continuing to follow up with medical issues. Patient reports feeling more frustrated recently due to becoming easily tired although she has a desire to remain active. Patient spoke about impacts on her autonomic nervous system. Provider supported patient with awareness to stress and impacts on the body. ==Patient reports being wrongfully terminated and was allotted space to express feelings related to events. Patient appears to lack insight to body's response when discussing stressful events.== Provider supported patient with awareness to body's changes while speaking about events. Provider and patient also explored her health conditions seeming to increase as her external stressors have increased.

(Ex. 8, 10/04/2022 Session note from response to Defendant's Subpoena, Appendix p. 54)

ix) On 09/26/2023, I attended weekly therapy with Chantele Mallory, LCSW who noted my increase intrusive thoughts related to pursuing my claims:

**Monitoring:** Relationships, anxiety, mood, stressors, coping skills, communication

**Barriers to Progress:** None

**Intervention:**

Therapy Type: supportive, insight oriented
Focus: mood, stressors

Session Note: Patient joined session late due to tending to personal phone call. Patient reports feeling busy with family life but also excited about upcoming wedding. Patient provided update on medical conditions and experiencing increased nausea. Patient's PCP attributes to stress opposed to medical concerns. Patient expressed awareness to increased intrusive thoughts and feelings of hopelessness when working on legal case "it's really impacting my mental health." Provider encouraged exploration of triggers and offered psychoeducation regarding typical responses to stressors. Provider shared feedback regarding patient's response appearing aligned to PTSD and trauma reactions. Provider and patient engaged in techniques during session for emotional regulation and reducing physiological distress. Patient and provider also discussed use of emergency resources and supports if patient has an increase in intrusive thoughts or SI. Patient currently denies SI or plan and also has communicated feelings with partner. Patient has also received emotional support from grandmother. Provider will revisit intrusive thoughts at next session and complete safety plan if warranted. Provider

(Ex. 9, 09/26/2023 Therapy Session Note from Response to Defendant's Subpoena, Appendix, p. 56)

x) On 04/15/2024, I was seen by my primary care provider, Jennifer Flom, DO (who also at that time increased the prescription amount of Sertraline for my depression), who noted the stress caused by pursuing my claims:

**She is in an acute depressive episode now. Usually lasts 4hrs to 1 day but this one has lasted 4 days.**

(Ex. 10, Visit Note from Dr. Flom 04/15/2024, Appendix p. 58)

Main Line Health MyChart - Visit Summary

**She has not been able to obtain a lawyer and therefore is representing herself.
She worries that the judge and opposing lawyers are working together against her.**

**She is having vivid intrusive thoughts.**

**She hyperventilates when she cries. She is not sure if this is triggering her asthma attacks.**

**When she is stressed, she is not taking a full deep breath.**

(Ex 10, Visit Note from Dr. Flom 04/15/2024, Appendix p. 59)

<u>Proposed conclusion:</u>

1. There is no record of any agreement being made for me to either resign or withdraw my complaint without first receiving, reviewing, and approving the final contract.
2. By pursuing the dismissal of my complaint and terminating my employment prior to my receipt of any written contract, the defendant bypassed the conditions precedent in violation of our tentative agreement.
3. The defendant's termination of my employment violates both title VII and PHRA because it was done in response to my filing a complaint against them with the EEOC and PHRC.
4. This was further aggravated by their threat to sue me if I did not withdraw my claims as well as their withholding of previously assured PTO until I "resigned".
5. The defendant's retaliatory acts facilitated a breakdown in trust that is critical to settlement discussions- which ultimately led to my complaint being filed in state court.
6. The termination and its aftermath caused more than the garden variety of stress and its execution by legal counsel on the Defendant's behalf demonstrates it as being done with reckless disregard for my legal rights and warrants punitive damages.

Sincerely,

/s/ Assata Acey Hackman

Assata Acey Hackman (Pro Se)

5121 Brown St,

Philadelphia, PA 19139

aceyassata@gmail.com

770-231-1017

Date: 05/06/2024