# **Appendix For Plaintiff's First Rule 56 Motion**

1.  Doc 15-5 05-09-2022 Submission of Dual-filed Complaint..............................................p. 2
2.  Ex. 1. 09-16-2022 Confirmation of Mediation Date.....................................................p. 4
3.  Doc 10-5 09-27-2022 Termination of Employment........................................................p. 7
4.  Ex. 2.  09-27-2022 PM 2-40 Company Database Lockout...............................................p. 14
5.  pp. 5-6 of Doc 49 Memoranda of Courts Order on Motion to Dismiss.....................p. 16
6.  Ex. 3. 10-17-2022-10-21-2022 Post Termination Threats from Defendants Counsel..p. 19
7.  Ex. 4. 04-01-2024 Alexa Heisler Deposition Transcript.....................................................p. 23
8.  Ex 5. 03-28-2024 Patti Rensel Deposition Transcript........................................................p. 35
9.  Ex. 6. 09-20-2022 Therapy Visit Note Morning after Mediation_Redacted...............p. 49
10. Ex. 7. 09-20-2022 Text Messages from Myself to Joren Wendschuh Disclosing
    Mediation Conditions........................................................................................................p. 51
11. Ex. 8. 10-04-2022 Therapy Visit Note Week after Terminaition_Redacted................p. 53
12. Ex. 9. 09-26-2023 Therapy Visit During Litigation............................................................p. 55
13. Ex. 10. 04-15-2024 PCP Visit Note Regarding Depression Medication_Redacted......p. 57
14. Ex. 11. 04-29-2022 Paystub...............................................................................................p. 60
15. p.1 of Doc 15-75. 09-23-2022 Denial of PTO....................................................................p. 62
16. Ex. 12. 06-07-2022 Letter from Judy Talis Assuring PTO.............................................p. 64
17. Ex. 13. 06-17-2022 Letter from Judy Talis Assuring PTO.............................................p. 67

1.   Doc 15-5 05-09-2022 Submission of Dual-filed Complaint

 Gmail                                                                    Assata Acey <aceyassata@gmail.com>

## Employment Complaint, Submission of Evidence, HIPPA release

**Assata Acey** <aceyassata@gmail.com>                                              9 May 2022 at 08:06
To: phrc@pa.gov

Please accept the attached complaint and submission of evidence.
Please let me know of any additional information needed to file these documents.

Additional Information
Complainant
Assata Acey
5121 brown st, philadelphia PA 19139
770-231-1017

Respondent
Momentum Dynamics
3 Pennsylvania Ave
Malvern, PA

Summary:
Assata Acey v. Momentum Dynamics Corporation.
Ongoing discrimination due to race, gender, and in retaliation to opposing acts believed to violate PHRA.
Chiefly through
     a) Hiring discrimination, classification and terms of employment, failure to promote.
     b) Harassment

**3 attachments**

 **Submitted Evidence.pdf**
21083K

 **Filled Employment Complaint Form-12-2020.pdf**
1199K

**HIPPA Release Form.pdf**
404K

2.  Ex. 1. 09-16-2022 Confirmation of

Mediation Date

                                                                    Assata Acey <aceyassata@gmail.com>

## CORA Good Shepherd Mediation - MONDAY 9/19 10:30AM - Zoom Link - Consent form from grandmother needed

**Harris, Alexandra** <aharris@coraservices.org>                                        16 September 2022 at 15:07
To: "aceyassata@gmail.com" <aceyassata@gmail.com>

Dear Assata,

Has your grandmother got a chance to sign the consent form? Would you like me to send via Adobe Sign to your grandmother's email address?

We look forward to hosting your mediation on Monday 9/19 at 10:30AM. Please promptly log into the following Zoom link:

Join Zoom Meeting
https://us02web.zoom.us/j/6261338302?pwd=SVo2WFRuSGxaUnMreTJVVjVDMkFBZz09

Thank you,


Alexandra "Serene" Harris

---

**From:** tracy@pivotal-communication.com <tracy@pivotal-communication.com>
**Sent:** Friday, September 16, 2022 10:42 AM
**To:** aceyassata@gmail.com; Harris, Alexandra <aharris@coraservices.org>
**Cc:** bef423 <bef423@mindspring.com>
**Subject:** Confidentiality Form


CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.


Hi Assata,

Attached is a copy of CORA Good Shephard's consent to mediate form.  Please have your grandmother sign it and return it to Alex Harris and me *before* Monday's mediation.

You will need to send her the zoom link also.

Best,

Tracy

**Tracy Hornig**

Principal

Pivotal Communication

tracy@pivotal-communication.com

484-888-2837



Transforming how you navigate conflict and change

Consulting | Training | Coaching | Mediation

www.pivotal-communication.com

3.  Doc 10-5 09-27-2022 Termination of

Employment

# EXHIBIT E

| | |
|---|---|
| **From:** | Assata Acey |
| **To:** | Post, May Mon |
| **Cc:** | Patti Rensel; Alexa Heisler; Barbara Foxman; hornigtracy@gmail.com |
| **Subject:** | Re: Acey v. Momentum |
| **Date:** | Tuesday, September 27, 2022 2:53:02 PM |

**EXTERNAL EMAIL**

As you are currently aware, this case has been moved to investigation.
I reject your contract.

In mediation I did agree to
a verbal agreement in which I would resign and dismiss existing claims(prior to Sep 19) in
return for a settlement amount of 50,000 from Momentum Dynamics Corp.
The execution of this agreement was contingent on a contract that included agreeable material
terms. The fact that you requested me to execute terms of an agreement that I had yet to
review or sign suggests that we did not resolve the issue.

At no point was resignation agreed to as a requirement to review or receive any agreement. At
no point was a deadline agreed to for resignation. The only requirement agreed to as a
condition of receiving a contract was that I would provide a letter from my doctor. The
deadline given for this letter was September 26 2022. My Grandmother is a witness to my
agreements during mediation and can confirm the same.

 As of yet, I have not resigned and  I consider my immediate lock-out from company databases
as a direct attempt to fire me after my complaint, which is to be added to my charge file along
with all other documents submitted to Alexa and Pattis Momentum emails this past friday
afternoon.

On Tue, 27 Sept 2022 at 14:10, Post, May Mon <maymon.post@bunkerray.com> wrote:

> Dear Ms. Acey,
>
>
> I am confused by your email below. At the mediation on September 19, 2022, the parties
> agreed on the following material terms:
>
>
> You agreed to resign from employment with Momentum effective immediately (September
> 19, 2022) and further agreed to provide Momentum with the said resignation letter on or
> before September 23, 2022. Therefore, Momentum has accepted your resignation as of that
> date.
>
>
> Additionally, you agreed to provide Momentum with a verification form from a medical
> provider, on or before September 23, 2022, returning you to return to work on full duty with
> or without restrictions.

In addition, you agreed to a general release, non-disparagement and confidentiality, and Momentum agreed to provide a neutral reference.

In exchange for the above, within 30 days of the execution of the settlement agreement by you, Momentum agreed to pay the settlement proceeds in the total amount of $50,000 (less ordinary deductions required by law, if applicable].

I indicated to the mediators that a settlement agreement would be sent to you for execution as soon as it was finalized. To that end, I am attaching it herewith.

Thank you.

**May Mon Post, Esq. | Lead Employment Attorney | Bunker & Ray**

Employees of ACE American Insurance Company, a Chubb Company

436 Walnut St. | WA01A | Philadelphia, PA 19106
(215) 845-6154 (direct) |  (267) 372-1240 (mobile)
maymon.post@bunkerray.com

This email (which includes any attachments) is intended to be read only by the person(s) to whom it is addressed. This email may contain confidential, proprietary information and may be a confidential attorney-client communication, exempt from disclosure under applicable law. If you have received this email in error, do not print it, forward it or disseminate or use it or its contents. In such event, please notify the sender by return email (or by phone at the number shown above) and delete the email file immediately thereafter. Thank you for your cooperation.

We strive to be a paperless office. I encourage you to send all correspondence via email instead of U.S. mail when at all possible. If you email a document to me, it is not necessary to send a separate copy via U.S. mail. Thank you.

**From:** Assata Acey <aceyassata@gmail.com>
**Sent:** Friday, September 23, 2022 10:39:46 PM
**To:** Post, May Mon <Maymon.post@bunkerray.com>; Patti Rensel
<patti.rensel@momentumdynamics.com>; Alexa Heisler
<Alexa.Heisler@momentumdynamics.com>; Assata Acey
<Assata.Acey@momentumdynamics.com>
**Subject:** Re: Acey v. Momentum


**EXTERNAL EMAIL**

My collected evidence of inferred bias is proof of discrimination in my hiring decision work classification/failure to promote. This bias consists mainly of experiences I had with HR that were not replicated with my colleagues (accusations of stealing time, asks of if I were pregnant/should see daughter's gynecologist, degree of meeting invite harassment, response to reported bias and harassment incidents at work etc). Failure to classify or promote would be a part of that because the performed tasks were reasonably beyond the scope of my role, requiring skills of a process engineer/beyond technician job description. And not only was HR aware of this through my performance review and subsequent communications, but I specifically mentioned in my performance review that I would be seeking compensation commensurate with the tasks that I was completing.

Regardless of your evaluation of evidenced inferred bias, conspicuous skill gap between my tasks and role, and previous (re performance review) request to be adequately compensated. My claim still holds additional charges of severe harassment and ADA related retaliation. The severe racially/gender impacted harassment of not being allowed to use my cell phone and an evidently unusual/severe reimbursement process (where I was denied from opting out) is supported by the same inferred bias as well as additional bias acts by coworkers( pen markings on a work desk vowing not to "talk about race", comic regarding a fake "phizzics" degree posted outside my cubicle, additional biased/policing behavior of coworkers)

This retaliation would include the onset of my illness when I expressly needed to take time off and was told at the last minute before heading out that the current pay period would not allow me to do unpaid time (as supported by my 5/12 doctors note). Which caused me such severe distress that after returning from two doctor's appointments, I worked until 9:00 PM in pain to make up those pay period hours.

The stress of this ordeal is further documented in my diagnosis of major depressive disorder from both my PCP and therapist as well as therapy sessions where these issues were discussed.

Due to the documentation of this issue, I am convinced that a full investigation will find Momentum Dynamics Corporation in noncompliance of EEOC law with order to pay the full 50,000 amount regardless of whether I resigned--being that resignation would be my right.

Beyond this, I do perceive your emails of this week as attempts to:
a) have this case dismissed

b)  convince me to resign (a condition contingent on our "meeting of minds" as demonstrated through a contract) without submitting and written documentation/contract for my review between myself and you to review or sign.

c) change or misconstrue existing and communicated FMLA policy to use PTO payment as

a bargaining chip towards part b.

I view these as direct actions to intimidate and retaliate against me for filing this EEOC complaint if not to also interfere with EEOC process by avoiding the need to include your resignation condition in a written unredacted settlement agreement

In the scope of the merit of my claims(existing complaint), right to resign or not, previously noted actions,  and supporting documentation, I am now asking for a settlement amount of $130,000, acceptable for review ONLY with receipt legally drafted settlement offer (including ALL material terms: resignation,  rehire eligibility, time scale/terms of payment, confidentiality, etc).

Unless/until an agreement is signed detailing resignation, I am an employee of Momentum Dynamics Corp and will be either using PTO or reporting to work.

All supporting documentation has been attached. Please refer any questions, comments, or followup to my email.

On Fri, 23 Sept 2022 at 16:13, Assata Acey <aceyassata@gmail.com> wrote:

---------- Forwarded message ---------
From: **Assata Acey** <aceyassata@gmail.com>
Date: Fri, 23 Sept 2022 at 16:10
Subject: Re: Acey v. Momentum
To: Post, May Mon <maymon.post@bunkerray.com>

Thank you for your clarifying email. Please confirm whether the following previous PTO/FMLA/REturn to work policies, as communicated in the attached email PDFs and FMLA form, have been changed to match what you are currently saying. thank you,

On Fri, 23 Sept 2022 at 16:01, Post, May Mon <maymon.post@bunkerray.com> wrote:

Good afternoon, Ms. Acey:

I understand that you requested to take PTO for September 22 and 23. Please be advised that you are unable to put in for PTO as you are still on disability leave and you cannot take PTO unless you are back to work. (Also, per your doctor's note, you are not to be released to return until Monday, which is a moot point as you have resigned or will be resigning shortly). However, <mark>you will be paid the balance of your PTO upon your resignation</mark>. If you resign today through Sunday, you will receive your final pay check on 09/30. If you resign 09/26 – 10/09, you will receive your final pay check on 10/14. Please provide me with a copy of your resignation letter as soon as possible.

Thank you, and please let me know if you have any questions.

**May Mon Post, Esq. | Lead Employment Attorney | Bunker & Ray**

Employees of ACE American Insurance Company, a Chubb Company

436 Walnut St. | WA01A | Philadelphia, PA 19106
(215) 845-6154 (direct) | (267) 372-1240 (mobile)
maymon.post@bunkerray.com

This email (which includes any attachments) is intended to be read only by the person(s) to whom it is addressed. This email may contain confidential, proprietary information and may be a confidential attorney-client communication, exempt from disclosure under applicable law. If you have received this email in error, do not print it, forward it or disseminate or use it or its contents. In such event, please notify the sender by return email (or by phone at the number shown above) and delete the email file immediately thereafter. Thank you for your cooperation.

We strive to be a paperless office. I encourage you to send all correspondence via email instead of U.S. mail when at all possible. If you email a document to me, it is not necessary to send a separate copy via U.S. mail. Thank you.

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

4.   Ex. 2.  09-27-2022 PM 2-40 Company

Database Lockout



← assata.acey@momentumdynamics.com

# Enter password

Your account has been locked. Contact your support person to unlock it, then try again.

Password

Forgot my password

Sign in

Welcome to Momentum Dynamics!

Terms of use          Privacy & cookies          • • •

5.   pp. 5-6 of Doc 49 Memoranda of Courts

Order on Motion to Dismiss

LEGAL STANDARD

At the motion to dismiss stage, the Court must accept factual allegations as true, but it is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

DISCUSSION

InductEV's motion to dismiss advances three arguments: (1) Ms. Acey released her claims as part of a binding settlement agreement; (2) Ms. Acey failed to exhaust her claims before the EEOC; and (3) Ms. Acey failed to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court addresses each argument in turn.

I.   **InductEV has not demonstrated the existence of a binding settlement agreement.**

Ms. Acey has specifically, plausibly, and clearly pled that she did not conclude a final settlement agreement with InductEV. Compl. ¶¶ 66-72, 82-84, Doc. No. 1-2. At the Rule 12 stage, the Court must accept these allegations as true. *Baraka*, 481 F.3d at 195. InductEV attempts to demonstrate the existence of a settlement agreement by pointing to language from a September 27, 2022 email from Ms. Acey, which reads: "I did agree to a verbal agreement in which I would resign and dismiss existing claims . . . in return for a settlement amount of [$]50,000[.]" Mem. of

_____

2023, Doc. No. 13. Because InductEV timely responded to Ms. Acey's complaint, her motion for default judgment is denied.

5

L. in Supp. of Mot. to Dismiss at 11, Doc. No. 10 (quoting Compl. ¶ 266, Doc. No. 1-2). However,

the next sentence of Ms. Acey's email reads, "The execution of this agreement was contingent on

a contract that included agreeable material terms." Compl. ¶ 266, Doc. No. 1-2. In context, this

email suggests that the putative settlement agreement between Ms. Acey and InductEV may have

been subject to a condition precedent, namely a writing containing agreeable terms. *See Am.*

*Diabetes Ass'n v. Friskney Family Tr., LLC*, 177 F. Supp. 3d 855, 877 (E.D. Pa. 2016) (quoting

*Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1220 (Pa. Super. Ct. 1994)) ("[A]

condition precedent may be defined as a condition which must occur before a duty to perform

under a contract arises."). The Court expresses no opinion at this early stage about either whether

a binding settlement agreement was reached or whether any such agreement was subject to a

condition precedent. Ms. Acey has pled that no agreement was reached, and the evidence before

the Court of a binding agreement is equivocal. The Court takes Ms. Acey's allegation as true.

InductEV's conclusory assertion that Ms. Acey "developed" *post hoc* reasons that she was

not bound by her putative settlement agreement fails to persuade the Court, especially in the

absence of a writing memorializing the agreement. Of course, a binding settlement agreement may

exist absent a writing, *Commerce Bank v. First Union Nat'l Bank*, 911 A.2d 133, 147 (Pa. Super.

Ct. 2006), and InductEV is free to gather evidence of a binding oral agreement for the Court to

consider at summary judgment. However, accepting the allegations of the complaint as true, the

Court declines to find that Ms. Acey's claims are barred by a settlement agreement.

