## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ASSATA ACEY<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>INDUCTEV<br><br>　　　　　　　Defendant. | Case No.: 2:23-cv-01438<br><br>Judge Paul S. Diamond |

## DEFENDANT INDUCTEV'S MEMORANDUM OF LAW IN
## SUPPORT OF SUMMARY JUDGMENT

**FOX ROTHSCHILD LLP**

*/s/ Randall C. Schauer*
Randall C. Schauer (ID No. 34273)
Alberto M. Longo (ID No. 328893)
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA  19341-0673
Tel – (610) 458-7500
Fax – (610) 458-7337
rschauer@foxrothschild.com
alongo@foxrothschild.com
*Attorneys for Defendant*

Date:  August 23, 2024

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ........................................................................................1

II. STATEMENT OF FACTS ........................................................................2

III. STANDARD OF REVIEW .......................................................................3

IV. LEGAL ARGUMENT................................................................................3

    A.  Plaintiff cannot establish a prima facie case of discrimination under Title VII or Section 1981 of the Civil Rights ............................3

        1.  Plaintiff is not qualified for a senior technician role at InductEV ...............................................................................5

        2.  Plaintiff has no evidence of intentional race or sex discrimination at InductEV .........................................................7

        3.  Even assuming Plaintiff made prima facie showing of discrimination (she has not), several legitimate non-discriminatory reasons exist for InductEV not hiring or promoting Plaintiff as senior technician, which Plaintiff cannot demonstrate were pretext ..............................................10

    B.  Plaintiff's hostile work environment claims fail because Plaintiff cannot establish that she was subjected to an offensive or hostile work environment based on race or sex, much less one where the actions complained of were severe or pervasive................................11

        1.  There is no evidence that Plaintiff was subjected to a hostile or offensive environment based on race or sex, let alone one where the cited offensive behavior is "severe or pervasive"....12

    C.  Summary Judgment is appropriate because Plaintiff agreed to release her claims and resign in exchange for $50,000 during mediation ...........................................................................................21

    D.  Plaintiff's retaliation claims fail because Plaintiff agreed to resign and therefore, no adverse action was taken against Plaintiff.............23

i

E.      Plaintiff's claim for punitive damages is unwarranted ......................24

V.   CONCLUSION...............................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Fairmount Foundry, Inc.*,
  391 F.Supp.3d 395 (E.D. Pa. 2019)....................................................................25

*Alers v. City of Philadelphia*,
  919 F.Supp.2d 528 (E.D. Pa. 2013)...........................................................14, 17

*Barnees v. Nationwide Mut. Ins. Co.*,
  598 F.App'x. 86 (3d Cir. 2015) ...........................................................................5

*Blango v. City of Philadelphia*,
  643 F.Supp.3d 535 (E.D. Pa. 2022).............................................11, 14, 17, 20

*Briscella v. Univ. of Penn. Health Sys.*,
  2018 WL 6413305 (E.D. Pa. Dec. 4, 2018).......................................................7

*Brown v. J. Kaz, Inc.*,
  581 F.3d 175 (3d Cir. 2009) .................................................................................5

*Burgess v. Dollar Tree Stores, Inc.*,
  642 F.App'x 152 (3d Cir. 2016) .........................................................................19

*Burton v. Teleflex Inc.*,
  707 F.3d 417 (3d Cir. 2013) .................................................................................4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................3

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 1994) ..................................................................................4

*Groeber v. Friedman & Schuman, P.C.*,
  555 F.App'x 133 (3d Cir. 2014) ..........................................................................8

*Halsey v. Pfeiffer*,
  750 F.3d 273 (3d Cir. 2014) .................................................................................4

iii

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) ....................................................................................................11

*Hein v. PNC Fin. Servs. Grp., Inc.*,
511 F.Supp.2d 563 (E.D. Pa. 2007) .............................................................................3

*Hunter v. Trustees of Univ. of Pa.*,
2021 WL 1424710 (E.D. Pa. Apr. 15, 2021) ...............................................................21

*Huston v Proctor & Gamble Paper Prods. Corp.*,
568 F.3d 100 (3d Cir. 2009) .......................................................................................19

*Jones v. Sch. Dist. of Phila.*,
198 F.3d 403 (3d Cir. 1999) .........................................................................................8

*Kolstad v. American Dental Ass'n*,
527 U.S. 526 (1999)....................................................................................................24

*Koschoff v. Henderson*,
109 F.Supp.2d 332 (E.D. Pa. 2000) ...........................................................................21

*Kroptavich v. Pa. Power & Light Co.*,
795 A.2d 1048 (Pa. Super. Ct. 2002)............................................................................4

*Makky v. Chertoff*,
541 F.3d 205 (3d Cir. 2008) ................................................................................3, 4, 7

*Mazzella v. Koken*,
739 A.2d 531 (Pa. 1999) .............................................................................................23

*McDonnel Douglas v. Green*,
411 U.S. 792 (1973)......................................................................................................3