Thus, the Court denies InductEV's motion to dismiss insofar as it relies on the existence

of a binding settlement agreement in this matter.

## II.    InductEV has failed to demonstrate Ms. Acey's failure to exhaust.

InductEV further argues that Ms. Acey failed to exhaust her administrative remedies under

Title VII, the ADA, and the PHRA. However, the exhaustion section of InductEV's motion to

6.   Ex. 3. 10-17-2022-10-21-2022 Post

Termination Threats from Defendants Counsel

 Gmail

Assata Acey <aceyassata@gmail.com>

## Acey, Assata v. Momentum Dynamics Corporation; CLAIMS REF NO KY22K2593096-A DOL 06/22/2022

**Post, May Mon** <maymon.post@bunkerray.com>                21 October 2022 at 14:45
To: Assata Acey <aceyassata@gmail.com>
Cc: Alexa Heisler <Alexa.Heisler@inductev.com>, Patti Rensel <Patti.Rensel@inductev.com>

Ms. Acey:

Our position has not changed. The fact that you agreed to resign and dismiss your claims in exchange for $50,000 is not in dispute, is confirmed by you in writing, and constitutes an enforceable contract. Your latest email does not even dispute these terms – your only objection is that resignation would occur after execution of the agreement.  Accordingly, even assuming a fact finder found in your favor, they would conclude resignation was effective no later than the time allotted to have the agreement reviewed by counsel.

Nevertheless, if you wish to review the settlement agreement with an attorney and propose a counteroffer, including the date of your resignation date (i.e., effective the date of execution of the settlement agreement), I will forward the counteroffer to my client as soon as I receive it from you. Would two weeks (Friday, November 4, 2022) be enough for you to review the agreement with an attorney and get back to me? Please advise.

Nothing in this email constitutes a counteroffer or a new offer, and my client has no obligation to accept the terms of your counteroffer.  However, I will do my best to persuade them to take it into consideration, if reasonable.  With respect to our position as outlined in my email dated October 17th, my client reserves all rights and waives none.

Thank you.

**May Mon Post, Esq. | Lead Employment Attorney | Bunker & Ray**

Employees of ACE American Insurance Company, a Chubb Company

436 Walnut St. | WA01A | Philadelphia, PA 19106
(215) 845-6154 (direct) |   (267) 372-1240 (mobile)

maymon.post@bunkerray.com

This email (which includes any attachments) is intended to be read only by the person(s) to whom it is addressed. This email may contain confidential, proprietary information and may be a confidential attorney-client communication, exempt from disclosure under applicable law. If you have received this email in error, do not print it, forward it or disseminate or use it or its contents. In such event, please notify the sender by return email (or by phone at the number shown above) and delete the email file immediately thereafter. Thank you for your cooperation.

We strive to be a paperless office. I encourage you to send all correspondence via email instead of U.S. mail when at all possible. If you email a document to me, it is not necessary to send a separate copy via U.S. mail. Thank you.

**From:** Assata Acey <aceyassata@gmail.com>
**Sent:** Monday, October 17, 2022 7:18 PM
**To:** Post, May Mon <maymon.post@bunkerray.com>
**Subject:** [EXTERNAL] Re: Acey, Assata v. Momentum Dynamics Corporation; CLAIMS REF NO KY22K2593096-A DOL
06/22/2022

Thank you for your correspondence.

I have been as forthcoming as possible, submitting all communications regarding this dispute to EEOC.
I did not agree to resign effective September 19. And was of the impression, as communicated, that I would receive a
settlement contract (for review with optional legal counsel) detailing resignation effective on the date of execution.
Your communicated understanding of our mediation was that I would resign effective sept 19 with or without prior
receipt/execution of a written agreement.

These understandings are not the same. If your understanding of our mediation as shown in your emails and submitted
contract is different than mine, then we did not reach an agreement.

With this understanding, I am under no obligation to accept any agreement that I did not verbally agree to.

On Mon, 17 Oct 2022 at 15:26, Post, May Mon <maymon.post@bunkerray.com> wrote:

  Good afternoon, Ms. Acey.

  Your claims against InductEV (f/k/a Momentum Dynamics Corporation) were fully resolved during mediation on
  September 19th.  Your September 27th email provides written confirmation of the parties' agreement: you agreed to
  "resign and dismiss existing claims" in exchange "for a settlement amount of [$]50,000."  At mediation, I made it
  repeatedly and unambiguously clear that settlement was contingent on resignation being effective immediately. You
  accepted. InductEV did not (and would never) agree to a resignation at some unknown point in the future – that's an
  unreasonable assertion on its face since it would defeat the entire purpose of settling the claims.

  Be advised that the parties' agreement reached on September 19th – later confirmed by you in writing – constitutes a
  binding contract and InductEV will take all necessary action to ensure you honor and comply with that agreement, as
  outlined below.

  You cannot void or invalidate your agreement by stating it "was contingent on a contract that included agreeable
  material terms."  Regardless, the document I provided includes all of and only the material terms the parties agreed
  upon (including, for example, you agreeing to a general release, non-disparagement and confidentiality, and InductEV
  agreeing to provide a neutral reference).  Any other language is immaterial to the agreement to settle your claims and
  was included because it is either standard practice or legally required. In any event, I do appreciate you may have
  been taken aback by a document containing legal language you may be unfamiliar with.  We strongly recommend that
  you retain a lawyer to help you understand all the terms.  If you do not plan to hire one, I am willing to simplify the
  document and/or remove specific language you are uncomfortable with, provided those changes do not modify the
  material terms we agreed to on September 19th.

  Regardless of whether we have a formal signed document memorializing of our settlement, our agreement is a binding,
  enforceable contract.  If you continue pursuing your claims against my client this will constitute breach of contract.
  When the matter reaches court, InductEV will seek dismissal of your claims and enforcement of the settlement
  agreement.  More importantly, InductEV will sue for breach of contract and demand reimbursement of all attorneys'
  fees it has incurred as a result of your breach, including all fees spent on defending against claims you already agreed
  to settle. InductEV may take any other legal and equitable action available to it regarding your breach, now or in the
  future.  My client reserves all rights and waives none.

To avoid any such consequences, we need to execute a document that memorializes the terms agreed to by both parties at mediation on September 19th. If you would like me to revise your terms or language in that document, please let me know and, as mentioned above, I will do my best to work with you to arrive at a document that contains mutually agreeable language.  Please see attached Word version of the settlement agreement, which you can feel free to mark up.  I look forward to hearing from you.

If we do not hear back from you by the end of this Friday, October 21st, we will assume you have chosen to reject your contractual obligations and InductEV will proceed accordingly.

Thank you.

**May Mon Post, Esq. | Lead Employment Attorney | Bunker & Ray**

Employees of ACE American Insurance Company, a Chubb Company

436 Walnut St. | WA01A | Philadelphia, PA 19106
(215) 845-6154 (direct) |   (267) 372-1240 (mobile)

maymon.post@bunkerray.com

This email (which includes any attachments) is intended to be read only by the person(s) to whom it is addressed. This email may contain confidential, proprietary information and may be a confidential attorney-client communication, exempt from disclosure under applicable law. If you have received this email in error, do not print it, forward it or disseminate or use it or its contents. In such event, please notify the sender by return email (or by phone at the number shown above) and delete the email file immediately thereafter. Thank you for your cooperation.

We strive to be a paperless office. I encourage you to send all correspondence via email instead of U.S. mail when at all possible. If you email a document to me, it is not necessary to send a separate copy via U.S. mail. Thank you.

---

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

7.   Ex. 4. 04-01-2024 Alexa Heisler Deposition

Transcript

# In The Matter Of:

*Acey vs.*

*Induct EV*

---

*Alexa Heisler*

*April 1, 2024*

---

*Media Court Reporting*

*211 North Olive Street, Suite 210*

*Media, PA  19063*

*610.566.0805*

*www.mediacourtreporting.com*

Original File 040124AH_1.TXT

**Min-U-Script® with Word Index**

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 3                    - - -
 4
 5   ASSATA ACEY,              :
 6            Plaintiff       :
 7       vs.                   :Docket No.2:23-cv-01438
 8   INDUCT EV,                :
 9            Defendant        :
10                    - - -
11               Monday, April 1, 2024
12                    - - -
13       Deposition via Zoom of ALEXA HEISLER,
14   taken pursuant to notice on the above date
15   beginning at approximately 1:40 p.m., before
16   Donna Hunter, Registered Professional Reporter
17   and Notary Public.
18                    - - -
19
20
21            MEDIA COURT REPORTING
             211 North Olive Street, Suite 210
22                 Media, PA  19063
                    610.566.0805
23            mcr@mediacourtreporting.com
              www.mediacourtreporting.com
24
```

Page 2

```
 1   APPEARANCES:
 2
 3       ASSATA ACEY, pro se
         aceyassata@gmail.com
 4
         Pro Se Plaintiff
 5
 6       RANDALL C. SCHAUER, ESQUIRE
         ALBERTO LONGO, ESQUIRE
 7       FOX ROTHSCHILD LLP
         747 Constitution Drive
 8       Suite 100
         Exton, PA 19341
 9
10       Counsel for Defendant
         rschauer@foxrothschild.com
11
12
13
14
15       (INDEX at end of transcript)
16
17
18
19
20
21
22
23
24
```

Page 3

```
 1
 2       - - -
 3     MCR REPORTING: Ms. Acey
 4   requested that this deposition be
 5   recorded, as long as all counsel agree.
 6     - - -
 7     . . . ALEXA HEISLER, having
 8   remotely affirmed, was examined and
 9   testified as follows . . .
10     MR. SCHAUER: I would like the
11   witness to be able to read and sign the
12   transcript.
13     Also, I am not going to tell
14   people not to record the Zoom; I'm not
15   going to be difficult.
16     MS. ACEY: Okay.
17     MR. SCHAUER: And just for the
18   record, I am here with the witness.  We
19   are in a conference room in the
20   Montgomery County office of Fox
21   Rothschild.
22     E X A M I N A T I O N
23     BY MS. ACEY:
24   Q.  All right, Ms. Heisler, could you state
```

Page 4