*Medcalf v. Trustees of Univ. of Penn.*,
2003 WL 21843201 (3d Cir. Jul. 30, 2003).................................................................24

*Nelson v. Upsala Coll*,
51 F.3d 383 (3d Cir. 1995) .........................................................................................24

*Nitkin v. Main Line Health*,
2021 WL 5631717 (E.D. Pa. Nov. 29, 2021) ..............................................................24

*Perry v. Harvey*,
   332 F.App'x 728 (3d Cir. 2009) ..........................................................................21

*Satterwite v. Montgomery County*,
   497 F.App'x 247 (3d Cir. 2012) ......................................................................4, 6

*Selvato v. SEPTA*,
   658 F.App'x 52 (3d Cir. 2016) ...........................................................................23

*Smith v. City of Easton*,
   2008 WL 2704570 (E.D. Pa. Jul. 7, 2008) .........................................................7

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993).............................................................................................4

*Steele v. Pelmore Laboratories, Inc.*,
   725 F.App'x 176 (3d Cir. 2018) ..........................................................................4

*Walden v. Saint Gobain Corp.*,
   323 F.Supp.2d 637 (E.D. Pa. 2004) ....................................................................3

*Zong v. Lynch*,
   2014 WL 4722625 (E.D. Pa. Sept. 22, 2014)...............................................22, 23

## Statutes

29 U.S.C. § 28 et seq...........................................................................................1

42 U.S.C. § 1981 .......................................................................................*passim*

42 U.S.C. § 1981(b)(1)........................................................................................24

42 U.S.C. §§ 2000e - 2000e17 .................................................................*passim*

## I.    INTRODUCTION

This is a case where Plaintiff Assata Acey ("Plaintiff") makes a variety of race and sex-based discrimination claims premised on facially neutral activities, or a failure of Defendant InductEV ("InductEV" or "Defendant") to act on what she believes are constructive comments that she attributes to racial or gender bias, or retaliatory behavior, on the part of the Defendant. Discovery has demonstrated that: the "facts" relied on by Plaintiff in the Complaint are not what are cited in the Complaint; Plaintiff's claim of bias is a product of her own lens distorting facially neutral actions or statements of the Defendant or co-workers who failed to do something she thought they should do, should have done, or with which she disagreed, as *ipso facto* racial or gender animus. For example, Plaintiff relies on the company's handling of reimbursement for replacement of her cell phone damaged at work; InductEV's failure to hire or promote her into a Senior Technician role she was admittedly not qualified for; applying its policy requiring use of PTO if an employee is out disability-related and wants pay for a full week of work; routine administration of FMLA paperwork; InductEV failing to supplement its DEI program by circulating a list of books and movies she requested; and the anonymous posting of a cartoon in her workspace referencing her degree in physics.

Nor have the comparators or witnesses Plaintiff identified in discovery as supporting her claim done so. To the contrary, depositions of those witnesses

confirm that there was no discriminatory treatment of Plaintiff, no comparators, and no pattern or practice of racial or gender discrimination at InductEV.

Plaintiff's race discrimination claims based on Defendant's failure to hire or promote Plaintiff to senior technician fail because she has not produced any evidence suggesting that Defendant's decisions were based on race, and Plaintiff's admitted lack of experience and qualifications prevented her from obtaining a senior technician role.  Plaintiff's hostile work environment claims based on race or sex fail because she cannot establish that she was subject to a hostile or offensive environment, let alone one that was severe or pervasive in that regard.

Finally, Plaintiff's retaliation claims fail because she was never terminated but rather voluntarily agreed during mediation to resign and release her claims in exchange for $50,000 as Plaintiff admitted in writing, and her grandmother and other direct witnesses confirmed in their depositions. Plaintiff relies on the mistaken legal premise that the settlement reached at mediation is unenforceable because it needed to be reflected in a writing—a condition never agreed to when accepting the offer and agreeing to resign—and has developed no evidence demonstrating her verbal agreement to accept $50,000 is not enforceable.

## II.    STATEMENT OF FACTS

Defendant incorporates by reference the Statement of Undisputed Material Facts ("SUMF") filed contemporaneously with this Motion.

## III.   STANDARD OF REVIEW

Summary judgment "is appropriate 'if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Hein v. PNC Fin. Servs. Grp., Inc.*, 511 F.Supp.2d 563, 565 (E.D. Pa. 2007).  "The moving party must initially show the absence of any genuine issue of material fact."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  "This requirement upholds the 'underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Id.* (alteration in original) (citing *Walden v. Saint Gobain Corp.*, 323 F.Supp.2d 637, 641 (E.D. Pa. 2004)).

## IV.   LEGAL ARGUMENT

### A.    Plaintiff cannot establish a prima facie case of discrimination under Title VII or Section 1981 of the Civil Rights

To prevail on her claims under Title VII and 42 U.S.C. § 1981, ("Section 1981") Plaintiff must show that (1) she "is a member of a protected class"; (2) that she was qualified for the position she sought to attain or retain; (3) that she "suffered an adverse employment action"; and (4) that "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnel Douglas v. Green*, 411 U.S. 792, 802 (1973)).  Plaintiff must meet this initial burden to survive

summary judgment.  *See Satterwite v. Montgomery County*, 497 F.App'x 247, 249 (3d Cir. 2012).