```
 1   your name for the record, please.
 2   A.  Alexa Heisler.
 3   Q.  Are you currently employed?
 4   A.  No.
 5   Q.  Have you been recently employed?
 6   A.  Yes.
 7   Q.  What was the name of your most recent
 8   employer?
 9   A.  Infinite Blue Applications, LLC.
10   Q.  Did you work from home?
11   A.  Some days.
12   Q.  How often would you say you worked from
13   home?
14   A.  I worked from home Wednesdays and
15   Fridays, or if I was sick, or my kids were
16   sick.
17     MS. ACEY: Okay.  I would like
18   to take a minute, and I want to see if
19   I can share a document.  I am going to
20   e-mail a document to Ms. Heisler's
21   counsel, and I want to share my screen
22   of the document, but I just want to
23   make sure they have a copy to see
24   separate at the same time.
```

Page 5

1    MR. SCHAUER: Ms. Acey, I may
2  have it.  But if you don't mind my
3  asking, what is it you're going to
4  e-mail?
5    MS. ACEY: It's filed as
6  document 65-3 on our case.
7    MR. SCHAUER: All right, I
8  don't have that.
9    MS. ACEY: I am going to e-mail
10  that to you, and I am going to include
11  Media Court Reporting because I wanted
12  to just put it into the Zoom chat, but
13  it looks like it's not allowing me to
14  do it that way.  So I am going to do
15  that before I share my screen, so
16  please bear with me for a minute.
17    And, Attorney Schauer, are you
18  still here?
19    MR. SCHAUER: Yes, I'm here.
20    MS. ACEY: Okay, I see Attorney
21  Longo's name, so I wasn't sure.  But, I
22  think I get it now.
23    MR. SCHAUER: Send it to me,
24  also; I'm running it through my laptop.

Page 6

1    MS. ACEY: Well, it was just
2  sent so I want to confirm that you
3  received it?
4    MR. SCHAUER: All right, I have
5  that document, it came in.  So what are
6  we doing with it?
7    MS. ACEY: Okay, perfect.  I
8  want to share my screen with this
9  document, so I am just going to start
10  that now.
11    BY MS. ACEY:
12  Q.  Okay.  Ms. Heisler, can you see the
13  document that I'm sharing right now?
14  A.  Yes.
15  Q.  Do you have a LinkedIn account?
16  A.  Yes, this is my LinkedIn account.
17  Q.  Okay.  So this is your LinkedIn
18  account.  In the experience section, so this
19  is the information that you put out for the
20  times and dates of your experience.
21  Is this accurate?
22  A.  It is not updated with my most recent
23  departure from Infinite Blue.
24  Q.  Okay.

Page 7

1  A.  Otherwise, it appears accurate.
2  Q.  Okay.  Is this account publically
3  accessible, or is it private?
4  A.  I do not know.  I don't recall my
5  privacy settings on LinkedIn.
6  Q.  Okay.  So when did you end your
7  employment with Induct EV?
8  A.  Induct EV was March, 2023.
9  Q.  Okay.  And, when did you transition
10  from being General Counsel -- or were there
11  any transitions during your employment?
12  A.  What do you mean "transitions?"
13  Q.  I guess in your title?
14  A.  Yes.  I was hired is as legal counsel
15  in October of 2019, and then was appointed
16  general counsel October of 2022.  So that's --
17  yes.
18  Q.  Are you able to share the date that you
19  became general counsel, that you referred to?
20  I mean I know you said -- I'm sorry.  You're
21  saying the and the year.  I'm asking if you
22  are able to say the day of the month?
23  A.  No, I don't know.
24  Q.  Okay.  Are you aware of a mediation

Page 8

1  being attended by myself, and the defendant?
2  Are you aware of any medication being
3  attended by myself, and the defendant?
4  A.  Yes.
5  Q.  Okay.  Did you attend this medication?
6  A.  I attended partially of the mediation.
7  Q.  What parts did you attend?
8  A.  I attended from the start of it, and
9  then I had to drop for another call.
10  Q.  What do you recall seeing or hearing
11  outside of your communications with the
12  parties during the mediation?
13    MR. SCHAUER: I object to the
14  form of the question.  If you can
15  answer it, go ahead.
16    THE WITNESS: I'm not sure I
17  understand the question.  Can you
18  rephrase it?
19    MS. ACEY: Sure.
20    BY MS. ACEY:
21  Q.  During your time attending the
22  mediation, what do you recall seeing or
23  hearing?
24    MR. SCHAUER: I'm going to

Page 9

1  direct the witness not to share any
2  communications related to legal advice
3  as privileged, obviously.  But to the
4  extent there was other communications,
5  the witness can talk about, sure,
6  that's fine.
7      THE WITNESS: You want a
8  summary of my experience at the
9  mediation barring any privileged
10  communication or --
11     MS. ACEY: Yes.
12     THE WITNESS: I am not
13  understanding your question.
14     BY MS. ACEY:
15  Q.  No, I get the question.  But I think
16  the first part that you offered as far as your
17  experience barring the privileged
18  communication, that's what I am trying to get.
19  A.  Okay.  So we had a virtual mediation
20  set up privately, Ms. Acey, you had suggested
21  through -- I don't recall the name -- I only
22  remember the woman's name was Serena that we
23  exchanged information with -- was setup a
24  mediation with Barbara, Tracy, and then I

Page 10

1  think in attendance on our side was May-Mon
2  and Ms. Patti Rensel, and myself.
3  It started in the morning.  It was
4  supposed to be around, like, five hours --
5  that's based on my recollection.  We started
6  all in one group, and then had breakout
7  sessions where you met with the mediators
8  separately and then the mediators came to us.
9  But, you know, the specifics on that,
10  you know, I think our attorney spoke on our
11  behalf of Induct EV -- or Momentum -- formerly
12  known as Momentum and, you know, that is the
13  brief and basics of my experience.
14  Q.  Okay.
15     MR. SCHAUER: Ms. Acey, could
16  you stop sharing that, or are you done
17  with it, or --
18     MS. ACEY: Oh, sorry.  Yes, I
19  can stop sharing this now.  I don't
20  need it anymore.
21     MR. SCHAUER: Thank you.
22     BY MS. ACEY:
23  Q.  So, I'm sorry, I want to recalibrate to
24  the testimony that you just gave.

Page 11

1  So, what is the name of the attorney
2  who spoke on behalf of Induct EV?
3  A.  May-Mon, I believe her last name is
4  Post.
5  Q.  Okay.  You also mentioned, I think it
6  was a Tracy, and another name?
7  A.  Barbara?
8  Q.  Barbara and Tracy?
9  A.  Yes, who were the mediators, if I'm
10  recalling -- frankly, I don't recall their
11  last names.
12  Q.  Okay.  Can you recall any specific
13  words that I spoke conveying an agreement to
14  Induct EV's s terms during mediation?
15  A.  No.  I wasn't on the call throughout.
16  So the last part when I was there with the
17  company, and you had not come to an agreement
18  at that time.
19  Q.  Okay.  Are you aware of any contract
20  terms being said to the mediators before the
21  mediation?
22  A.  No.
23  Q.  Are you aware of any contract terms
24  being said to the mediators after mediation?

Page 12

1  A.  I'm not sure.  I don't recall.
2  Q.  Okay.  Did you see or receive any
3  communications with the mediators after the
4  mediation?
5  I'm sorry, I want to rephrase that
6  question because it's not exactly what I want
7  to ask.
8  Did you see or receive any
9  communication from the mediators after the
10  mediation?
11  A.  I do not believe I received any
12  communications from the mediators.
13  Q.  Okay.  Are you aware of any contract
14  terms being e-mailed to me before
15  September 27th?
16  A.  I'm not sure.
17  Q.  Okay.  I only have, like, one or two
18  last questions, so just let me state that.
19  When did you first view the subpoena
20  for this deposition?
21  A.  I've never received a subpoena for the
22  deposition.  My first notice was when Mr. --
23  Randy over here had e-mailed me, like, on a
24  Friday afternoon saying: Hey, you were served

Page 13

1  on March 5th. And, I had not received
2  anything. So, you know, I had a call with him
3  to, like, can you send me a copy of what I was
4  alleged to be served with. And I don't
5  believe I have seen anything with that, other
6  than the Proof of Service, which I stated was
7  not served to me.
8      And I called the contacts below to see
9  if they had been served. I called my
10 secretary/receptionist at the time, and she
11 did not have anything either of that service.
12 I spoke to the receptionist at the
13 first floor, Valley Forge Financial. They did
14 not say that a Melissa Evans worked at that
15 company. So I tried to find the subpoena, but
16 I did not receive it.
17 Q.  Just to circle back, you said that you
18 spoke with the receptionist at Infinite Blue,
19 as well?
20 A.  Yes, yes. So I spoke to her; I spoke
21 to the receptionist at the office below
22 Infinite Blue. And, no one had received
23 anything.
24 Q.  What was the name of the receptionist

Page 14

1  at Infinite Blue?
2  A.  Andrea -- I can't pronounce her name --
3  D'Annunzio.
4  Q.  Andrea D'Annunzio, I think?
5  A.  Yes.
6      MS. ACEY: All right, those are
7  all my questions.
8      MR. SCHAUER: I have a few
9  brief questions.
10     First, I'm going to share
11 something. Give me one second, please.
12     All right. I have here an
13 e-mail from me to Alexa Heisler dated
14 March 8th, 2024. I'm going to be
15 marking this as AH-1.
16     (Document marked AH Exhibit No.
17 1 for identification.)
18     BY MR. SCHAUER:
19 Q.  I'm going to give a copy to the
20 witness, and ask the witness to take a look at
21 that Exhibit AH-1, and then tell us, yes or
22 no, whether that was the e-mail that was
23 referenced in her testimony regarding hearing
24 from Randy Schauer regarding being subpoenaed?

Page 15

1  A.  Correct, this was the e-mail that you
2  introduced yourself, and I learned about the
3  subpoena.
4  Q.  Now, at that point, we were not
5  attorney/client, we didn't have an
6  attorney/client relationship; correct?
7  A.  Yes.
8  Q.  At some point that day, did I provide
9  you with a -- we have a followup e-mail that I
10 am going to actually mark as AH-2, and show
11 you. And, I will put that on the screen.
12     (Document marked AH Exhibit No.
13 2 for identification.)
14     BY MR. SCHAUER:
15 Q.  All right. What we have here now is a
16 copy of e-mails, again between Randall Schauer
17 and Alexa Heisler. The date is March 8th,
18 2024. I've marked this as Exhibit AH-2.
19 If we scroll to the bottom, we see the
20 body of the e-mail previously identified as
21 AH-1. And just, you know, to scroll down
22 through, there is an indication there's an
23 image attached to this e-mail string. It's
24 the e-mail, the initial e-mail from Randy

Page 16

1  Schauer to Alexa Heisler. It's at the bottom;
2  it's the last thing.
3  So I am going to ask you is this a true
4  and correct copy of an e-mail exchange between
5  you and Randy Schauer dated March 8, 2024?
6  And, did we have a telephone conversation,
7  also, during the course of the day on March
8  8th, 2024 regarding this subpoena.
9  And, you know, essentially, is that
10 what lead you to go look for the subpoena, as
11 you described to Ms. Acey? And, did you ever
12 see a copy of this subpoena left at any office
13 in the Momentum Blue Offices?
14 A.  No. Infinite Blue.
15 Q.  Infinite Blue?
16 A.  No, I did not.
17 Q.  There were some -- well, I'm going to
18 move from here. Just a second, I have one
19 more exhibit, and we'll soon be done.
20 I'll be back in a second here.
21     - - -
22     THE REPORTER: While we're
23 waiting, is it D'Annunzio, the name you
24 mentioned before?

Page 17

1  THE WITNESS: Yes.  It's
2 D'Annunzio, yes.
3  THE REPORTER: So, it's
4 D'A-N-N...
5  THE WITNESS: D'Annunzio, yes.
6 And, she's the office manager; I
7 incorrectly stated receptionist.
8  THE REPORTER: Thank you.
9  MR. SCHAUER: Okay, I'm
10 referring now to Exhibit AH-3.
11  (Document marked AH Exhibit No.
12 3 for identification.)
13  BY MR. SCHAUER:
14 Q.  I am referring now to Exhibit AH-3,
15 which is a document, it says Document 55-1,
16 page 10 of 10 at the top, actually.  And a
17 filing I believe from Ms. Acey.
18 Is this a copy of the Proof of Service
19 that was sent to you as part of that e-mail
20 trail, Page 2, that we just identified?  And
21 did you utilize this document to try and
22 assist you in determining whether, in fact,
23 the subpoena was ever received by anybody at
24 Infinite Blue?

Page 18

1 In fact, even if you had, had you
2 authorized anybody at Infinite Blue to accept
3 service of a subpoena on you for a matter not
4 involving Infinite Blue?
5 A.  No.
6  MS. ACEY: Attorney Schauer,
7 I'm sorry.  It seems like you put three
8 questions one after the other.  Is it
9 possible for you to go one question at
10 a time.
11  BY MR. SCHAUER:
12 Q.  Is this Proof of Service a document
13 that you utilized in attempting to find some
14 subpoena that might have been served at the
15 building in which Infinite Blue has its
16 offices?
17 A.  Yes.
18 Q.  Did you authorize anybody there in
19 those offices in any event to accept a
20 subpoena to be served on you in an individual
21 capacity not related to your employment with
22 Infinite Blue?
23 A.  No.
24  THE REPORTER: I'm sorry, was

Page 19

1 that no?
2  THE WITNESS: No.
3  THE REPORTER: Keep your voice
4 up, please.
5  BY MR. SCHAUER:
6 Q.  Were you, at any time, prior -- we're
7 talking about conversations between Randy
8 Schauer and you prior to becoming represented
9 by Randy Schauer -- where you were advised in
10 any way to attempt to avoid or, you know, not
11 accept a subpoena that somebody might be
12 trying serve on you?
13 A.  No.
14 Q.  In fact, you then agreed to appear for
15 this deposition despite having never found or
16 seen this subpoena that ostensibly was served
17 by Joe Horton, as reflected in Exhibit AH-3;
18 is that correct?
19 A.  Yes.
20  MR. SCHAUER: I have no more
21 questions.
22  MS. ACEY: Okay.  Well, I don't
23 have a recross.  So, it think this
24 deposition has occurred, and we're

Page 20

1 good.
2  MR. SCHAUER: Okay.  Thank you.
3 I will send the exhibits to the
4 court reporter as last time.
5  THE REPORTER: Okay.  Very
6 good.  Thank you.
7  - - -
8  (Witness excused.)
9  (Deposition via Zoom concluded
10 at 2:00 p.m.)
11  - - -
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 21

```
 1              I N D E X

 2

 3   WITNESS:                      PAGE

 4   ALEXA HEISLER

 5   By Ms. Acey..............................3

 6   By Mr. Schauer...........................14

 7

 8

 9           E X H I B I T S

10   NO.          DESCRIPTION          PAGE

11   AH-1    E-mail from Mr. Schauer      14
             to Alexa Heisler dated
12           March 8th, 2024

13   AH-2    E-mail exchange             15

14   AH-3    Document 55-1, Proof        17
             of Service
15

16      (Also attached but not marked:  LinkedIn

17   account for Ms. Heisler.)

18                 - - -

19

20

21

22

23

24
```

Page 22

```
 1              CERTIFICATE

 2

 3      I HEREBY CERTIFY that the proceedings,

 4   evidence and objections are contained fully

 5   and accurately in the stenographic notes taken

 6   by me upon the deposition of ALEXA HEISLER,

 7   taken on Monday, April 1, 2024, via web

 8   conference connection and subject to the

 9   clarity and completeness of the computer

10   transmission, and that this is a true and

11   correct transcript of same.

12

13

14          _____

15          DONNA HUNTER,
            Registered Professional Reporter
16          and Notary Public

17

18

19      (The foregoing certification of this

20   transcript does not apply to any reproduction

21   of the same by any means, unless under the

22   direct control and/or supervision of the

23   certifying reporter.)