"If a plaintiff establishes a prima facie case of discrimination, then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action." *Makky*, 541 F.3d at 214 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993)). "If the defendant does so . . . the burden shifts back to the plaintiff to show . . . pretext for intentional discrimination." *Id.* (citing *St. Mary's Honor Ctr*, 509 U.S. at 507-08).  "[A]n inference [of pretext] based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." *Steele v. Pelmore Laboratories, Inc.*, 725 F.App'x 176, 179 (3d Cir. 2018) (alterations in original) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014)).  Rather, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

"Generally, claims brought under the PHRA are analyzed under the same standards as their federal counterparts." *Kroptavich v. Pa. Power & Light Co.*, 795

A.2d 1048, 1055 (Pa. Super. Ct. 2002).  And "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Barnees v. Nationwide Mut. Ins. Co.*, 598 F.App'x. 86, 89 (3d Cir. 2015) (quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009)).

1.   *Plaintiff is not qualified for a senior technician role at InductEV*

Plaintiff alleges that Defendant's failure to hire or promote her into a senior technician role was because of intentional discrimination. Plaintiff's claims fail because she lacked both the skill sets and "8+ years [of] experience in a test environment" required for the senior technician role. SUMF, ¶¶26-29.  Plaintiff acknowledges that those employees who **were** promoted to senior technicians in prior years possessed significantly more experience than she had.  SUMF, ¶36.

During the hiring process multiple evaluators documented that Plaintiff lacked the technical skills required for the senior technician role.  SUMF, ¶¶99, 103.  One evaluator stated that Plaintiff "doesn't seem to fully fit the skills for a Sr tech role….would need to be trained still on certain technical abilities—seemed to have little tool knowledge and experience, writing, cabling, stripping and crimping which are needed for a senior tech role….Definitely seems to fit a [sic] enginerring [sic] position instead of a senior tech role." SUMF, ¶¶101-103. Another evaluation stated that Plaintiff "struggled" with simple drilling, "did not know which direction to put

the drill in to drill a hole" and "will need a lot of time and attention to hone her knowledge into practical experience." SUMF, ¶¶104-105. When confronted with these evaluations, Plaintiff was unable to substantiate that the evaluators harbored animus toward her based on race or gender SUMF, ¶¶33-35.

Rob Rosenberger, whom Plaintiff alleges "made comments about the nature and scope of [her] work" (Compl., ¶ 5) provided a positive evaluation of Plaintiff, describing her as "very intelligent," "very enthusiastic and outgoing" and having "excellent technical aptitude." SUMF, ¶99. But that Plaintiff "lack[s] experience" and "might not be happy in a Technician position" based on her comment that "she wanted to learn as a Technician before moving into an Engineering position." SUMF, ¶100. Similarly, Supervisor Joren Wendschuh explained in his evaluation that Plaintiff "[l]oves to learn" and "[b]rings a unique 'science and engineering' background and knowledge" to InductEV; however, he would look to classify Plaintiff as a technician, "unless Omar & Seth are Sr's." SUMF, ¶69.

Plaintiff's inability to establish that she was qualified for a senior technician role is dispositive of her Title VII claim. In *Satterwhite*, the Third Circuit affirmed summary judgment for the employer on the sole basis that the plaintiff failed to present evidence of her qualifications for the positions sought. 497 F.App'x. at 248. Just as the plaintiff could not satisfy the job description in *Satterwhite*, Plaintiff here cannot satisfy the basic criteria for a senior product technician at InductEV which,

as Plaintiff admits, required "8+ years [of] experience in a test environment." SUMF, ¶¶26-28.  Plaintiff cannot establish a prime facie case under Title VII, Section 1981, or the PaHRA based on a failure to hire as or promote to senior technician.

### 2. *Plaintiff has no evidence of intentional race or sex discrimination at InductEV*

Plaintiff is unable to establish that she did not receive the senior technician position under "circumstances that could give rise to an inference of intentional discrimination." *Makky*, 541 F.3d at 214.  In support of this claim, Plaintiff primarily relies on her view of the treatment of various black or female colleagues which are unsupported by evidence.  Indeed, there is not a single document supporting Plaintiff's allegations.  Nor could any of Plaintiff's witnesses identify any conduct suggesting racial animus toward Plaintiff, or themselves.  SUMF, ¶98.  Nor does Plaintiff have any evidence reflecting obvious, or even veiled, race or gender animus.  That too is dispositive.  *See Briscella v. Univ. of Penn. Health Sys.*, 2018 WL 6413305, at *6 (E.D. Pa. Dec. 4, 2018)

Plaintiff also relies on employees who were promoted in entirely distinct positions, over remote time frames, as indicative of racial discrimination against her in her role as introduction technician (Compl., ¶ 144), yet Plaintiff does not identify a single InductEV employee, with her experience, who was white, who was promoted over her to the role of senior tech. This also is dispositive. *See Smith v. City of Easton*, 2008 WL 2704570, at *8 (E.D. Pa. Jul. 7, 2008) (finding plaintiff

failed to show "similarly situated individual from a non-protected class was given the position" and granting summary judgment to employer). "Without proof that someone similarly situated was treated more favorably, [Plaintiff] is left only with her subjective belief that race played a role in [InductEV]'s employment decisions" which is "not sufficient to establish an inference of discrimination." *Groeber v. Friedman & Schuman, P.C.*, 555 F.App'x 133, 135 (3d Cir. 2014) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)).