24
```

## A

**able (3)**
3:11;7:18,22
**accept (3)**
18:2,19;19:11
**accessible (1)**
7:3
**account (4)**
6:15,16,18;7:2
**accurate (2)**
6:21;7:1
**Acey (24)**
3:3,16,23;4:17;5:1,
5,9,20;6:1,7,11;8:19,
20;9:11,14,20;10:15,
18,22;14:6;16:11;
17:17;18:6;19:22
**actually (2)**
15:10;17:16
**advice (1)**
9:2
**advised (1)**
19:9
**affirmed (1)**
3:8
**afternoon (1)**
12:24
**again (1)**
15:16
**agree (1)**
3:5
**agreed (1)**
19:14
**agreement (2)**
11:13,17
**AH (3)**
14:16;15:12;17:11
**AH-1 (3)**
14:15,21;15:21
**AH-2 (2)**
15:10,18
**AH-3 (3)**
17:10,14;19:17
**ahead (1)**
8:15
**ALEXA (5)**
3:7;4:2;14:13;
15:17;16:1
**alleged (1)**
13:4
**allowing (1)**
5:13
**Andrea (2)**
14:2,4
**anymore (1)**
10:20
**appear (1)**
19:14
**appears (1)**
7:1
**Applications (1)**

4:9
**appointed (1)**
7:15
**around (1)**
10:4
**assist (1)**
17:22
**attached (1)**
15:23
**attempt (1)**
19:10
**attempting (1)**
18:13
**attend (2)**
8:5,7
**attendance (1)**
10:1
**attended (4)**
8:1,3,6,8
**attending (1)**
8:21
**Attorney (5)**
5:17,20;10:10;
11:1;18:6
**attorney/client (2)**
15:5,6
**authorize (1)**
18:18
**authorized (1)**
18:2
**avoid (1)**
19:10
**aware (5)**
7:24;8:2;11:19,23;
12:13

## B

**back (2)**
13:17;16:20
**Barbara (3)**
9:24;11:7,8
**barring (2)**
9:9,17
**based (1)**
10:5
**basics (1)**
10:13
**bear (1)**
5:16
**became (1)**
7:19
**becoming (1)**
19:8
**behalf (2)**
10:11;11:2
**below (2)**
13:8,21
**Blue (13)**
4:9;6:23;13:18,22;
14:1;16:13,14,15;
17:24;18:2,4,15,22
**body (1)**

15:20
**bottom (2)**
15:19;16:1
**breakout (1)**
10:6
**brief (2)**
10:13;14:9
**building (1)**
18:15

## C

**call (3)**
8:9;11:15;13:2
**called (2)**
13:8,9
**came (2)**
6:5;10:8
**can (8)**
4:19;6:12;8:14,17;
9:5;10:19;11:12;13:3
**capacity (1)**
18:21
**case (1)**
5:6
**chat (1)**
5:12
**circle (1)**
13:17
**communication (3)**
9:10,18;12:9
**communications (5)**
8:11;9:2,4;12:3,12
**company (2)**
11:17;13:15
**concluded (1)**
20:9
**conference (1)**
3:19
**confirm (1)**
6:2
**contacts (1)**
13:8
**contract (3)**
11:19,23;12:13
**conversation (1)**
16:6
**conversations (1)**
19:7
**conveying (1)**
11:13
**copy (7)**
4:23;13:3;14:19;
15:16;16:4,12;17:18
**counsel (6)**
3:5;4:21;7:10,14,
16,19
**County (1)**
3:20
**course (1)**
16:7
**Court (2)**
5:11;20:4

**currently (1)**
4:3

## D

**D'A-N-N (1)**
17:4
**D'Annunzio (5)**
14:3,4;16:23;17:2,
5
**date (2)**
7:18;15:17
**dated (2)**
14:13;16:5
**dates (1)**
6:20
**day (3)**
7:22;15:8;16:7
**days (1)**
4:11
**defendant (2)**
8:1,3
**departure (1)**
6:23
**deposition (6)**
3:4;12:20,22;
19:15,24;20:9
**described (1)**
16:11
**despite (1)**
19:15
**determining (1)**
17:22
**difficult (1)**
3:15
**direct (1)**
9:1
**document (14)**
4:19,20,22;5:6;6:5,
9,13;14:16;15:12;
17:11,15,21;18:12
**done (2)**
10:16;16:19
**down (1)**
15:21
**drop (1)**
8:9
**during (5)**
7:11;8:12,21;
11:14;16:7

## E

**either (1)**
13:11
**e-mail (13)**
4:20;5:4,9;14:13,
22;15:1,9,20,23,24,
24;16:4;17:19
**e-mailed (2)**
12:14,23
**e-mails (1)**
15:16

**employed (2)**
4:3,5
**employer (1)**
4:8
**employment (3)**
7:7,11;18:21
**end (1)**
7:6
**essentially (1)**
16:9
**EV (4)**
7:7,8;10:11;11:2
**Evans (1)**
13:14
**even (1)**
18:1
**event (1)**
18:19
**EV's (1)**
11:14
**exactly (1)**
12:6
**examined (1)**
3:8
**exchange (1)**
16:4
**exchanged (1)**
9:23
**excused (1)**
20:8
**Exhibit (9)**
14:16,21;15:12,18;
16:19;17:10,11,14;
19:17
**exhibits (1)**
20:3
**experience (5)**
6:18,20;9:8,17;
10:13
**extent (1)**
9:4

## F

**fact (3)**
17:22;18:1;19:14
**far (1)**
9:16
**few (1)**
14:8
**filed (1)**
5:5
**filing (1)**
17:17
**Financial (1)**
13:13
**find (2)**
13:15;18:13
**fine (1)**
9:6
**first (5)**
9:16;12:19,22;
13:13;14:10

**five (1)**
10:4
**floor (1)**
13:13
**follows (1)**
3:9
**followup (1)**
15:9
**Forge (1)**
13:13
**form (1)**
8:14
**formerly (1)**
10:11
**found (1)**
19:15
**Fox (1)**
3:20
**frankly (1)**
11:10
**Friday (1)**
12:24
**Fridays (1)**
4:15

**G**

**gave (1)**
10:24
**General (3)**
7:10,16,19
**good (2)**
20:1,6
**group (1)**
10:6
**guess (1)**
7:13

**H**

**hearing (3)**
8:10,23;14:23
**HEISLER (7)**
3:7,24;4:2;6:12;
14:13;15:17;16:1
**Heisler's (1)**
4:20
**Hey (1)**
12:24
**hired (1)**
7:14
**home (3)**
4:10,13,14
**Horton (1)**
19:17
**hours (1)**
10:4

**I**

**identification (3)**
14:17;15:13;17:12
**identified (2)**

15:20;17:20
**image (1)**
15:23
**include (1)**
5:10
**incorrectly (1)**
17:7
**indication (1)**
15:22
**individual (1)**
18:20
**Induct (5)**
7:7,8;10:11;11:2,
14
**Infinite (12)**
4:9;6:23;13:18,22;
14:1;16:14,15;17:24;
18:2,4,15,22
**information (2)**
6:19;9:23
**initial (1)**
15:24
**into (1)**
5:12
**introduced (1)**
15:2
**involving (1)**
18:4

**J**

**Joe (1)**
19:17

**K**

**Keep (1)**
19:3
**kids (1)**
4:15
**known (1)**
10:12

**L**

**laptop (1)**
5:24
**last (6)**
11:3,11,16;12:18;
16:2;20:4
**lead (1)**
16:10
**learned (1)**
15:2
**left (1)**
16:12
**legal (2)**
7:14;9:2
**LinkedIn (4)**
6:15,16,17;7:5
**LLC (1)**
4:9
**long (1)**

3:5
**Longo's (1)**
5:21
**look (2)**
14:20;16:10
**looks (1)**
5:13

**M**

**manager (1)**
17:6
**March (6)**
7:8;13:1;14:14;
15:17;16:5,7
**mark (1)**
15:10
**marked (4)**
14:16;15:12,18;
17:11
**marking (1)**
14:15
**matter (1)**
18:3
**may (1)**
5:1
**May-Mon (2)**
10:1;11:3
**MCR (1)**
3:3
**mean (2)**
7:12,20
**Media (1)**
5:11
**mediation (12)**
7:24;8:6,12,22;9:9,
19,24;11:14,21,24;
12:4,10
**mediators (8)**
10:7,8;11:9,20,24;
12:3,9,12
**medication (1)**
8:2,5
**Melissa (1)**
13:14
**mentioned (2)**
11:5;16:24
**met (1)**
10:7
**might (2)**
18:14;19:11
**mind (1)**
5:2
**minute (2)**
4:18;5:16
**Momentum (2)**
10:11,12;16:13
**Montgomery (1)**
3:20
**month (1)**
7:22
**more (2)**
16:19;19:20

**morning (1)**
10:3
**most (2)**
4:7;6:22
**move (1)**
16:18
**myself (3)**
8:1,3;10:2

**N**

**name (11)**
4:1,7;5:21;9:21,22;
11:1,3,6;13:24;14:2;
16:23
**names (1)**
11:11
**need (1)**
10:20
**notice (1)**
12:22

**O**

**object (1)**
8:13
**obviously (1)**
9:3
**occurred (1)**
19:24
**October (2)**
7:15,16
**offered (1)**
9:16
**office (4)**
3:20;13:21;16:12;
17:6
**Offices (3)**
16:13;18:16,19
**often (1)**
4:12
**one (7)**
10:6;12:17;13:22;
14:11;16:18;18:8,9
**only (2)**
9:21;12:17
**ostensibly (1)**
19:16
**Otherwise (1)**
7:1
**out (1)**
6:19
**outside (1)**
8:11
**over (1)**
12:23

**P**

**page (2)**
17:16,20
**part (3)**
9:16;11:16;17:19

**partially (1)**
8:6
**parties (1)**
8:12
**parts (1)**
8:7
**Patti (1)**
10:2
**people (1)**
3:14
**perfect (1)**
6:7
**please (4)**
4:1;5:16;14:11;
19:4
**pm (1)**
20:10
**point (2)**
15:4,8
**possible (1)**
18:9
**Post (1)**
11:4
**previously (1)**
15:20
**prior (2)**
19:6,8
**privacy (1)**
7:5
**private (1)**
7:3
**privately (1)**
9:20
**privileged (3)**
9:3,9,17
**pronounce (1)**
14:2
**Proof (3)**
13:6;17:18;18:12
**provide (1)**
15:8
**publically (1)**
7:2
**put (4)**
5:12;6:19;15:11;
18:7

**R**

**Randall (1)**
15:16
**Randy (6)**
12:23;14:24;15:24;
16:5;19:7,9
**read (1)**
3:11
**recalibrate (1)**
10:23
**recall (7)**
7:4;8:10,22;9:21;
11:10,12;12:1
**recalling (1)**
11:10

**receive (3)**
12:2,8;13:16
**received (6)**
6:3;12:11,21;13:1,
22;17:23
**recent (2)**
4:7;6:22
**recently (1)**
4:5
**receptionist (5)**
13:12,18,21,24;
17:7
**recollection (1)**
10:5
**record (3)**
3:14,18;4:1
**recorded (1)**
3:5
**recross (1)**
19:23
**referenced (1)**
14:23
**referred (1)**
7:19
**referring (2)**
17:10,14
**reflected (1)**
19:17
**regarding (3)**
14:23,24;16:8
**related (2)**
9:2;18:21
**relationship (1)**
15:6
**remember (1)**
9:22
**remotely (1)**
3:8
**Rensel (1)**
10:2
**rephrase (2)**
8:18;12:5
**REPORTER (7)**
16:22;17:3,8;
18:24;19:3;20:4,5
**REPORTING (2)**
3:3;5:11
**represented (1)**
19:8
**requested (1)**
3:4
**right (7)**
3:24;5:7;6:4,13;
14:6,12;15:15
**room (1)**
3:19
**Rothschild (1)**
3:21
**running (1)**
5:24

**S**

**same (1)**
4:24
**saying (2)**
7:21;12:24
**SCHAUER (28)**
3:10,17;5:1,7,17,
19,23;6:4;8:13,24;
10:15,21;14:8,18,24;
15:14,16;16:1,5;17:9,
13;18:6,11;19:5,8,9,
20;20:2
**screen (4)**
4:21;5:15;6:8;
15:11
**scroll (2)**
15:19,21
**second (3)**
14:11;16:18,20
**secretary/receptionist (1)**
13:10
**section (1)**
6:18
**seeing (2)**
8:10,22
**seems (1)**
18:7
**Send (3)**
5:23;13:3;20:3
**sent (2)**
6:2;17:19
**separate (1)**
4:24
**separately (1)**
10:8
**September (1)**
12:15
**Serena (1)**
9:22
**serve (1)**
19:12
**served (7)**
12:24;13:4,7,9;
18:14,20;19:16
**Service (5)**
13:6,11;17:18;
18:3,12
**sessions (1)**
10:7
**set (1)**
9:20
**settings (1)**
7:5
**setup (1)**
9:23
**share (7)**
4:19,21;5:15;6:8;
7:18;9:1;14:10
**sharing (3)**
6:13;10:16,19
**show (1)**
15:10
**sick (2)**
4:15,16

**side (1)**
10:1
**sign (1)**
3:11
**somebody (1)**
19:11
**soon (1)**
16:19
**sorry (6)**
7:20;10:18,23;
12:5;18:7,24
**specific (1)**
11:12
**specifics (1)**
10:9
**spoke (7)**
10:10;11:2,13;
13:12,18,20,20
**start (2)**
6:9;8:8
**started (2)**
10:3,5
**state (2)**
3:24;12:18
**stated (2)**
13:6;17:7
**still (1)**
5:18
**stop (2)**
10:16,19
**string (1)**
15:23
**subpoena (13)**
12:19,21;13:15;
15:3;16:8,10,12;
17:23;18:3,14,20;
19:11,16
**subpoenaed (1)**
14:24
**suggested (1)**
9:20
**summary (1)**
9:8
**supposed (1)**
10:4
**sure (7)**
4:23;5:21;8:16,19;
9:5;12:1,16

**T**

**talk (1)**
9:5
**talking (1)**
19:7
**telephone (1)**
16:6
**terms (4)**
11:14,20,23;12:14
**testified (1)**
3:9
**testimony (2)**
10:24;14:23

**three (1)**
18:7
**throughout (1)**
11:15
**times (1)**
6:20
**title (1)**
7:13
**top (1)**
17:16
**Tracy (3)**
9:24;11:6,8
**trail (1)**
17:20
**transcript (1)**
3:12
**transition (1)**
7:9
**transitions (2)**
7:11,12
**tried (1)**
13:15
**true (1)**
16:3
**try (1)**
17:21
**trying (2)**
9:18;19:12
**two (1)**
12:17

**U**

**up (2)**
9:20;19:4
**updated (1)**
6:22
**utilize (1)**
17:21
**utilized (1)**
18:13

**V**

**Valley (1)**
13:13
**via (1)**
20:9
**view (1)**
12:19
**virtual (1)**
9:19
**voice (1)**
19:3

**W**

**waiting (1)**
16:23
**way (2)**
5:14;19:10
**Wednesdays (1)**
4:14

**witness (13)**
3:11,18;8:16;9:1,5,
7,12;14:20,20;17:1,5;
19:2;20:8
**woman's (1)**
9:22
**words (1)**
11:13
**work (1)**
4:10
**worked (3)**
4:12,14;13:14

**Y**

**year (1)**
7:21

**Z**

**Zoom (3)**
3:14;5:12;20:9

**1**

**1 (1)**
14:17
**10 (2)**
17:16,16

**2**

**2 (2)**
15:13;17:20
**2:00 (1)**
20:10
**2019 (1)**
7:15
**2022 (1)**
7:16
**2023 (1)**
7:8
**2024 (4)**
14:14;15:18;16:5,8
**27th (1)**
12:15

**3**

**3 (1)**
17:12

**5**

**55-1 (1)**
17:15
**5th (1)**
13:1

**6**

**65-3 (1)**
5:6

Acey vs.
Induct EV

Alexa Heisler
April 1, 2024

**8**

**8 (1)**
  16:5
**8th (3)**
  14:14;15:17;16:8

8.   Ex 5. 03-28-2024 Patti Rensel Deposition

Transcript

# In The Matter Of:

*Acey vs.*

*Induct EV*

---

*Patti Rensel*

*March 28, 2024*

---

*Media Court Reporting*

*211 North Olive Street, Suite 210*

*Media, PA  19063*

*610.566.0805*

*www.mediacourtreporting.com*

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 3                     - - -
 4
 5   ASSATA ACEY,                :
             Plaintiff          :
 6                              :
     vs.           :Docket No.2:23-cv-01438
 7                              :
 8   INDUCT EV,                  :
             Defendant          :
 9                     - - -
10           Thursday, March 28, 2024
11                     - - -
12
13       Deposition via Zoom of PATTI RENSEL,
14   taken pursuant to notice on the above date
15   beginning at approximately 1:40 p.m., before
16   Donna Hunter, Registered Professional Reporter
17   and Notary Public.
18                     - - -
19
20
21           MEDIA COURT REPORTING
             211 North Olive Street, Suite 210
22               Media, PA  19063
                 610.566.0805
23           mcr@mediacourtreporting.com
             www.mediacourtreporting.com
24
```

Page 2

```
 1   APPEARANCES:
 2
 3       ASSATA ACEY, pro se
         aceyassata@gmail.com
 4             Plaintiff
 5
 6   RANDALL C. SCHAUER, ESQUIRE
     ALBERTO LONGO, ESQUIRE
 7       FOX ROTHSCHILD LLP
         747 Constitution Drive
 8       Suite 100
         Exton, PA 19341
 9
10       Counsel for Defendant
11       rschauer@foxrothschild.com
12
13
14
15           (INDEX at end of transcript)
16
17
18
19
20
21
22
23
24
```

Page 3

```
 1   - - -
 2   . . .PATTI RENSEL, having been
 3   remotely sworn, was examined and
 4   testified as follows . . .
 5   - - -
 6   MR. SCHAUER: I am representing
 7   the defendant, as well as this witness,
 8   for purposes of this deposition.
 9   We don't waive signing of the
10   deposition, but otherwise are amenable
11   to the usual stipulations.
12   BY MS. ACEY:
13 Q.  Good morning, Ms. Rensel.  Could you
14   confirm for me the correct way to pronounce
15   your name?
16 A.  Patti Rensel.
17 Q.  Rensel, all right.  I'm so sorry for
18   mispronouncing it earlier.
19   Have you been employed by Induct EV?
20 A.  Could you repeat the question?
21 Q.  Sure.  Were you at any time employed by
22   Induct EV?
23 A.  Yes.
24 Q.  What were the dates of your employment?
```

Page 4

```
 1 A.  I don't recall.
 2 Q.  Understood.  Are you able to recall the
 3   date that you stopped working for Induct EV?
 4 A.  No.
 5 Q.  Do you recall the month or the year
 6   that you stopped working for Induct EV?
 7 A.  The year was 2023.
 8 Q.  To confirm, do you recall the month or
 9   only the year?
10 A.  I do not recall the month.  I do recall
11   the year.
12 Q.  Okay.  What is your impression of why
13   this case was started?
14   MR. SCHAUER: Objection, but
15   you can answer the question if you can.
16   MS. ACEY: Actually, I would
17   like to retry the question.
18   BY MS. ACEY:
19 Q.  Do you recall any communication to you
20   from co-workers at Induct EV about what my
21   employment was like with the defendant?
22   MR. SCHAUER: I'm going to
23   object but if you can answer it, go
24   ahead.
```

Page 5

1    THE WITNESS: I can't answer --
2  can you rephrase that question.
3    MS. ACEY: Sure.
4    BY MS. ACEY:
5  Q.  Has anyone spoken to you about my
6    employment with the defendant outside of
7    counsel?
8  A.  I can't answer that question the way
9    it's being asked.  Can you rephrase it for me?
10 Q.  Do you recall hearing anything about my
11   employment with the defendant?
12 A.  No.
13 Q.  Do you recall discussing my complaint
14   with employees of the defendant?
15 A.  No.
16 Q.  Do you recall discussing my complaint
17   with Diana Wilmes?
18    MR. SCHAUER: Are you referring
19  to the complaint filed in this case
20  because --
21    MS. ACEY: I understand.
22  That's a reasonable question.
23    BY MS. ACEY:
24 Q.  Do you recall discussing the claims of

Page 6

1  my EEOC Complaint with Diana Wilmes?
2  A.  I don't -- it's very difficult to
3    answer your question because it's so broad.
4    Could you be more specific?
5  Q.  Do you recall initiating or
6    participating in any conversations about the
7    allegation of my EEOC Complaint?
8  A.  I don't recall specific conversations
9    about the EEOC Complaint.
10 Q.  Thank you.  Did you attend the
11   mediation on behalf of the defendant?
12 A.  I attended mediation.
13 Q.  Did you attend medication on behalf of
14   the defendant to settle my EEOC Complaint?
15 A.  I don't know.  I don't know if that's
16   what it's considered, so I don't know how to
17   answer that question.
18 Q.  Okay.  To your knowledge, what was the
19   medication for?
20 A.  I believe you requested the mediation.
21 Q.  To your knowledge, what was the
22   defendant's goal in attending the mediation?
23 A.  I don't recall.
24 Q.  During mediation, do you recall hearing

Page 7

1  me at any time stating an agreement of any
2  kind?  Actually, strike that.
3  Do you recall any verbal agreement
4  being entered during mediation?
5  A.  Yes.
6  Q.  What is the verbal agreement that you
7    recall from mediation?
8  A.  You were asked to resign from
9    employment in exchange for compensation.
10 Q.  Do you recall who was relaying this
11   agreement, who was speaking about the details
12   of this agreement to me during mediation?
13 A.  I don't recall.  It was not me.
14 Q.  Do you recall any of the attorneys
15   present with you, May Mon Post or Alexa
16   Heisler, stating the details of this agreement
17   to me during the mediation?
18    MR. SCHAUER: Are you asking
19  about the agreement that the witness
20  just testified to?
21    MS. ACEY: Yes.
22    MR. SCHAUER: Thank you.
23  Sorry.
24    THE WITNESS: As I stated, I

Page 8

1  recall that that was presented to you,
2  and that it was agreed to.
3    BY MS. ACEY:
4  Q.  But, you do not recall whether that
5    agreement was verbalized, by the attorneys
6    present, to me during mediation?  Said
7    with words, whether it was conveyed through
8    oral -- let me just restart this.
9    To confirm, do you recall the agreement
10   being communicated to me orally by either May
11   Mon Post or Alexa Heisler during that
12   mediation?
13 A.  Let me think about this for one moment.
14   Let me think about the question you are
15   asking.  It was communicated verbally.
16 Q.  By verbal, you do mean, like, orally.
17 A.  It was communicated -- yes, it was
18   communicated orally.
19 Q.  Do you recall whether it was
20   communicated orally by Alexa Heisler or May
21   Mon Post?
22 A.  I do not recall.
23 Q.  Do you recall whether that
24   communication was made by the mediators only?

Page 9

1  A.  I do not recall.
2      MS. ACEY: Let's have a break
3  for about 10, 15 minute.  Can we
4  reconvene at 9:30?
5      MR. SCHAUER: It's your
6  deposition, sure.  I mean, you
7  initially projected like an
8  hour-and-a-half.  Do you still
9  anticipate that; just if you care to
10 answer the question?
11     MS. ACEY: Yes.  I think we are
12 still on schedule.  Yes, I would like
13 to take a break until 9:30.
14     MR. SCHAUER: We will be back
15 on Zoom at 9:30.
16     MS. ACEY: All right, thank
17 you.
18     (Brief recess from 9:16 to
19     9:30.)
20     MS. ACEY: All right.  I am so
21 sorry, but could you remind me again of
22 the pronunciation of your name?
23     THE WITNESS: Rensel.
24     MS. ACEY: Rensel, all right.