One of Plaintiff's "comparators," Omar Jackson, a black male who had significantly more experience than Plaintiff, and Seth Wohlgemuth, a white male, who had been employed by Defendant longer than Mr. Jackson were promoted to senior tech roles at the same time. SUMF, ¶71. Despite, as Mr. Jackson testified, Mr. Wohlgemuth, having "unique knowledge about the products at InductEV" and being with the company longer. SUMF, ¶¶71-72. Plaintiff acknowledged that Mr. Wohlgemuth had been with InductEV during the entirety of Plaintiff's employment and testified that "he deserved" the promotion. SUMF, ¶73.

Mr. Jackson also disclaimed Plaintiff's allegations that he endured or observed mistreatment at InductEV due to race. Mr. Jackson could not even understand why Plaintiff identified him as a witness in discovery. SUMF, ¶41. He further explained that he (1) did not believe InductEV made any decisions regarding his employment based on race (SUMF, ¶63); (2) was unaware of any practice of

limiting employees based on race (SUMF, ¶58); (3) never understood any criticism he witnessed to be racial (SUMF, ¶60); and (4) did not have a single example where he felt criticized due to race. SUMF, ¶59. He also knew nothing about Plaintiff's allegations that InductEV criticized him or other black employees as "lazy" (SUMF, ¶38) and did not witness anything he considered to be "pervasive racial harassment" at InductEV. SUMF, ¶60.

Nor did Plaintiff's other purported witnesses support her claim of race discrimination. Plaintiff's husband Daniel Hackman, who she met at InductEV was identified as a witness to racial comments made by coworkers, but when asked to identify instances of "racially denigrating" behavior responded: "I can't say that I have memories of witnessing or observing anything as far as race is concerned." SUMF, ¶95. Nor could he provide any "specific concrete examples" when asked, explaining: "I don't think I personally, witnessed anything that -- no I don't think so." *Id*.

Plaintiff's colleague Maria Tabbutt could not identify anything she "understood to be racial animus toward Ms. Acey." SUMF, ¶98. And while Plaintiff's grandmother, Jacqueline Acey, vaguely recalled Plaintiff discussing her race claims, she could not identify any details of those conversations (SUMF, ¶13) and did not recall Plaintiff ever mentioning experiencing "racism in the workplace" prior to filing her Complaint. *Id*.

Because Plaintiff cannot show she was qualified for a senior technician role and cannot show that she suffered adverse employment action under circumstances giving rise to discrimination, Plaintiff cannot establish a prima facie case of discrimination under Title VII ,Section 1981 or the PaHRA.

> **3.    *Even assuming Plaintiff made prima facie showing of discrimination (she has not), several legitimate non-discriminatory reasons exist for InductEV not hiring or promoting Plaintiff as senior technician, which Plaintiff cannot demonstrate were pretext***

Defendant's legitimate and non-discriminatory reasons for not hiring Plaintiff as a senior technician are simple.  Plaintiff lacked the requisite skills and experience for that position—at time of hire, and during employment. *See*, Section IV.A.2, *supra.*  On February 6, 2022, Joren Wendschuh wrote in Plaintiff's 2021 annual performance review that Plaintiff needed to "grow her soldering and assembly skills," "integrate better with the team," learn to read "the room for when to wrap up a tangent," "work toward providing clear and concise feedback and status updates where needed" and "integrate the new software into their daily routine." SUMF, ¶67. Plaintiff agrees, stating in the same February 2, 2022 review that "I am challenged with learning more about the product and processes and people surrounding its development," and "I am seeking to deepen my hands-on skills…" SUMF ¶68. Finally, to the extent Plaintiff attempts to rely on Mr. Jackson's promotion

experience as circumstantial evidence of racism at InductEV, any such reliance is misplaced as explained above.

In the absence of any evidence remotely suggesting that the reasons Plaintiff was not hired or promoted are pretextual, setting aside Plaintiff's inability to produce evidence supporting a prima facie case, summary judgment is appropriate on Plaintiff's Title VII Section 1981 and PHRA failure to promote claim. This Court should grant summary judgment in favor of InductEV on Counts VII, and VIII.