Page 10

1      BY MS. ACEY:
2  Q.  What was your role at Induct EV?
3  A.  Could you put a timeframe to that
4   question?
5  Q.  What was your initial role at Induct
6   EV?
7  A.  HR Director.
8  Q.  What was your final role at Induct EV?
9  A.  I don't recall my title when I left.
10 Q.  DO YOU recall any changes to your
11  title?
12 A.  There were changes to my title.
13 Q.  Which changes do you recall?
14 A.  I was hired as the HR Director.  My
15  title changed a few times.
16 Q.  What did your title change to?
17 A.  I honestly don't recall.  I --
18 Q.  Would you describe -- oh, I'm sorry.
19 A.  I am trying to remember.  I had several
20  titles while I was there; I don't recall.
21 Q.  Would you normally describe yourself --
22  just, actually, before I ask this question, I
23  just want to be clear that it is meant
24  objectively, and not necessarily to be

Page 11

1  offensive, or anything like that.
2  But, would you normally describe
3  yourself as forgetful?
4  A.  No.
5  Q.  Are you currently employed?
6  A.  Yes.
7  Q.  What is your current role?
8  A.  Would you be more specific?
9  Q.  What is your current title?
10 A.  Director of Operations.
11 Q.  Who is your employer?
12 A.  The Spearhead Group.
13 Q.  How many years of experience do you
14  have in Human Resources?
15 A.  I will need a second to count.
16     MR. SCHAUER: Off the record.
17     (Discussion held off the
18  record.)
19     MR. SCHAUER: Back on.
20     THE WITNESS: 40 years.
21     BY MS ACEY:
22 Q.  Do you have a degree?  Do you have a
23  Bachelor's Degree or a Graduate Degree?
24 A.  Could you clarify that question?

Page 12

1  Q.  Sure.  Have you completed any higher
2  education?
3  A.  Yes.
4  Q.  What higher education have you
5  completed?
6  A.  I have a Bachelor's Degree.
7  Q.  What was your Bachelor's Degree in?
8  A.  Bachelor of Science in Business
9  Administration with a concentration in
10  Personnel and Labor Relations.
11 Q.  Do you have any other qualifications,
12  aside from your experience in your Bachelor's
13  Degree for Human Resources?
14 A.  Yes.
15 Q.  What are those qualifications?
16 A.  I am certified as a Master Trainer by
17  the Zenger-Miller Corporation as a trainer and
18  a certified trainer.
19  I have taught Human Resources classes
20  at Welling College, Community College, DCC,
21  and Rowan College of Burlington County for 20
22  years.
23  And I've served in the role of Human
24  Resources Director for most of my career.

Page 13

1  Q.  Have you ever accepted a job offer
2  without receiving it in writing?
3      MR. SCHAUER: Objection.  If
4  you can answer, go ahead.
5      I apologize.  The objection is
6  for the record, but please answer the
7  question.
8      THE WITNESS: Yes, yes.
9      BY MS. ACEY:
10 Q.  Have you ever entered a Multi-Term
11 Agreement without reviewing it in writing?
12     MR. SCHAUER: Objection.  Go
13 ahead.
14     THE WITNESS: I don't
15 understand the question.
16     BY MS. ACEY:
17 Q.  Okay.  For the purpose of this
18 deposition, a Multi-Term Agreement would be
19 defined as a binding legal agreement that
20 involves multiple terms, such as monetary
21 terms, timing of performance, things of that
22 nature?
23 A.  So, could you repeat the question.
24 Q.  Yes.  Have you ever -- actually, I'll

Page 14

1  rephrase the question partially.
2  Have you ever, through your signature,
3  executed a Multi-Term Agreement without
4  receiving it in writing?
5  A.  I don't understand the question.
6  Q.  Have you ever made any multi-term
7  agreement without seeing it in writing?
8      MR. SCHAUER: Objection.
9      THE WITNESS: I'm really sorry,
10 that question is so vague.  I can't
11 answer the question.
12     BY MS. ACEY:
13 Q.  All right.  Again, for the purposes of
14 this deposition, a Multi-Term Agreement is
15 defined as a binding legal agreement.  This
16 time I would state whether oral or written,
17 that involves multiple terms.  A term being
18 exemplified as a monetary amount associated,
19 like, if you say:  We agree to provide this
20 product for the amount of $50 at the time of
21 April 12th, 2021.
22 Does this definition and example make
23 sense to you?
24 A.  I understand the term.

Page 15

1  Q.  Do you have any questions about my
2  example?
3  A.  I understand your example.
4  Q.  Have you orally, or in writing, made
5  any multi-term agreements without reviewing
6  those agreements in writing?
7      MR. SCHAUER: Objection.  Go
8  ahead.
9      THE WITNESS: Well, I can't
10 answer your question because you're
11 asking if I orally, or in writing, ever
12 did something that I didn't see in
13 writing.  So I can't answer that
14 question.
15     BY MS. ACEY:
16 Q.  So are you stating that you can't make
17 -- to clarify:  Are you saying that you can't
18 make a written agreement to an agreement that
19 you can't see in writing?  Is that what you're
20 saying?
21     MR. SCHAUER: Objection.
22     THE WITNESS: I can't answer
23 the question the way it's being asked.
24     MS. ACEY: Thank you.

Page 16

1      BY MS. ACEY:
2  Q.  Did you attend the mediation virtually?
3  A.  Yes.
4      MS. ACEY: Okay.  I don't have
5  any further question.
6      Attorney Schauer, is there
7  anything that you want to ask?
8      MR. SCHAUER: Yes, I have a few
9  questions, if I may.
10     BY MR. SCHAUER:
11 Q.  Can you please describe what your
12 role -- r-o-l-e, I know I don't pronounce that
13 well -- was in attending the mediation between
14 Momentum and Ms. Acey?
15 A.  At the time of the mediation, I was the
16 HR director, and I was asked to attend.
17 Q.  Were there others there who, if you
18 will, were the primary spokesperson or leads
19 spokesperson for Momentum for purposes of the
20 mediation?
21 A.  Others -- yes.  Others were
22 spokespeople, yes.
23 Q.  And, who was that?
24 A.  May Mon, the attorney.  I do not recall

Page 17

1  if anyone else spoke.
2  Q.  When you say anyone else, do you mean
3  anyone else on behalf of Momentum?
4  A.  Oh, yes, correct.  On behalf of
5  Momentum, I do not recall if anyone else
6  spoke.
7      MR. SCHAUER: Give me second,
8  please.
9      I am going to share a document
10  here, and I am going to refer to it as
11  document PR-1, as in Patti Rensel-1.
12      (Document marked PR Exhibit No.
13  1 for identification.)
14      MR. SCHAUER: Ms. Acey, you saw
15  this document yesterday; it's been
16  produced in discovery.  It was used as
17  an exhibit in a deposition, as here.
18      MS. ACEY: Yes.  I just want to
19  clarify, Attorney Schauer, my last --
20  well, now, my maiden name.  My maiden
21  name is pronounced Acey.
22      MR. SCHAUER: I'm sorry.
23  Okay, I'll do my best.
24  Thank you.

Page 18

1      BY MR. SCHAUER:
2  Q.  Okay.  I will refer to this document as
3  Exhibit PR-1, and the first page of the
4  document appears to be an e-mail from Ms. Acey
5  to May Mon Post, yourself, and some others
6  from Tuesday, September 27th.
7  Do you see that at the top of the first
8  page?
9  A.  Yes.
10  Q.  Can everybody see my cursor?
11  A.  Yes, I can.
12      MS. ACEY: I can see it.
13      MR. SCHAUER: Thank you.
14      BY MR. SCHAUER:
15  Q.  And here at about the fifth line down
16  on the first page of this PR-1, there is a
17  statement:  In mediation, I did agree to a
18  verbal agreement at which I would resign and
19  dismiss existing claims (prior to Sep 19) in
20  return for a settlement amount of 50,000 from
21  Momentum Dynamics Corp.
22  Do you see that sentence?
23  A.  I do.
24  Q.  Do you have any recollection with

Page 19

1  respect to whether, in fact, there was an
2  agreement made to that Ms. Acey would resign
3  and dismiss claims and that in return there
4  would be a payment of $50,000 from Momentum
5  Dynamics Corp.
6  Do you have a recollection of such an
7  agreement at the mediation?
8  A.  Yes.
9  Q.  Do you have a recollection of whether
10  Ms. Acey agreed to those terms in the course
11  of that mediation?
12  A.  My recollection is that, yes, she
13  agreed to those terms in the mediation.
14  Q.  Let's move further down on this exhibit
15  PR-1.  I apologize, there's no page number on
16  the exhibit by in the lower right-hand corner,
17  there's a series of numbers ending in 51, so
18  we will go with that.
19  This is an e-mail from May Mon Post.
20  It says it was on September 27th, 2022 at
21      14:10, and it appears to set forth terms
22  agreed upon.
23  So let's look at the paragraph at the
24  bottom of the page I just described.  It says:

Page 20

1  You agreed to resign from employment with
2  Momentum effective immediately September 19th,
3  2022.
4  Do you recall whether that topic was
5  discussed and/or agreed upon at the mediation
6  with Ms. Acey?
7  A.  Yes.
8  Q.  And, was it?
9  A.  It was discussed.
10  Q.  Was it agreed upon by Ms. Acey?
11  A.  Yes.
12  Q.  The next part of that sentence says:
13  Further agreed to provide -- this is Ms.
14  Acey -- you further agreed to provide Momentum
15  with the said resignation letter on or before
16  September 23, 2022.
17  Do you recall discussions involving
18  Ms. Acey and Ms. Post regarding a resignation
19  letter on or before Sept 23, 2022 from
20  Momentum?
21  A.  I recall the agreement for the
22  resignation letter; I do not recall the date
23  that we -- this September 23rd, I don't recall
24  if that was discussed.

Page 21

1 Q. Thank you. There is also a provision
2 in the communication from May Mon Post. It
3 says you, and that would be Ms. Acey, agreed
4 to provide Momentum with a verification form
5 from a medical provider on or before
6 September 23, 2022, returning you to return to
7 work on full duty with or without
8 restrictions.
9     Do you recall that term being discussed
10 in the mediation involving Ms. Acey and
11 Momentum?
12 A. I recall the discussion; I recall the
13 agreement. I do not recall the date of
14 September 23rd being discussed.
15 Q. And, when you say "discussed," was that
16 a discussion involving Ms. Acey and I guess
17 Ms. Post?
18 A. Yes. I recall the discussion about the
19 verification form for medical provider. I
20 recall the agreement of the medical provider.
21 Q. So the next statement in this e-mail
22 from May Mon Post says: You, that would be
23 Ms. Acey, agreed to a general release,
24 non-disparagement and confidentially, and

Page 22

1 Momentum agreed to provide neutral reference.
2     Do you remember that particular set of
3 terms having been discussed at the mediation
4 with Ms. Acey?
5 A. Can you divide the question into
6 specifics on that sentence because some of
7 that, there are parts of that, that I can say
8 I remember, and parts that I don't.
9 Q. Okay. Do you recall discussion
10 regarding a general release at the mediation
11 between Ms. Acey and Momentum?
12 A. I do not recall.
13 Q. Do you recall discussions regarding a
14 non-disparagement -- I'm going to say a
15 clause -- in the mediation involving Ms. Acey
16 and Momentum?
17 A. I don't recall.
18 Q. Do you recall discussions regarding a
19 confidentiality clause in the Mediation
20 between Ms. Acey and Momentum?
21 A. I don't recall.
22 Q. Do you recall discussions regarding
23 Momentum providing Ms. Acey with a neutral
24 reference at the mediation between Ms. Acey

Page 23

1 and Momentum?
2 A. I do recall that, yes.
3 Q. Do you have any specific recollection
4 as to the discussion around the neutral
5 reference?
6 A. I just recall it coming up in
7 discussion, that there was some discussion
8 about neutral reference. I don't recall the
9 details of the rest of it.
10 Q. Do you have a recollection as to
11 whether Ms. Acey agreed and concluded in this
12 resolution?
13 A. I don't recall if she asked.
14 Q. Okay. The next line says that in
15 exchange for the above within 30 days of the
16 execution of the Settlement Agreement by you,
17 meaning Ms. Acey, Momentum agreed to pay the
18 settlement proceeds in the total amount of
19 $50,000 less deductions?
20     Do you recall discussion of that term,
21 meaning payment of the $50,000?
22 A. I recall the amount of $50,000 being
23 discussed. I do not recall the 30-day
24 execution of the settlement agreement. I just

Page 24

1 don't remember that detail.
2 Q. Were you involved in any way with
3 preparation of a settlement agreement or a
4 draft of a settlement agreement be provided to
5 Ms. Acey following?
6 A. I wasn't involved in the preparation.
7 Q. Do you know who prepared that as you
8 sit here today?
9 A. Legal counsel. I don't remember which
10 legal counsel, but legal counsel.
11     MR. SCHAUER: I don't have any
12 other questions.
13     MS. ACEY: I just want to
14 circle back with some additional
15 questions. It's really just a few
16 questions.
17     BY MS. ACEY:
18 Q. Ms. Rensel, do you recall any specific
19 wording or anything said by me to convey my
20 agreement during mediation?
21 A. I do not.
22 Q. Do you work from home?
23     MR. SCHAUER: Now?
24     BY MS. ACEY:

Page 25

1 Q.  Do you currently work from home?
2 A.  No -- that's a really hard question to
3   answer.  Could you be more specific?
4 Q.  Okay.  Do you usually now work from
5   home or report to a physical office?
6 A.  I do not normally work from home.
7 Q.  All right.  What is the city and state
8   of the office that you work in?
9     THE WITNESS: Do I have to
10  answer that question?
11    MR. SCHAUER: Go ahead, yes.
12    There is no objection, and you
13  haven't been directed not to, so yes.
14    THE WITNESS: Okay.  So,
15  rephrase the question.
16    MS. ACEY: Sure.
17    BY MS. ACEY:
18 Q.  What is the city and state of the
19  office that you work in?
20 A.  Yardley, Pennsylvania.
21    MS. ACEY: Thank you.  No
22  further questions.
23    THE WITNESS: May I clarify a
24  question that I couldn't remember the

Page 26

1  answer to?
2     MS. ACEY: Sure.
3     THE WITNESS: So you asked a
4  question about my titles when I was at
5  Momentum.  My title changed a lot.  I
6  was hired as the HR Director.  I was
7  promoted to another position -- I don't
8  remember what they called me at that
9  time.  Then, I was the Chief People
10 Officer.  And then my job title changed
11 again, after I was Chief People
12 Officer, very briefly to something else
13 before I left.
14    So, to your question, at one
15 point I was called the Chief People
16 Officer.  I may have had other titles
17 while I was there.
18    MS. ACEY: Thank you very much.
19    THE WITNESS: Of course.
20    MR. SCHAUER: I have no further
21 questions.
22    Are you done with questions,
23 Ms. Acey?
24    MS. ACEY: Yes, I think we can

Page 27

1  conclude this deposition.
2     MR. SCHAUER: Actually, Ms.
3  Rensel, you are discharged, I guess is
4  the word; is that fair to say?
5     THE WITNESS: Thank you.
6     MR. SCHAUER: You're welcome.
7     - - -
8     (Witness excused.)
9     (Deposition concluded at 10:00
10 a.m.)
11    MR. SCHAUER: Donna, do you
12 want me to e-mail you the exhibits that
13 have been referred to?
14    THE REPORTER: Yes, and do you
15 want a copy of the transcript?
16    MR. SCHAUER: Yes, please.
17    MS. ACEY: And, I want a copy
18 of the transcript.
19    THE REPORTER: Okay.  And, the
20 read and sign, I will send to you, Mr.
21 Schauer, to forward to Ms. Rensel.
22    MR. SCHAUER: That's fine.
23    THE REPORTER: All right, have
24 a good day.