**B.** **Plaintiff's hostile work environment claims fail because Plaintiff cannot establish that she was subjected to an offensive or hostile work environment based on race or sex, much less one where the actions complained of were severe or pervasive.**

To survive summary judgment on her hostile work environment claims, Plaintiff must "adduce evidence to allow a jury to find: (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same race in the same position; and (5) the existence of respondent superior liability." *Blango v. City of Philadelphia*, 643 F.Supp.3d 535, 542 (E.D. Pa. 2022).

"Title VII is violated if an employee is subjected to a workplace 'permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S.

17, 21 (1993)). "The workplace must be objectively hostile or abusive, meaning a reasonable person would find it to be so." *Id.* "Normal, facially-neutral, supervisory management tasks of checking in . . . reorganization, or criticisms cannot be the basis of a hostile work environment claim." *Id.*

1.   ***There is no evidence that Plaintiff was subjected to a hostile or offensive environment based on race or sex, let alone one where the cited offensive behavior is "severe or pervasive"***

Plaintiff's claims of a hostile and offensive environment involve facially neutral occurrences informed by her penchant to attribute race or gender animus to occurrences she finds fault with or dislikes, but which do not reflect nor are based on, such animus. Plaintiff has failed to adduce any evidence of intentional discrimination based on race or sex. Wholly lacking are the racial epithets and/or slurs, sexist and/or misogynistic comments, and other typical hallmarks of these claims.

In allowing Plaintiff's hostile environment claims to survive Defendant's Motion to Dismiss, the Court cited seven allegations in Plaintiff's Complaint that if supported by evidence thereof, may state a claim: that Plaintiff (1) was accused of stealing time and missing meetings; (2) subject to criticism for her work; (3) sabotaged by coworkers; (4) the butt of jokes about studying physics; (5) told she was from "the wrong side of the tracks"; (6) compared to dark chocolate; and (7)

forced to undertake additional labor. *See* Memorandum (ECF No. 49) at p. 12.  There is no evidentiary support for these allegations in the record.

Instructive to this claim is Plaintiff's answer when asked at her deposition taken on April 11, 2024, when it had first occurred to her that she was the victim of discrimination at InductEV. Plaintiff said it was not until between April 25 and May 4 of 2022, when Ms. Talis told her she needed to make up for time off due to disability by using PTO - thinking it may be disability discrimination. SUMF, ¶106. This answer coming almost two years after her last day of active employment and identifying a period just before she went out on disability on May 16, 2022, *and after the now claimed occurrence of various grievances regarding workplace events occurring prior to April 25, 2024*. By inference, Plaintiff's belief that she was discriminated against on race or sex first occurred to her after May 4, 2022, and well after the events occurred. *Id*.

Plaintiff's Third Brief in Support of Doc. 15 organizes Plaintiff's best evidence based on the following categories:  gender/sexual discrimination, sexual and racial discrimination, and disability discrimination.  A review of this evidence confirms that summary judgment is appropriate in Defendant's favor on all of Plaintiff's claims.  For example, listed under evidence of "Race Discrimination" is a message from Diana Wilmes that reads:  "Assata, your lunch was delivered."  Doc. 15 at p. 16, ¶ 1.

As for the individual events cited by Plaintiff, the Court need not look beyond Plaintiff's Third Brief in Support of Doc. 15 (ECF No. 40) to dispel the unfounded accusation that Plaintiff was accused of stealing time at InductEV. *Id.* (ECF No. 40) at p. 22, ¶ 14. Plaintiff testified that the series of messages in Doc. 15 substantiates this allegation. SUMF, ¶¶113-114. A simple review of this "evidence" confirms that is not the case, as it is Plaintiff who claims she is being accused of stealing time based on innocuous discussions regarding her timesheet. *Id.* No InductEV employee accuses Plaintiff of anything. *Id.* It is also a fact that Plaintiff did miss meetings. SUMF, ¶115. There is nothing discriminatory about informing an employee about a missed meeting. *See Blango*, 643 F.3d at 546.

Second, Plaintiff's generalized allegation that she was subject to "criticism" is unpersuasive. Mere allegations of "unfounded criticism" do not suffice for hostile work environment claims. *Id.* at 543 ("intentional discrimination necessary for proceeding to trial on a hostile work environment claim must be *because of her race.*" (emphasis in original)). Courts are not "keen on crediting or classifying facially neutral comments as direct evidence of hostile work environment"—as Plaintiff asks this Court to do. *Id.* And the Court already recognized that "most of [Plaintiff]'s work experiences are not facially related to race." Memorandum (ECF No. 49) at p. 12. *See also Alers v. City of Philadelphia*, 919 F.Supp.2d 528, 546 (E.D. Pa. 2013).

Third, Plaintiff has produced no evidence of any "sabotage" by any coworkers, nor does the occurrence of same, standing alone, reflect race or gender animus by co-workers InductEV.