Page 28

1
2          I N D E X.
3 Witness:                      Page
4 PATTI RENSEL
5 By Ms. Acey...........................3, 24
6 By Mr. Schauer.......................16
7
8
9
10        E X H I B I T S
10 NO.          DESCRIPTION          PAGE
11 PR-1    E-mails from September, 2022    17
12
13
14
15
16
17
18              - - -
19
20
21
22
23
24

Acey vs.                                                                   Patti Rensel
Induct EV                                                               March 28, 2024

Page 29

 1              CERTIFICATE
 2
 3        I HEREBY CERTIFY that the proceedings,
 4   evidence and objections are contained fully
 5   and accurately in the stenographic notes taken
 6   by me upon the deposition of PATTI RENSEL,
 7   taken on Thursday, March 28, 2024, via web
 8   conference connection and subject to the
 9   clarity and completeness of the computer
10   transmission, and that this is a true and
11   correct transcript of same.
12
13
14   _____
15        DONNA HUNTER,
        Registered Professional Reporter
16        and Notary Public
17
18
19        (The foregoing certification of this
20   transcript does not apply to any reproduction
21   of the same by any means, unless under the
22   direct control and/or supervision of the
23   certifying reporter.)
24

**$**

**$50 (1)**
14:20
**$50,000 (4)**
19:4;23:19,21,22

**A**

**able (1)**
4:2
**above (1)**
23:15
**accepted (1)**
13:1
**ACEY (59)**
3:12;4:16,18;5:3,4,
21,23;7:21;8:3;9:2,
11,16,20,24;10:1;
11:21;13:9,16;14:12;
15:15,24;16:1,4,14;
17:14,18,21;18:4,12;
19:2,10;20:6,10,14,
18;21:3,10,16,23;
22:4,11,15,20,23,24;
23:11,17;24:5,13,17,
24;25:16,17,21;26:2,
18,23,24;27:17
**Actually (5)**
4:16;7:1;10:22;
13:24;27:2
**additional (1)**
24:14
**Administration (1)**
12:9
**again (3)**
9:21;14:13;26:11
**agree (2)**
14:19;18:17
**agreed (14)**
8:2;19:10,13,22;
20:1,5,10,13,14;21:3,
23;22:1;23:11,17
**agreement (29)**
7:1,3,6,11,12,16,
19;8:5,9;13:11,18,19;
14:3,7,14,15;15:18,
18;18:18;19:2,7;
20:21;21:13,20;
23:16,24;24:3,4,20
**agreements (2)**
15:5,6
**ahead (5)**
4:24;13:4,13;15:8;
25:11
**Alexa (3)**
7:15;8:11,20
**allegation (1)**
6:7
**amenable (1)**
3:10
**amount (5)**

14:18,20;18:20;
23:18,22
**and/or (1)**
20:5
**anticipate (1)**
9:9
**apologize (2)**
13:5;19:15
**appears (2)**
18:4;19:21
**April (1)**
14:21
**around (1)**
23:4
**aside (1)**
12:12
**associated (1)**
14:18
**attend (4)**
6:10,13;16:2,16
**attended (1)**
6:12
**attending (1)**
6:22;16:13
**Attorney (3)**
16:6,24;17:19
**attorneys (2)**
7:14;8:5

**B**

**Bachelor (1)**
12:8
**Bachelor's (4)**
11:23;12:6,7,12
**back (3)**
9:14;11:19;24:14
**behalf (4)**
6:11,13;17:3,4
**best (1)**
17:23
**binding (2)**
13:19;14:15
**bottom (1)**
19:24
**break (2)**
9:2,13
**Brief (1)**
9:18
**briefly (1)**
26:12
**broad (1)**
6:3
**Burlington (1)**
12:21
**Business (1)**
12:8

**C**

**called (2)**
26:8,15
**can (14)**

4:15,15,23;5:2,9;
9:3;13:4;16:11;
18:10,11,12;22:5,7;
26:24
**care (1)**
9:9
**career (1)**
12:24
**case (2)**
4:13;5:19
**certified (2)**
12:16,18
**change (1)**
10:16
**changed (3)**
10:15;26:5,10
**changes (3)**
10:10,12,13
**Chief (3)**
26:9,11,15
**circle (1)**
24:14
**city (2)**
25:7,18
**claims (3)**
5:24;18:19;19:3
**clarify (4)**
11:24;15:17;17:19;
25:23
**classes (1)**
12:19
**clause (2)**
22:15,19
**clear (1)**
10:23
**College (3)**
12:20,20,21
**coming (1)**
23:6
**communicated (5)**
8:10,15,17,18,20
**communication (3)**
4:19;8:24;21:2
**Community (1)**
12:20
**compensation (1)**
7:9
**complaint (7)**
5:13,16,19;6:1,7,9,
14
**completed (2)**
12:1,5
**concentration (1)**
12:9
**conclude (1)**
27:1
**concluded (2)**
23:11;27:9
**confidentiality (1)**
22:19
**confidentially (1)**
21:24
**confirm (3)**

3:14;4:8;8:9
**considered (1)**
6:16
**conversations (2)**
6:6,8
**convey (1)**
24:19
**conveyed (1)**
8:7
**copy (2)**
27:15,17
**corner (1)**
19:16
**Corp (2)**
18:21;19:5
**Corporation (1)**
12:17
**counsel (4)**
5:7;24:9,10,10
**count (1)**
11:15
**County (1)**
12:21
**course (2)**
19:10;26:19
**co-workers (1)**
4:20
**current (2)**
11:7,9
**currently (2)**
11:5;25:1
**cursor (1)**
18:10

**D**

**date (3)**
4:3;20:22;21:13
**dates (1)**
3:24
**day (1)**
27:24
**days (1)**
23:15
**DCC (1)**
12:20
**deductions (1)**
23:19
**defendant (7)**
3:7;4:21;5:6,11,14;
6:11,14
**defendant's (1)**
6:22
**defined (2)**
13:19;14:15
**definition (1)**
14:22
**degree (6)**
11:22,23,23;12:6,7,
13
**deposition (8)**
3:8,10;9:6;13:18;
14:14;17:17;27:1,9

**describe (4)**
10:18,21;11:2;
16:11
**described (1)**
19:24
**detail (1)**
24:1
**details (3)**
7:11,16;23:9
**Diana (2)**
5:17;6:1
**difficult (1)**
6:2
**directed (1)**
25:13
**Director (6)**
10:7,14;11:10;
12:24;16:16;26:6
**discharged (1)**
27:3
**discovery (1)**
17:16
**discussed (8)**
20:5,9,24;21:9,14,
15;22:3;23:23
**discussing (3)**
5:13,16,24
**Discussion (9)**
11:17;21:12,16,18;
22:9;23:4,7,7,20
**discussions (4)**
20:17;22:13,18,22
**dismiss (2)**
18:19;19:3
**divide (1)**
22:5
**document (6)**
17:9,11,12,15;18:2,
4
**done (1)**
26:22
**Donna (1)**
27:11
**down (2)**
18:15;19:14
**draft (1)**
24:4
**During (7)**
6:24;7:4,12,17;8:6,
11;24:20
**duty (1)**
21:7
**Dynamics (2)**
18:21;19:5

**E**

**earlier (1)**
3:18
**education (2)**
12:2,4
**EEOC (4)**
6:1,7,9,14

**effective (1)**
  20:2
**either (1)**
  8:10
**else (5)**
  17:1,2,3,5;26:12
**e-mail (4)**
  18:4;19:19;21:21;
  27:12
**employed (3)**
  3:19,21;11:5
**employees (1)**
  5:14
**employer (1)**
  11:11
**employment (6)**
  3:24;4:21;5:6,11;
  7:9;20:1
**ending (1)**
  19:17
**entered (2)**
  7:4;13:10
**EV (8)**
  3:19,22;4:3,6,20;
  10:2,6,8
**everybody (1)**
  18:10
**examined (1)**
  3:3
**example (3)**
  14:22;15:2,3
**exchange (2)**
  7:9;23:15
**excused (1)**
  27:8
**executed (1)**
  14:3
**execution (2)**
  23:16,24
**exemplified (1)**
  14:18
**Exhibit (5)**
  17:12,17;18:3;
  19:14,16
**exhibits (1)**
  27:12
**existing (1)**
  18:19
**experience (2)**
  11:13;12:12

**F**

**fact (1)**
  19:1
**fair (1)**
  27:4
**few (3)**
  10:15;16:8;24:15
**fifth (1)**
  18:15
**filed (1)**
  5:19

**final (1)**
  10:8
**fine (1)**
  27:22
**first (3)**
  18:3,7,16
**following (1)**
  24:5
**follows (1)**
  3:4
**forgetful (1)**
  11:3
**form (2)**
  21:4,19
**forth (1)**
  19:21
**forward (1)**
  27:21
**full (1)**
  21:7
**further (6)**
  16:5;19:14;20:13,
  14;25:22;26:20

**G**

**general (2)**
  21:23;22:10
**goal (1)**
  6:22
**Good (2)**
  3:13;27:24
**Graduate (1)**
  11:23
**Group (1)**
  11:12
**guess (2)**
  21:16;27:3

**H**

**hard (1)**
  25:2
**hearing (2)**
  5:10;6:24
**Heisler (3)**
  7:16;8:11,20
**held (1)**
  11:17
**higher (2)**
  12:1,4
**hired (2)**
  10:14;26:6
**home (1)**
  24:22;25:1,5,6
**honestly (1)**
  10:17
**hour-and-a-half (1)**
  9:8
**HR (4)**
  10:7,14;16:16;26:6
**Human (4)**
  11:14;12:13,19,23

**I**

**identification (1)**
  17:13
**immediately (1)**
  20:2
**impression (1)**
  4:12
**Induct (8)**
  3:19,22;4:3,6,20;
  10:2,5,8
**initial (1)**
  10:5
**initially (1)**
  9:7
**initiating (1)**
  6:5
**into (1)**
  22:5
**involved (2)**
  24:2,6
**involves (2)**
  13:20;14:17
**involving (4)**
  20:17;21:10,16;
  22:15

**J**

**job (2)**
  13:1;26:10

**K**

**kind (1)**
  7:2
**knowledge (2)**
  6:18,21

**L**

**Labor (1)**
  12:10
**last (1)**
  17:19
**leads (1)**
  16:18
**left (2)**
  10:9;26:13
**legal (5)**
  13:19;14:15;24:9,
  10,10
**less (1)**
  23:19
**letter (3)**
  20:15,19,22
**line (2)**
  18:15;23:14
**look (1)**
  19:23
**lot (1)**
  26:5

**lower (1)**
  19:16

**M**

**maiden (2)**
  17:20,20
**many (1)**
  11:13
**marked (1)**
  17:12
**Master (1)**
  12:16
**May (11)**
  7:15;8:10,20;16:9,
  24;18:5;19:19;21:2,
  22;25:23;26:16
**mean (3)**
  8:16;9:6;17:2
**meaning (2)**
  23:17,21
**meant (1)**
  10:23
**mediation (27)**
  6:11,12,20,22,24;
  7:4,7,12,17;8:6,12;
  16:2,13,15,20;18:17;
  19:7,11,13;20:5;
  21:10;22:3,10,15,19,
  24;24:20
**mediators (1)**
  8:24
**medical (3)**
  21:5,19,20
**medication (2)**
  6:13,19
**minute (1)**
  9:3
**mispronouncing (1)**
  3:18
**moment (1)**
  8:13
**Momentum (19)**
  16:14,19;17:3,5;
  18:21;19:4;20:2,14,
  20;21:4,11;22:1,11,
  16,20,23;23:1,17;
  26:5
**Mon (8)**
  7:15;8:11,21;
  16:24;18:5;19:19;
  21:2,22
**monetary (2)**
  13:20;14:18
**month (3)**
  4:5,8,10
**more (3)**
  6:4;11:8;25:3
**morning (1)**
  3:13
**most (1)**
  12:24
**move (1)**

**19:14**
**much (1)**
  26:18
**multiple (2)**
  13:20;14:17
**Multi-Term (6)**
  13:10,18;14:3,6,14;
  15:5

**N**

**name (4)**
  3:15;9:22;17:20,21
**nature (1)**
  13:22
**necessarily (1)**
  10:24
**need (1)**
  11:15
**neutral (4)**
  22:1,23;23:4,8
**next (3)**
  20:12;21:21;23:14
**non-disparagement (2)**
  21:24;22:14
**normally (1)**
  10:21;11:2;25:6
**number (1)**
  19:15
**numbers (1)**
  19:17

**O**

**object (1)**
  4:23
**Objection (8)**
  4:14;13:3,5,12;
  14:8;15:7,21;25:12
**objectively (1)**
  10:24
**Off (2)**
  11:16,17
**offensive (1)**
  11:1
**offer (1)**
  13:1
**office (3)**
  25:5,8,19
**Officer (3)**
  26:10,12,16
**one (2)**
  8:13;26:14
**only (2)**
  4:9;8:24
**Operations (1)**
  11:10
**oral (2)**
  8:8;14:16
**orally (6)**
  8:10,16,18,20;15:4,
  11
**others (4)**

16:17,21;21;18:5
**otherwise (1)**
   3:10
**outside (1)**
   5:6

## P

**page (5)**
   18:3,8,16;19:15,24
**paragraph (1)**
   19:23
**part (1)**
   20:12
**partially (1)**
   14:1
**participating (1)**
   6:6
**particular (1)**
   22:2
**parts (2)**
   22:7,8
**PATTI (3)**
   3:2,16;17:11
**pay (1)**
   23:17
**payment (2)**
   19:4;23:21
**Pennsylvania (1)**
   25:20
**People (3)**
   26:9,11,15
**performance (1)**
   13:21
**Personnel (1)**
   12:10
**physical (1)**
   25:5
**please (4)**
   13:6;16:11;17:8;
   27:16
**point (1)**
   26:15
**position (1)**
   26:7
**Post (9)**
   7:15;8:11,21;18:5;
   19:19;20:18;21:2,17,
   22
**PR (1)**
   17:12
**PR-1 (4)**
   17:11;18:3,16;
   19:15
**preparation (2)**
   24:3,6
**prepared (1)**
   24:7
**present (2)**
   7:15;8:6
**presented (1)**
   8:1
**primary (1)**

16:18
**prior (1)**
   18:19
**proceeds (1)**
   23:18
**produced (1)**
   17:16
**product (1)**
   14:20
**projected (1)**
   9:7
**promoted (1)**
   26:7
**pronounce (2)**
   3:14;16:12
**pronounced (1)**
   17:21
**pronunciation (1)**
   9:22
**provide (5)**
   14:19;20:13,14;
   21:4;22:1
**provided (1)**
   24:4
**provider (3)**
   21:5,19,20
**providing (1)**
   22:23
**provision (1)**
   21:1
**purpose (1)**
   13:17
**purposes (3)**
   3:8;14:13;16:19
**put (1)**
   10:3

## Q

**qualifications (2)**
   12:11,15

## R

**read (1)**
   27:20
**really (3)**
   14:9;24:15;25:2
**reasonable (1)**
   5:22
**recall (60)**
   4:1,2,5,8,10,10,19;
   5:10,13,16,24;6:5,8,
   23,24;7:3,7,10,13,14;
   8:1,4,9,19,22,23;9:1;
   10:9,10,13,17,20;
   16:24;17:5;20:4,17,
   21,22,23;21:9,12,12,
   13,18,20;22:9,12,13,
   17,18,21,22;23:2,6,8,
   13,20,22,23;24:18
**receiving (2)**
   13:2;14:4

**recess (1)**
   9:18
**recollection (6)**
   18:24;19:6,9,12;
   23:3,10
**reconvene (1)**
   9:4
**record (3)**
   11:16,18;13:6
**refer (2)**
   17:10;18:2
**reference (4)**
   22:1,24;23:5,8
**referred (1)**
   27:13
**referring (1)**
   5:18
**regarding (5)**
   20:18;22:10,13,18,
   22
**Relations (1)**
   12:10
**relaying (1)**
   7:10
**release (2)**
   21:23;22:10
**remember (7)**
   10:19;22:2,8;24:1,
   9;25:24;26:8
**remind (1)**
   9:21
**remotely (1)**
   3:3
**RENSEL (9)**
   3:2,13,16,17;9:23,
   24;24:18;27:3,21
**Rensel-1 (1)**
   17:11
**repeat (2)**
   3:20;13:23
**rephrase (4)**
   5:2,9;14:1;25:15
**report (1)**
   25:5
**REPORTER (3)**
   27:14,19,23
**representing (1)**
   3:6
**requested (1)**
   6:20
**resign (4)**
   7:8;18:18;19:2;
   20:1
**resignation (3)**
   20:15,18,22
**resolution (1)**
   23:12
**Resources (4)**
   11:14;12:13,19,24
**respect (1)**
   19:1
**rest (1)**
   23:9

**restart (1)**
   8:8
**restrictions (1)**
   21:8
**retry (1)**
   4:17
**return (3)**
   18:20;19:3;21:6
**returning (1)**
   21:6
**reviewing (1)**
   13:11;15:5
**right (7)**
   3:17;9:16,20,24;
   14:13;25:7;27:23
**right-hand (1)**
   19:16
**role (6)**
   10:2,5,8;11:7;
   12:23;16:12
**r-o-l-e (1)**
   16:12
**Rowan (1)**
   12:21

## S

**saw (1)**
   17:14
**saying (2)**
   15:17,20
**SCHAUER (35)**
   3:6;4:14,22;5:18;
   7:18,22;9:5,14;11:16,
   19;13:3,12;14:8;15:7,
   21;16:6,8,10;17:7,14,
   19,22;18:1,13,14;
   24:11,23;25:11;
   26:20;27:2,6,11,16,
   21,22
**schedule (1)**
   9:12
**Science (1)**
   12:8
**second (2)**
   11:15;17:7
**seeing (1)**
   14:7
**send (1)**
   27:20
**sense (1)**
   14:23
**sentence (3)**
   18:22;20:12;22:6
**Sep (1)**
   18:19
**Sept (1)**
   20:19
**September (7)**
   18:6;19:20;20:2,
   16,23;21:6,14
**series (1)**
   19:17