Fourth, Plaintiff has not produced any evidence of any denigrating or derogatory jokes made to her by any co-workers or substantiated her allegations about a comic posted to her cubicle. Compl., ¶ 121(d). Plaintiff instead points to a message that reads: "This is Assata. She's a technician with a **Physics** degree . . . she'll be doing better things . . ." as apparent evidence of a "derogatory comment[] from [her] coworkers." Doc. 15 (ECF No. 40) at p. 17, ¶ 3. Plaintiff testified that this message bothered her because the message was "making a big deal to a stranger about [her] role and my degree . . . like [she] was some commodity, and it made [her] feel uncomfortable," despite acknowledging that the message was not an attempt to "belittle [her]." SUMF, ¶119. Plaintiff cannot credibly maintain that such an innocuous comment supports a hostile work environment claim based on race or sex.

Fifth, while Plaintiff alleges a colleague joked about her being from "the wrong side of the tracks" Plaintiff produced no evidence of this comment and when, how, or the context in which it was supposedly made. SUMF, ¶120.

Sixth, it is simply untrue that Plaintiff was compared to dark chocolate. When asked to explain this alleged comparison during her deposition, Plaintiff testified that she was having a "fun conversation" during which the "topic of ice cream came up

and he was looking at me and he mentioned dark chocolate. The exact words he stated were probably more accurately recounted to my boss, I believe, like, a day or two after…but I can't remember his direct quotes right now." SUMF, ¶¶121-124 (emphasis added). Plaintiff did in fact document this interaction to her boss which does not support her allegation. On July 27, 2021, Plaintiff wrote:

> 9:06:05 PM Assata: ok retyping… On my way home friday, I mentally flagged another statement that I had blocked out. During icecream, i had asked chis what flavor he got, to which he said "chocolate. I'm a simple man." I then turned and asked the folks behind and to the left of us what flavor they got/was it the same. Bogdan who was closest, responded that he was getting "dark chocolate, if they have it." before proceeding into his track questions. Im not sure about the statement, when chris subsequently went in I [assumed] it was the sun, and it may have been. But I've also never hear anyone order dark choc[o]late ice cream. Regardless, after a full weekend, I definitely feel like there isnt too much overlap where ill have to seen Bogdan often. I'm probabl[y] going to politely avoid him|

*See* Doc. 15 (ECF No. 40) at p. 11, ¶2. Hence Plaintiff's own testimony and contemporaneous description of the cited occurrence demonstrate that ***no*** "comparison to dark chocolate" ever occurred. SUMF, ¶124.

Seventh, Plaintiff alleges that a hostile and offensive environment was created because she was forced to undertake additional labor such as documenting her work for teammates and getting approval before sending emails to her teammates. Yet, Plaintiff's evidence shows that she did much if not all of this through her own volition—not due to any purported harassment based on race. SUMF, ¶129. Indeed, Plaintiff seemed to feel that any work other than what is in her job description was outside her "contract." *Id.*

Nor can Plaintiff demonstrate respondeat superior liability for the now complained of behaviors. Certain facially neutral behaviors Plaintiff did not like she addressed with her Supervisor, Joren Wendschuh. *See generally,* Doc. 15 (ECF No. 40) at pp. 11-53. However, when asked about concerns brought to the attention of InductEV's director of HR, Judy Talis, during a meeting called to address same in February 2022, Plaintiff she simply recounts the complaints above, but nothing to put the company on notice of what are now her claims or that they were evidence of racial or sex harassment. SUMF, ¶128. Nor can Plaintiff point to a written communication of alleged pervasive or severe occurrences creating a hostile or offensive environment. *Id.*

Despite the force and conviction with which Plaintiff makes her allegations, discovery shows that there is no evidence to support her claims of harassment based on race. This case is similar to *Alers*, where the Court determined that "underwhelming, facially neutral incidents" were insufficient to create a triable issue for the jury. 919 F.Supp.2d at 546; *see also Blango*, 643 F.3d at 546. Plaintiff's claims here are equally deficient. Accordingly, the Court should reach the same result and enter summary judgment in Defendant's favor on this claim.

Plaintiff's sex-based hostile work environment claims also fail. Plaintiff identified her husband, Mr. Hackman, as a witness "to sexual harassment," but when asked to provide "a specific example of something [he] witnessed that suggests that

17

[Plaintiff] was subject to sexual harassment at work" he responded, No, the answer is no, I cannot." When asked: "it is fair to say that you did not witness a single instance of racial or sexual animus directed toward [Plaintiff] during your time at InductEV" Mr. Hackman responded, "I think that's fair to say." SUMF, ¶¶94-97.

Maria Tabbutt also testified (many times) that she did not remember witnessing anything she considered to be sexual harassment directed toward Plaintiff.  SUMF, ¶76.  When asked if she remembered seeing ***anything*** that would help understand Ms. Acey's claim," Ms. Tabbutt responded:  "No." SUMF, ¶79.