**served (1)**
   12:23
**set (2)**
   19:21;22:2
**settle (1)**
   6:14
**settlement (6)**
   18:20;23:16,18,24;
   24:3,4
**several (1)**
   10:19
**share (1)**
   17:9
**sign (1)**
   27:20
**signature (1)**
   14:2
**signing (1)**
   3:9
**sit (1)**
   24:8
**sorry (6)**
   3:17;7:23;9:21;
   10:18;14:9;17:22
**speaking (1)**
   7:11
**Spearhead (1)**
   11:12
**specific (6)**
   6:4,8;11:8;23:3;
   24:18;25:3
**specifics (1)**
   22:6
**spoke (2)**
   17:1,6
**spoken (1)**
   5:5
**spokespeople (1)**
   16:22
**spokesperson (2)**
   16:18,19
**started (1)**
   4:13
**state (3)**
   14:16;25:7,18
**stated (1)**
   7:24
**statement (2)**
   18:17;21:21
**stating (3)**
   7:1,16;15:16
**still (2)**
   9:8,12
**stipulations (1)**
   3:11
**stopped (2)**
   4:3,6
**strike (1)**
   7:2
**Sure (6)**
   3:21;5:3;9:6;12:1;
   25:16;26:2
**sworn (1)**

3:3

**T**

**taught (1)**
12:19
**term (4)**
14:17,24;21:9;
23:20
**terms (7)**
13:20,21;14:17;
19:10,13,21;22:3
**testified (2)**
3:4;7:20
**timeframe (1)**
10:3
**times (1)**
10:15
**timing (1)**
13:21
**title (8)**
10:9,11,12,15,16;
11:9;26:5,10
**titles (3)**
10:20;26:4,16
**today (1)**
24:8
**top (1)**
18:7
**topic (1)**
20:4
**total (1)**
23:18
**Trainer (3)**
12:16,17,18
**transcript (2)**
27:15,18
**trying (1)**
10:19
**Tuesday (1)**
18:6

**U**

**Understood (1)**
4:2
**up (1)**
23:6
**upon (3)**
19:22;20:5,10
**used (1)**
17:16
**usual (1)**
3:11
**usually (1)**
25:4

**V**

**vague (1)**
14:10
**verbal (4)**
7:3,6;8:16;18:18

**verbalized (1)**
8:5
**verbally (1)**
8:15
**verification (2)**
21:4,19
**virtually (1)**
16:2

**W**

**waive (1)**
3:9
**way (4)**
3:14;5:8;15:23;
24:2
**welcome (1)**
27:6
**Welling (1)**
12:20
**Wilmes (2)**
5:17;6:1
**within (1)**
23:15
**without (6)**
13:2,11;14:3,7;
15:5;21:7
**witness (18)**
3:7;5:1;7:19,24;
9:23;11:20;13:8,14;
14:9;15:9,22;25:9,14,
23;26:3,19;27:5,8
**word (1)**
27:4
**wording (1)**
24:19
**words (1)**
8:7
**work (7)**
21:7;24:22;25:1,4,
6,8,19
**working (2)**
4:3,6
**writing (9)**
13:2,11;14:4,7;
15:4,6,11,13,19
**written (2)**
14:16;15:18

**Y**

**Yardley (1)**
25:20
**year (4)**
4:5,7,9,11
**years (3)**
11:13,20;12:22
**yesterday (1)**
17:15

**Z**

**Zenger-Miller (1)**

12:17
**Zoom (1)**
9:15

**1**

**1 (1)**
17:13
**10 (1)**
9:3
**10:00 (1)**
27:9
**12th (1)**
14:21
**14:10 (1)**
19:21
**15 (1)**
9:3
**19 (1)**
18:19
**19th (1)**
20:2

**2**

**20 (1)**
12:21
**2021 (1)**
14:21
**2022 (5)**
19:20;20:3,16,19;
21:6
**2023 (1)**
4:7
**23 (3)**
20:16,19;21:6
**23rd (2)**
20:23;21:14
**27th (2)**
18:6;19:20

**3**

**30 (1)**
23:15
**30-day (1)**
23:23

**4**

**40 (1)**
11:20

**5**

**50,000 (1)**
18:20
**51 (1)**
19:17

**9**

**9:16 (1)**

9:18
**9:30 (4)**
9:4,13,15,19

9.   Ex. 6. 09-20-2022 Therapy Visit Note

Morning after Mediation_Redacted



**Soho Medical Doctors, PLLC**
**Patient:** Assata Acey
**Provider:** Chantele Mallory, LCSW

**DOB:** ▉▉▉▉▉▉
**Visit:** 09/20/2022 10:00AM

**Sex:** F
**Chart:** ACAS000002

Therapy Type: supportive, interpersonal
Focus: mood, stressors

Session Note: Patient spoke about recent mediation with job and feeling physically drained. Provider supported patient with exploring emotion related to mediation. Patient seemed to struggle with identification of any feelings of relief due to an unclear resolution. Patient supported with increasing awareness to successes throughout the process and effort placed with self-advocacy.
Patient also reports being placed on a new medication to manage flare-ups related to medical condition. Patient recognizes an increase in flare-ups when managing stressful situations and recognizes the past few months have been a challenge. Patient was reflective of traumatic experiences and how this impacts her current relationships, specifically a desire to be protective in certain situations. Patient also recognizes a pattern of avoiding issues that involve feelings of sexual abuse and discomfort, referring to most recent concern with medical profession. Provider offered validation and supported patient with body's desire to protect from traumatic experiences. Patient was receptive to exploring these feelings further over the course of treatment. Patient and provider discussed strategies to limit stress within the next week.

Plan: Patient will engage in strategies to engage in self care and minimize stress. Next session scheduled for 9/27 at 10am.

Therapy time spent with patient: 57 minutes

**Chief Complaint:** Major Depressive Disorder and Anxiety

**Assessment:**

| Type | Code | Description |
|---|---|---|
| ICD-10-CM Condition | F33.0 | Major depressive disorder, recurrent, mild |
| ICD-10-CM Condition | F41.1 | Generalized anxiety disorder |

[Page 3]

E-signed by Chantele Mallory, LCSW on 09/20/2022 12:21PM EDT
This page was generated at 09/20/2022 12:21PM EDT

10. Ex. 7. 09-20-2022 Text Messages from

Myself to Joren Wendschuh Disclosing

Mediation Conditions



[Download]

| | | | |
|---|---|---|---|
| Sent | 09/20/2022 8:17:50 PM | Joren(boss) (+1203300399 0) | Done interrupted the concurrent zoom chat family is anmoying |
| Received | 09/20/2022 8:19:54 PM | Joren(boss) (+1203300399 0) | Loll |
| Sent | 09/20/2022 8:26:49 PM | Joren(boss) (+1203300399 0) | Resignation process is as follows. I have to get a letter from my doctor certifying that I can work it's okay if I need accommodations. I have to send that to the new head of HR. The special lawyer they hired has to send me their settlement draft based off of the key things that we negotiated. I have to have that draft reviewed by a lawyer based off of the additional confidentiality terms that she might tag on. If everything checks out it would be signed. If not it would be thrown out and I would just go to investigation cuz I'm not dealing with those people. |
| Sent | 09/20/2022 8:27:42 PM | Joren(boss) (+1203300399 0) | After it was signed, I would have to you know resign. I'm assuming they would comp my vacation days. Unsure if I'd have to mail my laptop in. |
| Sent | 09/20/2022 8:28:07 PM | Joren(boss) (+1203300399 0) | So yeah until my doctor updates the note and Patty acknowledges it and I get a lawyer to review the new contract and stuff I wouldn't actually be resigned. |

11. Ex. 8. 10-04-2022 Therapy Visit Note Week after Terminaition_Redacted



**Soho Medical Doctors, PLLC**

| | | |
|---|---|---|
| **Patient:** Assata Acey | **DOB:** ▮▮▮▮▮ | **Sex:** F |
| **Provider:** Chantele Mallory, LCSW | **Visit:** 10/04/2022 10:00AM | **Chart:** ACAS000002 |

Therapy Type: supportive, interpersonal
Focus: mood, stressors

Session Note: Patient reports focusing a lot of attention on her home and continuing to follow up with medical issues. Patient reports feeling more frustrated recently due to becoming easily tired although she has a desire to remain active. Patient spoke about impacts on her autonomic nervous system. Provider supported patient with awareness to stress and impacts on the body. Patient reports being wrongfully terminated and was allotted space to express feelings related to events. Patient appears to lack insight to body's response when discussing stressful events. Provider supported patient with awareness to body's changes while speaking about events. Provider and patient also explored her health conditions seeming to increase as her external stressors have increased.
Patient reports also being really reflective of the outcome she wants from her current mediation, since monetary compensation has not been a motivation. Provider supported with labeling emotions about patient's awareness to desirable outcomes and prioritizing health.

Plan: Patient will engage in strategies to engage in self care and minimize stress. Next session scheduled for 10/6 at 12pm.

Therapy time spent with patient: 57 minutes

**Chief Complaint:** Major Depressive Disorder and Anxiety

**Assessment:**

| Type | Code | Description |
|---|---|---|
| ICD-10-CM Condition | F33.0 | Major depressive disorder, recurrent, mild |
| ICD-10-CM Condition | F41.1 | Generalized anxiety disorder |

---

[Page 3]

INDUCTEV INITIDISCL018842

12. Ex. 9. 09-26-2023 Therapy Visit During Litigation



**Soho Medical Doctors, PLLC**

**Patient:** Assata Acey                                                                 **Sex:** F

**Provider:** Chantele Mallory, LCSW                **Visit:** 09/26/2023 10:00AM      **Chart:** ACAS000002

---

Patient will increase use of self affirmations on a daily basis to manage stress related to medical condition. Patient has utilized religious/ spiritual practices to recognize locus of control/ reduce worry.
Status: in progress

**Monitoring:** Relationships, anxiety, mood, stressors, coping skills, communication

**Barriers to Progress:** None

## Intervention:

Therapy Type: supportive, insight oriented
Focus: mood, stressors

Session Note: Patient joined session late due to tending to personal phone call. Patient reports feeling busy with family life but also excited about upcoming wedding. Patient provided update on medical conditions and experiencing increased nausea. Patient's PCP attributes to stress opposed to medical concerns. Patient expressed awareness to increased intrusive thoughts and feelings of hopelessness when working on legal case "it's really impacting my mental health." Provider encouraged exploration of triggers and offered psychoeducation regarding typical responses to stressors. Provider shared feedback regarding patient's response appearing aligned to PTSD and trauma reactions. Provider and patient engaged in techniques during session for emotional regulation and reducing physiological distress. Patient and provider also discussed use of emergency resources and supports if patient has an increase in intrusive thoughts or SI. Patient currently denies SI or plan and also has communicated feelings with partner. Patient has also received emotional support from grandmother.
Provider will revisit intrusive thoughts at next session and complete safety plan if warranted. Provider concluded session with words of encouragement for patient's wedding this weekend.

Plan: Next session scheduled for 10/3/23 at 10am.

Therapy time spent with patient: 49 minutes

---

**E-signed by** Chantele Mallory, LCSW on 09/26/2023 12:25PM EDT
**This page was generated at** 09/26/2023 12:25PM EDT

INDUCTEV INITIDISCL018990

13. Ex. 10. 04-15-2024 PCP Visit Note

Regarding Depression Medication_Redacted

Name: Assata Acey | ███████████████████ | PCP: Jennifer L. Flom, DO

# Progress Notes

## Jennifer L. Flom at 4/15/2024  9:40 AM
Main Line HealthCare - Medicine For Women

**Subjective:**
Assata Acey is a 26 y.o. female presenting with the chief complaint of:
**Chief Complaint**
Patient presents with
• Follow-up


Chronic medical conditions include:
**Patient Active Problem List**
Diagnosis
• Nonintractable episodic headache
• Irregular periods
• Attention deficit hyperactivity disorder (ADHD), combined type
• Anxiety
• Recurrent major depressive disorder, in remission (CMS/HCC)
• Auditory processing disorder
• Dizziness
• Lymphadenopathy
• Shortness of breath
• Rathke's cleft cyst (CMS/HCC)
• Mild intermittent asthma without complication
• Elevated testosterone level
• POTS (postural orthostatic tachycardia syndrome)
• Family history of breast cancer
• Dysmenorrhea
• Recurrent pregnancy loss
• Autism
• Chalazion
• Abnormal cortisol level
• Enlarged pituitary gland (CMS/HCC)


HPI:
Pt presents for f/u

She is not doing well today
She wants to establish w/ a therapist
She is interested to delve into how the PTSD/anxiety/depression all integrate together.

She is in an acute depressive episode now. Usually lasts 4hrs to 1 day but this one has lasted 4 days.

She is struggling with her ongoing legal case.
She was deposed for 7 hours last Thursday. She did not have SI during or after the deposition. She did have significant physical symptoms. Thought she was going to collapse when she stood up on first break. She feels pressure in her neck and has loud/strong pulse in the neck.
She is struggling with internalizing the way that she is being treated in court.

She has not been able to obtain a lawyer and therefore is representing herself.
She worries that the judge and opposing lawyers are working together against her.

She is having vivid intrusive thoughts.

She hyperventilates when she cries. She is not sure if this is triggering her asthma attacks.

When she is stressed, she is not taking a full deep breath.

She tried to get in with Wills Eye for a second opinion for diplopia
Worsens during the day as she gets tired.

She is interested to see how her pituitary volume changed in relation to her stress. She is going to discuss this with endocrinology.

The following portions of the patient's history were reviewed and updated as appropriate: allergies, current medications, family history, past medical history, social history, surgical history, and problem list.

### Current Outpatient Medications

| Medication | Instructions |
| --- | --- |
| • albuterol HFA 90 mcg/actuation inhaler | No dose, route, or frequency recorded. |
| • gabapentin (NEURONTIN) | 200 mg, oral, 3 times daily |
| • montelukast (SINGULAIR) | 10 mg, oral, See admin instructions, At Night |
| • propranoloL (INDERAL) | 10 mg, oral, 3 times daily |
| • sertraline (ZOLOFT) | 100 mg, oral, Daily |
| • SLYND | 4 mg, oral, Daily |

Review of Systems
As noted in HPI and otherwise negative

**Objective:**

**Vitals:**

|  | 04/15/24 0953 |
| --- | --- |
| BP: | 112/88 |
| BP Location: | Right upper arm |
| Patient Position: | Sitting |
| Pulse: | 72 |
| Resp: | 16 |
| Temp: | 36.8 °C (98.2 °F) |
| TempSrc: | Temporal |
| SpO2: | 97% |
| Weight: | 71.7 kg (158 lb) |
| Height: | 1.676 m (5' 6") |

**Wt Readings from Last 3 Encounters:**

| 04/15/24 | 71.7 kg (158 lb) |
| --- | --- |
| 03/11/24 | 72.1 kg (159 lb) |
| 01/09/24 | 70.8 kg (156 lb) |

Body mass index is 25.5 kg/m².

**Physical Exam**
Vitals reviewed.

14. Ex. 11. 04-29-2022 Paystub

MOMENTUM DYNAMICS CORPORATION    1406-4445
3 Pennsylvania Ave    ORG1:200 R&D
Malvern PA  19355    EE ID: 273        DD

Payrolls by Paychex, Inc.

ASSATA S ACEY
5121 BROWN ST
PHILADELPHIA PA  19139

NON-NEGOTIABLE

Payrolls by Paychex, Inc.