Plaintiff's documentary evidence is no more useful. Plaintiff presented myriad evidence in Doc. 15 purporting to substantiate her sexual harassment claims. *See* Doc. 15 (ECF 40) at pp. 11-16. Even viewing this "evidence" in the light most favorable to Plaintiff, her claims cannot survive. For instance, Plaintiff asserts that she was tapped on the shoulder and grazed by a "Mike Russel," to which she responded by threatening to "gut[] him with a dull spoon." Doc. 15 (ECF 40) at p. 15. But when asked to clarify this interaction at her deposition, Plaintiff testified "it's hard to describe …without using physics, but the surface, the surface of my form, he brushed across that." SUMF, ¶125.  According to Plaintiff, Mr. Russel walked past her in a hallway that was roughly six feet wide.  SUMF, ¶126. There is nothing about this interaction that requires "physics" or reflects "intentional discrimination because of sex"—much less discrimination that is so "severe and

pervasive" that it would detrimentally affect a reasonable person in Plaintiff's position. *Burgess v. Dollar Tree Stores, Inc.*, 642 F.App'x 152, 154-55 (3d Cir. 2016) (quoting *Huston v Proctor & Gamble Paper Prods. Corp.*, 568 F. 3d 100, 104 (3d Cir. 2009)).

Other underwhelming intentionally misconstrued allegations include that co-workers were staring at Plaintiff, that Judy Talis displayed sex discrimination when she recommended that Plaintiff might want to visit her daughter's gynecologist and "barely stopped herself from asking if [she] was pregnant," and that Mr. Rosenberger allegedly called her a "bitch"—even though Plaintiff clarified that Mr. Rosenberger used the word "bitch" "in front of [Plaintiff]" and not at her. SUMF, ¶¶127, 132. Plaintiff's testimony about Mr. Rosenberger's alleged use of the term "bitch" is consistent with Ms. Tabbutt's testimony that Mr. Rosenberger used the word "bitch" in the context of "this thing's a bitch" or "that's a bitch" when working on product. SUMF, ¶¶89-93. ***None*** of this supports a hostile work environment claim.

Plaintiff also alleges that Judy Talis, InductEV's Chief Administrative Officer, dismissed her concerns of sexual harassment—but presents no concrete facts to support these allegations beyond her conclusory testimony that Ms. Talis was dismissive. *See* Doc. 15 (ECF No. 40). Plaintiff also testified that most of her claims of improper treatment based on race and gender focused on Judy Talis. SUMF, ¶110. To that end, Plaintiff was asked during her deposition to identify the

sections of Judy Talis' April 28, 2021, hiring evaluation form that Plaintiff believes reflected racial or gender animus by Ms. Talis. SUMF, ¶111. Plaintiff responded by circling Ms. Talis' comments that Plaintiff: (1) "understands the need to do her job as asked"; (2) "feels the technician role is fundamental to engineering"; (3) "enjoys the job"; (4) "is not in a rush to get to the next step"; and (5) "truly sees this as part of her journey." SUMF, ¶¶111-112.

When asked to explain how Ms. Talis' evaluation feedback reflects animus, Plaintiff explained "For me it -- it connects more to a statement, like "Don't get ahead of yourself." It connected to ideas of -- I guess, condescension." SUMF, ¶98. Plaintiff then testified that Ms. Talis' feedback reflects her subconscious gender or racial animus. SUMF, ¶111. Whatever Plaintiff's tortured interpretation of Ms. Talis' feedback may be, surely a facially neutral evaluation cannot constitute evidence of an objectively hostile work environment. *Blango*, 643 F.3d at 546.

Plaintiff also claims Ms. Talis discriminated against her by not adopting as part of InductEV's voluntary non-discrimination policy and diversity training Plaintiff's suggested movie recommendations regarding Black history month. According to Plaintiff, the movies "highlight subtle racism . . . and give a curated, varied and nontraumaporn view of black American experiences." Doc. 15 (ECF No. 40) at p. 24, ¶ 18. Plaintiff also testified that she first began to think she was suffering

from harassment when Ms. Talis told her she needed to make up time off by using PTO. SUMF, ¶106.

In sum there is no triable claim for hostile work environment based on sex or race and courts do not hesitate to enter summary judgment under those circumstances. *See Perry v. Harvey*, 332 F. App'x 728, 731-33 (3d Cir. 2009) (finding patently racist remarks in the workplace like describing men of color as "dumb and useless" did not rise to the level of severe or pervasive conduct necessary to create a hostile work environment); *Hunter v. Trustees of Univ. of Pa.*, 2021 WL 1424710, at *8 (E.D. Pa. Apr. 15, 2021) (finding no hostile work environment claim where the employer criticized an employee relying on a racial trope about angry black women, called her "low" and "low down dirty," and joked her son would likely need to be bailed out of jail); *see also Koschoff v. Henderson*, 109 F.Supp.2d 332, 346 (E.D. Pa. 2000). Judgment should be entered for Defendant on Counts V, VI, X, XI, and XII.