NON-NEGOTIABLE

| PERSONAL AND CHECK INFORMATION | | |
|---|---|---|
| Assata S Acey | | |
| 5121 Brown St | | |
| Philadelphia, PA  19139 | | |
| Soc Sec #: xxx-xx-xxxx    **Employee ID:** 273 | | |
| | | |
| **Home Department:** 200 R&D | | |
| | | |
| **Pay Period:** 04/11/22 **to** 04/24/22 | | |
| **Check Date:** 04/29/22    **Check #:** 5710 | | |
| NET PAY ALLOCATIONS | | |

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 0.00 | 0.00 |
| Chkg 353 | 2040.30 | 19292.53 |
| **NET PAY** | **2040.30** | **19292.53** |

| EARNINGS | BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 80.00 | 35.1900 | 2815.20 | 722.00 | 25024.00 |
| | | OOP | | | 100.00 | | 900.00 |
| | | Overtime | | | | 35.00 | 1835.87 |
| | | **Total Hours** | 80.00 | | | 757.00 | |
| | | **Gross Earnings** | | | 2915.20 | | 27759.87 |
| | | **Total Hrs Worked** | 80.00 | | | | |

| OTHER | DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|
| Do not increase Net Pay | | | |
| | 401k ER Match | 84.46 | 805.80 |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|
| | Social Security | | 180.46 | 1718.54 |
| | Medicare | | 42.21 | 401.92 |
| | Fed Income Tax | SMS | 342.93 | 3411.44 |
| | PA Income Tax | | 89.36 | 850.95 |
| | PA Unemploy | | 1.75 | 16.65 |
| | PA LMALV-Che L | | 2.00 | 18.00 |
| | PA PHILA-Phi Inc | | 111.94 | 1065.93 |
| | **TOTAL** | | 770.65 | 7483.43 |

| DEDUCTION | DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|
| | PX401 EEPRE | 87.46 | 832.80 |
| | PXUME EE PRE | 4.61 | 41.49 |
| | Voluntary Life | 12.18 | 109.62 |
| | **TOTAL** | 104.25 | 983.91 |

| NET PAY | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| | **2040.30** | **19292.53** |

Payrolls by Paychex, Inc.

0026 1406-4445 Momentum Dynamics Corporation • 3 Pennsylvania Ave • Malvern PA  19355 • (484) 320-8222

15. p.1 of Doc 15-75. 09-23-2022 Denial of

PTO



Assata Acey <aceyassata@gmail.com>

## Acey v. Momentum
8 messages

---

**Post, May Mon** <maymon.post@bunkerray.com>                    23 September 2022 at 16:01
To: Assata Acey <aceyassata@gmail.com>
Cc: Alexa Heisler <Alexa.Heisler@momentumdynamics.com>, Patti Rensel <patti.rensel@momentumdynamics.com>

Good afternoon, Ms. Acey:

I understand that you requested to take PTO for September 22 and 23. Please be advised that you are unable to put in for PTO as you are still on disability leave and you cannot take PTO unless you are back to work. (Also, per your doctor's note, you are not to be released to return until Monday, which is a moot point as you have resigned or will be resigning shortly). However, you will be paid the balance of your PTO upon your resignation. If you resign today through Sunday, you will receive your final pay check on 09/30. If you resign 09/26 – 10/09, you will receive your final pay check on 10/14. Please provide me with a copy of your resignation letter as soon as possible.

Thank you, and please let me know if you have any questions.

**May Mon Post, Esq. | Lead Employment Attorney | Bunker & Ray**

Employees of ACE American Insurance Company, a Chubb Company

436 Walnut St. | WA01A | Philadelphia, PA 19106
(215) 845-6154 (direct) |   (267) 372-1240 (mobile)

maymon.post@bunkerray.com

This email (which includes any attachments) is intended to be read only by the person(s) to whom it is addressed. This email may contain confidential, proprietary information and may be a confidential attorney-client communication, exempt from disclosure under applicable law. If you have received this email in error, do not print it, forward it or disseminate or use it or its contents. In such event, please notify the sender by return email (or by phone at the number shown above) and delete the email file immediately thereafter. Thank you for your cooperation.

We strive to be a paperless office. I encourage you to send all correspondence via email instead of U.S. mail when at all possible. If you email a document to me, it is not necessary to send a separate copy via U.S. mail. Thank you.

---

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or

16. Ex. 12. 06-07-2022 Letter from Judy Talis

Assuring PTO



**Assata Acey <aceyassata@gmail.com>**

---

## Return to Work Status

**Judy Talis** <judy.talis@momentumdynamics.com>                    7 June 2022 at 13:14
To: Assata Acey <aceyassata@gmail.com>
Cc: Joren Wendschuh <joren.wendschuh@momentumdynamics.com>

Hello Assata.

Thank you for your response. Please allow me to update my earlier email today.   Shortly after sending my email, we received information from Mutual of Omaha indicating that your STD has been extended through June 17, 2022. Accordingly,  your leave of absence has been extended through the 17th. We will contact you again on or about June 14th to discuss whether you will require any further accommodations after June 17, 2022. If you have any questions or wish to share any additional information please do not hesitate to contact me. As noted below, you become eligible for job-protected Family and Medical Leave (FMLA) as of June 14, 2022.  Based upon the information that has already been provided, we are enclosing your Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act.  This leave would be unpaid, although you remain entitled to your STD payments and may use your accrued PTO. Kindly sign and return the Notice on or before June 29, 2022 if your leave will extend beyond June 17, 2022.


Best Regards,

Judy



**Judy Talis** | **Chief Administrative Officer**
**O: 484-320-8222 ext 128**
**M: 610-613-1449**

**Momentum**®
Wireless EV Charging

***Connect***    LinkedIn  |  Website  |  Newsletter
***Media***      Taxis - NYTimes  |  Airport & Transit  |  Driver Experience

*Confidentiality Notice: The information, and any attachments and/or documents, transmitted by this email is intended for the addressee only and contains information that is confidential, proprietary, privileged, or otherwise protected by law. This notice serves as a confidentiality marking for the purpose of any confidentiality or nondisclosure agreement. Any dissemination, distribution, or copying is prohibited. If you have received this communication in error, please contact the original sender immediately.*

**From:** Assata Acey <aceyassata@gmail.com>
**Sent:** Tuesday, June 7, 2022 12:08 PM
**To:** Judy Talis <judy.talis@momentumdynamics.com>
**Cc:** Joren Wendschuh <joren.wendschuh@momentumdynamics.com>; Assata Acey <Assata.Acey@momentumdynamics.com>
**Subject:** Re: Return to Work Status


**EXTERNAL EMAIL**

[Quoted text hidden]

**WH-381 (Assata Acey).pdf**
324K

17. Ex. 13. 06-17-2022 Letter from Judy Talis

Assuring PTO

 **Assata Acey <aceyassata@gmail.com>**

---

## FMLA and STD Updates
4 messages

---

**Judy Talis** <judy.talis@momentumdynamics.com>                                    17 June 2022 at 14:06
To: Assata Acey <aceyassata@gmail.com>
Cc: Joren Wendschuh <joren.wendschuh@momentumdynamics.com>

Assata:

We have received notice from Mutual of Omaha extending your STD benefits through June 27, 2022.  Accordingly, you have been approved for continued job-protected leave through that date as well.

As you know from my previous emails, you became eligible for Family and Medical Leave (FMLA Leave) as of June 14, 2022.  As a result, your current leave of absence has been designated as FMLA Leave commencing on June 14, 2022. Please see attached the completed notice of your FMLA Leave designation which confirms your right to take up to 12-weeks of job-protected leave to address your current serious health condition. Although FMLA Leave is unpaid, you remain eligible for STD benefits under the Company's policies and may also use your earned and unused PTO as well.

You will find additional information about your FMLA Leave in our Company handbook, which was previously provided to you.  Of course, please do not hesitate to contact me with any other questions you may have about your FMLA Leave.

Best,

Judy

**Judy Talis ⎮ Chief Administrative Officer**
**O: 484-320-8222 ext 128**
**M: 610-613-1449**



**Connect**   LinkedIn  |  Website  |  Newsletter
**Media**     Taxis - NYTimes  |  Airport & Transit  |  Driver Experience

*Confidentiality Notice: The information, and any attachments and/or documents, transmitted by this email is intended for the addressee only and contains information that is confidential, proprietary, privileged, or otherwise protected by law. This notice serves as a confidentiality marking for the purpose of any confidentiality or nondisclosure agreement. Any dissemination, distribution, or copying is prohibited. If you have received this communication in error, please contact the original sender immediately.*

**From:** Assata Acey <aceyassata@gmail.com>
**Sent:** Monday, June 13, 2022 10:23 AM
**To:** Judy Talis <judy.talis@momentumdynamics.com>
**Cc:** Joren Wendschuh <joren.wendschuh@momentumdynamics.com>; Assata Acey <Assata.Acey@momentumdynamics.com>
**Subject:** Re: Return to Work Status

**EXTERNAL EMAIL**

Thank you for your communication.

I have noted that the FMLA form you have sent for me to sign has several fields blank(regarding options of PTO,  whether my role is key or not, etc).

Please let me know if there is a reason these are blank and or if its possible to have one prefilled before signing and returning.

On Tuesday, 7 June 2022, Judy Talis <judy.talis@momentumdynamics.com> wrote:

> Hello Assata.
>
> Thank you for your response. Please allow me to update my earlier email today.   Shortly after sending my email, we received information from Mutual of Omaha indicating that your STD has been extended through June 17, 2022. Accordingly,  your leave of absence has been extended through the 17th. We will contact you again on or about June 14th to discuss whether you will require any further accommodations after June 17, 2022. If you have any questions or wish to share any additional information please do not hesitate to contact me. As noted below, you become eligible for job-protected Family and Medical Leave (FMLA) as of June 14, 2022.  Based upon the information that has already been provided, we are enclosing your Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act.  This leave would be unpaid, although you remain entitled to your STD payments and may use your accrued PTO.  Kindly sign and return the Notice on or before June 29, 2022 if your leave will extend beyond June 17, 2022.
>
>
> Best Regards,
>
> Judy
>
>
>
>
> **Judy Talis ⎪ Chief Administrative Officer**
>
>
> **O: 484-320-8222 ext 128**
>
>
> **M: 610-613-1449**
>
>
> 
> Wireless EV Charging
>
>
> ***Connect***   LinkedIn ⎪ Website ⎪ Newsletter
>
>
> ***Media***   Taxis - NYTimes ⎪ Airport & Transit ⎪ Driver Experience

*Confidentiality Notice: The information, and any attachments and/or documents, transmitted by this email is intended for the addressee only and contains information that is confidential, proprietary, privileged, or otherwise protected by law. This notice serves as a confidentiality marking for the purpose of any confidentiality or nondisclosure agreement. Any dissemination, distribution, or copying is prohibited. If you have received this communication in error, please contact the original sender immediately.*

**From:** Assata Acey <aceyassata@gmail.com>
**Sent:** Tuesday, June 7, 2022 12:08 PM
**To:** Judy Talis <judy.talis@momentumdynamics.com>
**Cc:** Joren Wendschuh <joren.wendschuh@momentumdynamics.com>; Assata Acey <Assata.Acey@momentumdynamics.com>
**Subject:** Re: Return to Work Status


**EXTERNAL EMAIL**

Hi and good afternoon,

Yes, there has been some additional specialists consulted for my treatment, so my agent proacrively reached out to extend tentatively to Jun 17 depending on the specific doctor's availability.


They said they would send out a letter, so I am looking out for that.


Sorry for the confusion and thank you for your communication.

On Tuesday, 7 June 2022, Judy Talis <judy.talis@momentumdynamics.com> wrote:

> They have not contacted us yet so we will follow up with them to get their confirmation. Thanks for letting me know.
>
>
>
> **Judy Talis │ Chief Administrative Officer**
>
> **O: 484-320-8222 ext 128**
>
> **M: 610-613-1449**
>
> 
>
> ***Connect***   LinkedIn  │  Website  │  Newsletter
>
> ***Media***   Taxis - NYTimes  │  Airport & Transit  │  Driver Experience
>
>
> *Confidentiality Notice: The information, and any attachments and/or documents, transmitted by this email is intended for the addressee only and contains information that is confidential, proprietary, privileged, or otherwise protected by law. This notice serves as a confidentiality marking for the purpose of any confidentiality or nondisclosure agreement. Any dissemination, distribution, or copying is prohibited. If you have received this communication in error, please contact the original sender immediately.*

**From:** Joren Wendschuh <joren.wendschuh@momentumdynamics.com>
**Sent:** Tuesday, June 7, 2022 10:34 AM
**To:** Judy Talis <judy.talis@momentumdynamics.com>; Assata Acey <aceyassata@gmail.com>
**Cc:** Assata Acey <Assata.Acey@momentumdynamics.com>
**Subject:** Re: Return to Work Status

Judy,

FYI - Assata just informed me that the STD insurance has been extended, I believe to June 17th at this time, by the insurance company, with the option to extend longer (per the company).  What needs to be setup with MD to confirm this June 17th extension?

Thank you!

**Joren Wendschuh | Manager, Product Introduction**

**484-320-8222 ext 143**



***Connect***   LinkedIn | Website | Newsletter

***Media***   Taxis - NYTimes | Airport & Transit | Driver Experience

*Confidentiality Notice: The information, and any attachments and/or documents, transmitted by this email is intended for the addressee* <u>*only*</u> *and contains information that is confidential, proprietary, privileged, or otherwise protected by law. This notice serves as a confidentiality marking for the purpose of any confidentiality or nondisclosure agreement. Any dissemination, distribution, or copying is prohibited. If you have received this communication in error, please contact the original sender immediately.*

**From:** Judy Talis <judy.talis@momentumdynamics.com>
**Sent:** Tuesday, June 7, 2022 10:28
**To:** Assata Acey <aceyassata@gmail.com>
**Cc:** Joren Wendschuh <joren.wendschuh@momentumdynamics.com>
**Subject:** Return to Work Status

Hello Assata.  I hope this email finds you well.

As indicated in my May 26, 2022 email, I am writing to inquire as to your return-to-work status.  As you know, your current leave expires on June 10, 2022.  In the absence of the need for further accommodations, we look forward to

your return to full-time work at Momentum on Monday, June 13, 2022.

If, however, you do require further accommodations in connection with your medical condition at this time, please contact me no later than Friday, June 10, 2022 so that we may review your status and needed accommodations. Please also be advised that you become eligible for Family and Medical Leave (FMLA) as of June 14, 2022.  I would be happy to review your FMLA leave entitlement at any time.

Best,

Judy

**Judy Talis ⏐ Chief Administrative Officer**

**O: 484-320-8222 ext 128**

**M: 610-613-1449**



***Connect***   LinkedIn  ⏐  Website  ⏐  Newsletter

***Media***   Taxis - NYTimes  ⏐  Airport & Transit  ⏐  Driver Experience

*Confidentiality Notice: The information, and any attachments and/or documents, transmitted by this email is intended for the addressee only and contains information that is confidential, proprietary, privileged, or otherwise protected by law. This notice serves as a confidentiality marking for the purpose of any confidentiality or nondisclosure agreement. Any dissemination, distribution, or copying is prohibited. If you have received this communication in error, please contact the original sender immediately.*


**WH-381 (Assata Acey).pdf**
326K

**Assata Acey** <aceyassata@gmail.com>                                    22 August 2022 at 12:46
To: Jack.Fu@mutualofomaha.com
Cc: submitgrpdisinfo@mutualofomaha.com

FMLA form should be attached
[Quoted text hidden]


**WH-381 (Assata Acey).pdf**
326K

**Jack.Fu@mutualofomaha.com** <Jack.Fu@mutualofomaha.com>                     22 August 2022 at 14:39
To: Assata Acey <aceyassata@gmail.com>

Hi Assata,

FMLA forms does not come to Mutual of Omaha as these are required from your employer please.

Thank you,
Jack Fu, DHP, DIA, DIF, GBDS
Lead Benefits Claim Specialist
Mutual of Omaha / Workplace Solutions
Phone 402-351-5144 / Fax 402-997-1865
Customer Service 1-800-877-5176
Email: jack.fu@mutualofomaha.com
MooCon

**From:** Assata Acey <aceyassata@gmail.com>
**Sent:** Monday, August 22, 2022 11:47 AM
**To:** Fu, Jack <Jack.Fu@mutualofomaha.com>
**Cc:** SMB-submitgrpdisinfo <submitgrpdisinfo@mutualofomaha.com>
**Subject:** Fwd: FMLA and STD Updates

[EXTERNAL MESSAGE] To ensure continued focus on protection of our customer data, be cautious with links and attachments. If you suspect a phishing attempt, report it by selecting the Report Phishing button on this message.

[Quoted text hidden]

This e-mail and any files transmitted with it are confidential and are solely for the use of the addressee. It may contain material that is legally privileged, proprietary or subject to copyright belonging to the sender and its affiliates, and it may be subject to protection under federal or state law. If you are not the intended recipient, you are notified that any use of this material is strictly prohibited. If you received this transmission in error, please contact the sender immediately by replying to this e-mail and delete the material from your system. The sender may archive e-mails, which may be accessed by authorized persons and may be produced to other parties, including public authorities, in compliance with applicable laws.

**Assata Acey** <aceyassata@gmail.com>                     23 August 2022 at 09:00
To: "Jack.Fu@mutualofomaha.com" <Jack.Fu@mutualofomaha.com>

Hi Jack,
Unfortunatley I was unable to reach you via call yesterday afternoon. I was able to reach the customer service line where they suggested uploading the employer signed FMLA form in the same procedure as my other medical documents.

Your email is unclear. Does Mutual of Omaha not accept FMLA forms, or do they only accept these forms directly from the employer.

In the latter case, please elaborate.

Thank you,
[Quoted text hidden]