### C. Summary Judgment is appropriate because Plaintiff agreed to release her claims and resign in exchange for $50,000 during mediation

Despite the dearth of facts supporting Plaintiff's claims, it is undisputed that Plaintiff agreed to release her claims against Defendant and resign in exchange for $50,000. SUMF, ¶6. Plaintiff admits: "In mediation I did agree to a verbal agreement in which I would resign and dismiss existing claims (prior to Sep 19) in return for a

settlement amount of 50,000 from Momentum Dynamics Corp." SUMF, ¶9. Plaintiff later writes to her father that "I was of *impression* that anything tentatively discussed would be bound by a formal written contract." [emphasis added] but does not offer evidence that her agreement to resign was in any sense tentative. *Id.*

Plaintiff's grandmother who attended the mediation testified "[t]here was a verbal agreement that she would resign and dismiss existing claims in return for a settlement amount of $50,000 dollars . . . but the agreement was never received and never executed." SUMF, ¶12. Unbeknownst to Plaintiff's grandmother, Plaintiff **did** receive a written agreement for her signature. SUMF, ¶16. Plaintiff simply never signed it, demanded more money, and elected to proceed with this litigation notwithstanding an enforceable agreement and resolution being reached. SUMF, ¶¶15, 17. Former HR director Patti Rensel, deposed on a notice from Plaintiff, testified that Plaintiff agreed in mediation "to resign from employment in exchange for compensation." SUMF, ¶15.

Plaintiff has not offered, and cannot offer, any evidence to refute her own admissions and the above testimony. Plaintiff instead relies on her misunderstanding that the agreement needed to be in writing to be enforceable. But under Pennsylvania law, "[w]here [as here] a settlement agreement contains all the requisites for a valid contract, a court must enforce the terms of the agreement." *Zong v. Lynch*, 2014 WL 4722625, at *4 (E.D. Pa. Sept. 22, 2014). "Th[at] is true even if the terms of the

agreement are not yet formalized in writing." *Id.* (citing *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999)).

Judge Pratter already recognized that "a binding settlement agreement may exist absent a writing, and InductEV is free to gather evidence of a binding oral agreement for the Court to consider at summary judgment."  That evidence exists.[1] To the extent Plaintiff purports to allege the existence of some condition precedent— that is, a signed written agreement as a condition to resolution, Plaintiff has produced *no* evidence that any such condition exists or ever existed between the parties. Plaintiff argument is akin to claiming that she had her fingers crossed behind her back when she agreed to accept $50,000, resign, and release her claims.

## D. Plaintiff's retaliation claims fail because Plaintiff agreed to resign and therefore, no adverse action was taken against Plaintiff

To prevail on her retaliation claims, Plaintiff must prove that she (1) "engaged in activity protected by Title VII; (2) the employer took adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."  *Selvato v. SEPTA*, 658

---

[1] Defendant is willing to stand by this agreement despite the significant expenses incurred defending this litigation, and the lack of past or future wage loss. As for wage loss, on May 16, 2022, after 11 months of work Plaintiff left active employment on a non-work-related disability. SUMF, ¶130. She continues receiving full time disability benefits from InductEV's long term disability insurance provider and testified in her deposition that she is not claiming wage loss. SUMF, ¶131.

F.App'x 52, 56 (3d Cir. 2016) (quoting *Nelson v. Upsala Coll*, 51 F.3d 383, 386 (3d Cir. 1995)).

Plaintiff cannot prevail on her retaliation claims because she cannot establish that she did not resign, or that InductEV's belief that she had was based on something other than her agreement to do so. See, preceding Section C.  Plaintiff has introduced no evidence that the parties agreed to any condition precedent of a written agreement during mediation. Plaintiff resigned, deciding later to renege and demand more money. Defendant's acceptance of her resignation and agreement to pay her money is not retaliation.  Accordingly, Counts XVII, XVIII, and XIX fail.

### E.    Plaintiff's claim for punitive damages is unwarranted

Punitive damages may be "recovered in claims under Title VII for cases involving intentional discrimination 'where the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of an aggrieved individual.'" *Medcalf v. Trustees of Univ. of Penn.*, 2003 WL 21843201, at *6 (3d Cir. Jul. 30, 2003) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999)); 42 U.S.C. § 1981(b)(1). "The focus of malice and reckless indifference to support a punitive damages award is on the actor's state of mind; the mere existence of a civil rights violation is not a guarantee of eligibility for punitive damages." *Nitkin v. Main Line Health*, 2021 WL 5631717, at *7 (E.D. Pa. Nov. 29, 2021)

(quoting *Acosta v. Fairmount Foundry, Inc.*, 391 F.Supp.3d 395, 406-07 (E.D. Pa. 2019)).

Plaintiff demands punitive damages based on what she perceives (but objectively is not) discriminatory conduct. Plaintiff has presented no evidence that Defendant engaged in discriminatory practice or practices nor acted with malice or reckless indifference to Plaintiff's federally protected rights. No damages—let alone punitive damages—are appropriate in this case.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor on Plaintiff's claims.

FOX ROTHSCHILD LLP

*/s/ Randall C. Schauer*
Randall C. Schauer (ID No. 34273)
Alberto M. Longo (ID No. 328893)
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA  19341-0673
Tel – (610) 458-7500
Fax – (610) 458-7337
rschauer@foxrothschild.com
alongo@foxrothschild.com
*Attorneys for Defendant*

Date:  August 23, 2024