**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ASSATA ACEY<br><br>                    Plaintiff,<br><br>v.<br><br>INDUCTEV<br><br>                    Defendant. | Case No.: 2:23-cv-01438<br><br>Judge Paul S. Diamond |

**INDUCTEV'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(c) and Section VI., C. of this Court's Policies and Procedures, Defendant InductEV ("Defendant"), through its undersigned counsel, Fox Rothschild LLP, hereby submits this Statement of Undisputed Material Facts and accompanying exhibits.

1.      Plaintiff Assata Acey ("Plaintiff") began working as a Product Introduction Technician with Defendant on June 14, 2021. (Schauer Dec. at Ex. 1 at 200:6-9).

2.      On May 8, 2022, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") followed by an amended complaint with the PHRC on June 21, 2022. (Schauer Dec. at Exs. 8 and 9).

3.      Both PHRC complaints were served on Defendant under a cover letter dated June 22, 2022.  (Schauer Dec. at Ex. 10).

4.      The PHRC determined it lacked jurisdiction over Plaintiff's complaints and indicated that the case would be transferred to the United States Equal Employment Opportunity Commission ("EEOC") (*Id.*)

5.      On September 19, 2022, a mediation (the "Mediation") occurred to resolve Plaintiffs' complaints with the EEOC. (Schauer Dec. at Ex. 2, 125:18-23, 190:23-191:2).

6.      It was agreed during the Mediation that Plaintiff would resign from her employment in exchange for $50,000. (Schauer Dec. at Ex. 13; Ex. 3, 14:4-9).

7.      It was agreed during the Mediation that Plaintiff would provide Defendant with a verification form from a medical provider on or before September 23, 2022. (Schauer Dec. at Ex. 13; Ex. 3, 16:19-24).

8.      It was agreed during the Mediation that Plaintiff would execute a general release, a non-disparagement and confidentiality, and Defendant agreed to provide a neutral reference. (Schauer Dec. at Ex. 13).

9.      Plaintiff admits:  "In mediation I did agree to a verbal agreement in which I would resign and dismiss existing claims(prior to Sep 19) in return for a settlement amount of 50,000 from Momentum Dynamics Corp" and that "I was of *impression* that anything tentatively discussed would be bound by a formal written contract." (Schauer Dec. at Ex. 13, Ex. 17).

10.   In exchange for these terms, within thirty (30) days of the execution of a written settlement agreement, Defendant agreed to pay Plaintiff $50,000 (less ordinary deductions as required, if applicable).  (*Id.*).

11.   Plaintiff's grandmother, Jacqueline Acey, attended the Mediation with Plaintiff. (Schauer Dec. at Ex. 3, 12:8-11.)

12.   Jacqueline Acey testified "[t]here was a verbal agreement that [Plaintiff] would resign and dismiss existing claims in return for a settlement amount of $50,000 dollars from dyn – Momentum Dynamics, Corporation, but the agreement was never received and never executed." (*Id.* at 14:4-9).

13.   Jacqueline Acey did not recall any details of her conversation with Plaintiff about being harassed on the basis of race and did not recall Plaintiff mentioning racism in the workplace. *Id.* at 69:6-9, 71:2-23.

14.   Former HR director, Patti Rensel also attended the mediation. (*Id.* at Ex. 4, 6:10-12).

15.   During Plaintiff's deposition of Ms. Rensel, Ms. Rensel testified that she recalled a verbal agreement being entered in which Plaintiff was "asked to resign from employment in exchange for compensation." (*Id.* at 7:3-13).

16.   On September 27, 2022, Plaintiff received a copy of a settlement agreement from Defendant. (*Id.* at Ex. 13).

17.     Plaintiff refused to execute the settlement agreement, repudiated her oral agreement with Defendant, and demanded $130,000 to resolve her claims. (*Id.*).

18.     On October 24, 2022, Plaintiff filed an Amended Charge of Discrimination with the EEOC asserting discriminatory terms, conditions, and privileges of employment based on race and gender, harassment based on race and gender, retaliation for protesting ADA/PTO policy, discriminated based on disability, and retaliation for filing an EEOC complaint. (Schauer Decl. at Ex. 16.)

19.     Plaintiff filed a Complaint in the Court of Common Pleas of Chester County Pennsylvania on or about March 10, 2023, asserting twenty claims for alleged discrimination and/or retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e), Section 1981 of the Civil Rights Act of 1990 (42 U.S.C. § 1981), The Americans with Disabilities Act of 1990 (42 U.S.C. § 12101), The Pennsylvania Human Relations Act (43 Pa. Stat. Ann. § 962.1) and one claim for Intentional Infliction of Emotional Distress under Pennsylvania law. Notice of Removal (ECF No. 1) at Ex., A ("Compl.").

20.     On April 14, 2023, Defendant removed Plaintiff's Complaint to the United States District Court for the Eastern District of Pennsylvania. Notice of Removal (ECF No. 1).

21.    On April 27, 2023, Defendant moved to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's Motion to Dismiss (ECF No. 10).

22.    On February 27, 2024, the Honorable Judge Gene E.K. Pratter, U.S.D.J. issued an order granting in part and denying in part Defendant's Motion to Dismiss. Feb. 27, 2024 Memorandum (ECF No. 49).

23.    The District Court dismissed Counts I, II, III, IV, IX, XIV, and XX of Plaintiff's Complaint with prejudice.  Feb. 27, 2024 Order (ECF No. 50).

24.    The District Court also dismissed Counts XIII, XV, and XVI without prejudice. *Id.*

25.    The District Court denied Defendant's Motion with respect to Counts V, VI, VII, VIII, X, XI, XII, XVII, XVIII, and XIX and the parties proceeded with discovery on those claims. *Id.*

26.    The Senior Technician role at InductEV requires at least "8+ years' experience in a test environment for emerging technology." (Schauer Dec. at Ex. 14).

27.    It is undisputed that Plaintiff did not possess at least "8+ years' experience in a test environment for emerging technology" at the time she applied for the introduction product technician position. (Schauer Dec. at Ex. 1, 100:7-18; Ex. 14.

28.    Plaintiff acknowledged during her deposition that the senior technician role requires 8+ years of experience. (*Id.* at Ex. 1, 71:13-24, 72:13-19).

29.    Plaintiff further acknowledged that she does not possess the requisite 8+ years of experience to qualify for a senior technician role. (*Id.* at 100:7-11).

30.    The written comments of multiple evaluators involved in interviewing and the hiring of Plaintiff were very positive regarding several aspects of her education and experience, as well as future at InductEV, but also recognized Plaintiff lacked the skills and abilities required of a senior technician role.  (*Id.* at Ex. 11.)

31.    Plaintiff received an Annual Performance Review in which she received no negative comments and acknowledges that she needs to "deepen her hands-on skills." (Schauer Dec. at Ex. 15).

32.    Plaintiff did not indicate that her growth plans included promotion in her Annual Performance Review. *Id.*

33.    Plaintiff received a review by Seth Wohlgemuth, Plaintiff's supervisor, and in her deposition could not identify anything in that review that she believed reflected animus toward black people or women. (Schauer Dec. at Ex. 1, 191:23-193:19).

34.    Plaintiff did not believe Mr. Wohlgemuth harbored any animus toward her based on gender or race. (*Id.* at 194:14-21).

35.     Nor could Plaintiff identify anything in Rob Rosenberger's review that reflected animus toward her based on race or gender. (*Id.* at 187:22-189:16).

36.     Plaintiff acknowledged that those who were promoted to senior technician roles possessed more experience than her.  (*Id.* at 100:7-23).

37.     Plaintiff alleged that black employees such as her and Omar Jackson were criticized as lazy due to race.  Compl., ¶ 123.

38.     Mr. Jackson was never called lazy or criticized based on race at InductEV. (Schauer Dec. at Ex. 5, 71:9-73:18).

39.     Plaintiff also alleged that Mr. Jackson was promoted only after controversy surrounding the hiring process for a senior technician, despite possessing 20 years of experience.  Compl., ¶ 148.

40.     Plaintiff identified Mr. Jackson as a witness with knowledge of the facts relating to her case, explaining that Mr. Jackson was the "first and only promoted black employee in defendant's history, originally denied senior title due to 'employment gap'. Also experienced scrutiny from HR and comments from coworkers. Present for a deal of criticism [Plaintiff] received from Rob Rosenberg and other coworkers. First/only employee to tell [Plaintiff] of suspected racial differences in pay. Knowledge of [Plaintiff's] work on the UV project. Witness to his own starting and ending pay as technician and senior technician while at MD." Schauer Decl. at Ex. 12.

41.     Mr. Jackson had no idea why Plaintiff identified him as a witness with knowledge of the facts relating to her case. (Schauer Dec. at Ex. 5, 54:1-5).

42.     Mr. Jackson testified that he never heard Rob Rosenberger say anything relating to race at InductEV.  (*Id.* at 58:12-14).

43.     Mr. Jackson testified that he had no reason to think that Rob Rosenberger had any racial animus toward him. (*Id.* at 58:15-59:1).

44.     Mr. Jackson testified that he is not aware of any racial differences in pay at InductEV.  (*Id.* at 60:14-16).

45.     Mr. Jackson testified that did not know what Plaintiff meant by "employment gap," stating "There was no employment gap." (*Id.* at 56:7-16).

46.     Mr. Jackson testified that he did not recall any specific conversations with Plaintiff regarding differences in pay other than one instance in which he "was speaking out of anger" while describing his pay and role at InductEV in relation to his race. (*Id.* at 47:5-48:5).

47.     Mr. Jackson acknowledged that he had twenty years of experience and was promoted and received a pay raise at InductEV due to his extensive experience. (*Id.* at 75:11-6).

48.     Mr. Jackson was unaware of any "controversy" surrounding his promotion and disagreed with the allegations in Plaintiff's Complaint that he was promoted only after controversy. (*Id.* at 75:9-20, 76:4-6).

49.     Mr. Jackson testified that he never experienced any comments from co-workers that he deemed inappropriate or suggestive of racial animus.  (*Id.* at 63:6-12).

50.     Mr. Jackson could not identify a single example where he felt criticized due to race while employed at InductEV. (*Id.* at 72:13-15).

51.     Mr. Jackson could not identify anything that he would describe in his own words as harassment at InductEV. (*Id.* at 73:15-18).

52.     Mr. Jackson testified that Plaintiff's co-workers "thought [Plaintiff] didn't do her job."  (*Id.* at 63:9-16).

53.     Mr. Jackson testified that he attended a meeting during which Rob Rosenberger indicated that he "didn't think [Plaintiff] was getting the work done fast enough" and would make his opinion known during meetings. (*Id.* at 57:14-25).

54.     Mr. Jackson testified that Rob Rosenberger's opinions were made "inside these meetings. On the floor, Rob would never say anything to me or Assata, no. Everything was said in the meetings that I witnessed." (*Id.* at 57:14-21).

55.     Mr. Jackson testified that Rob Rosenberger "was a senior technician" and would have been the one to know whether Plaintiff was completing work in a timely manner.  (*Id.* at 57:22-58:5).

56.     Mr. Jackson testified that InductEV "saved [his] life . . . because they gave [him] a job when [he] was down, when [his] wife was down.  (*Id.* at 33:8-12).

57.    Mr. Jackson testified that the company "trusted [him] enough to give [him] the key to open the shop" and that the "company helped [him]. (*Id.* at 33:13-17).

58.    Mr. Jackson testified that he was not aware of any practice of limiting employees based on race at InductEV. (*Id.* at 77:6-9).

59.    Mr. Jackson did not have a single example where he felt criticized due to race. (*Id.* at 72:13-15).

60.    Mr. Jackson did not witness anything he considered to be "pervasive racial harassment." (*Id.* at 70:8-15).

61.    Mr. Jackson testified that he applied for the role of product introduction technician and was not surprised when he received that role because that was the role he applied for. (*Id.* at 77:10-22).

62.    Mr. Jackson testified that his subsequent promotion to senior product technician was due to him showing the company that he was qualified for that position. (*Id.* at 77:21-78:2).

63.    Mr. Jackson testified that he has no reason to believe that InductEV made decisions based on race. (*Id.* at 82:15-20).

64.    Mr. Jackson had no knowledge of Plaintiff's claim that she was allegedly compared to chocolate ice cream. (*Id.* at 50:13-15, 81:22-23).

65.     Mr. Jackson had no knowledge of Plaintiff's claim that she was allegedly told she was from the wrong side of the tracks. (*Id.* at 50:18-22).

66.     Mr. Jackson testified that Rob Rosenberger, a senior technician, complained that Plaintiff did not complete tasks in a timely manner.  (*Id.* at 57:9 to 58:14).

67.     Joren Wendschuh wrote in a 2021 annual performance review dated February 6, 2022 that Plaintiff needed to "grow their soldering and assembly skills," "integrate better within the team," learn to read "the room for when to wrap up a tangent," "work toward providing clear and concise feedback and status updates where needed" and "integrate the new software into their daily routine."  (Schauer Decl. at Ex. 15, p. 4).

68.     Plaintiff did not disagree with Mr. Wendschuh, stating that in the 2021 performance review that she was "challenged with learning more about the product and processes and people surrounding its development" and that she was "seeking to deepen" her "hands-on skills." (*Id.* at pp. 1-2).

69.     Mr. Wedschuh stated in his Interview Evaluation Form that Plaintiff "[l]oves to learn" and "[b]rings a unique 'science and engineering' background and knowledge to the job." (Schauer Dec. at Ex. 11, p. 13).

70.    Mr. Wedschuh further indicated that Plaintiff was a "bit of a unique person" for the role, and that he would want to classify Plaintiff as a technician, "unless Omar & Seth are Sr.'s [*sic*]." (*Id.*).

71.    Mr. Jackson and Seth Wohlgemuth were promoted to senior technician at the same time, despite Mr. Wohlgemuth having been with InductEV longer. (Schauer Dec. at Ex. 5, 46:6-9).

72.    Omar Jackson testified that Mr. Wohlgemuth had a unique knowledge about the products and InductEV and that Mr. Wohlgemuth earned his promotion. (*Id.* at 101:24-102:4).

73.    Plaintiff testified that Mr. Wohlgemuth deserved the promotion. (Schauer Dec. at Ex. 1, 115:9-11).

74.    Plaintiff identified Maria Tabbutt as the "[o]nly supervising female mechanical engineer. Responsible for the Assembly Documents of the 150 and 75kW US and EU cabinets. Knows of some of the Quality and Documentation related work conducted by me during employment with Defendant. Experienced scrutiny and less cooperation from male employees including Bogdan Proca, Rob Rosenberg, and men on the QA team. Listened to locker room talk from John Wolgemuth. Told during performance evaluations that she could not document her supervision of design engineer despite acting as their supervisor without full pay. First/only employee to tell me of gender differences in pay. Received weekly

meetings with HR when they complained about hostile environment caused by new Manager which included performance evaluation issue. Witness to her own starting and ending pay and related negotiations while working at MD."  Schauer Decl. at Ex. 12.

75.    Ms. Tabbutt had no understanding of Plaintiff's sexual harassment claims. (Schauer Dec. at Ex. 6, 86:14-22).

76.    Ms. Tabbutt testified that, "Firsthand, I don't believe I had witnessed anything" when asked whether she had witnessed anything at InductEV that she understood to be animus toward Plaintiff based on sex.  (Id. at 97:16-21).

77.    Ms. Tabbutt further confirmed that she did not "remember witnessing anything" she understood to be sexual harassment directed toward Plaintiff. (Id. at 97:22-98:2).

78.    Ms. Tabbutt did not even remember hearing about anything prior to looking at a subpoena relating to this case.  (Id. at 98:3-6).

79.    When asked whether Ms. Tabbutt saw "anything at InductEV . . . that would help [her] understand Ms. Acey's claim with respect to being harassed on the basis of sex," Ms. Tabbutt responded "No." (Id. at 99:9-13).

80.    Ms. Tabbutt also had no knowledge of the allegations giving rise to Plaintiff's race-based claims. (Id. at 94:14-96:7).

81.     Ms. Tabbutt could not identify anything that "suggested Ms. Acey was subject to a culture [of] harassment on the basis of her gender." (Id. at 142:17-21).

82.     Plaintiff alleged in paragraph 175 of her complaint that, "[a]s a woman employee, [she] was subjected to a workplace culture and harassment on the basis of [her] gender."  Compl., ¶ 175.

83.     Plaintiff alleged in paragraph 176 of her complaint that [t]his harassment included targeted opposition, inappropriate office jokes, and unwanted touching from [h]er colleagues."  Compl., ¶ 176.

84.     Ms. Tabbutt never witnessed Plaintiff being touched by any colleagues. (Schauer Dec. at Ex. 6, 143:1-3).

85.     Ms. Tabbutt never witnessed Plaintiff listen to an inappropriate office joke. (Id. at 143:8-10).

86.     Ms. Tabbutt had no understanding of what Plaintiff meant by "targeted opposition." (Id. at 143:4-7).

87.     Ms. Tabbutt did not remember witnessing anything she considered to be sexual harassment directed toward Plaintiff. (Id. at 142:1-145:17).

88.     In fact, Ms. Tabbutt, a female employee, had no understanding of the allegations in paragraphs 175 and 176 of Plaintiff's Complaint. (Id. at 143:12-19).

89.     Plaintiff also alleged that she felt the experiences she faced were due to her gender (Compl., ¶ 12), and further alleged that her suspicions grew when

coworker Rob Rosenberger "muttered 'bitch' under his breath," which Plaintiff understood to be directed toward Ms. Tabbutt.  Compl., ¶ 13.

90.   Plaintiff's Complaint acknowledges that Mr. Rosenberger did not use the term "bitch" toward her.  See id.

91.   Ms. Tabbutt testified that no one ever referred to her as a "bitch" during her time at InductEV. (Schauer Dec. at Ex. 6, 131:12-15, 132:19-133:7).

92.   Ms. Tabbutt also testified that when she did hear Mr. Rosenberger use the term "bitch," it was when he was working on difficult projects and would use the term "this thing's a bitch" or "that's a bitch" and that she has used the term in her lifetime and in a similar context.  (Id. at 131:21 to 134:22).

93.   Ms. Tabbutt testified that Mr. Rosenberger never referred to her as a "bitch."  (Id. at 133:5-9).

94.   Daniel Hackman, Plaintiff's coworker who she later married and no longer works at InductEV, could not identify anything he observed suggesting racial animus toward Plaintiff. (Schauer Dec. at Ex. 7, 43:1-15, 69:14-19).

95.   Mr. Hackman could not identify anything he witnessed that suggesting Plaintiff was discriminated against based on race. (Id. at 36:14-22, 42:8-15).

96.   Mr. Hackman could not identify a specific example of anything he witnessed suggesting that Plaintiff was subject to sexual harassment at work. (Id. at 42:16-43:15).

97.    Mr. Hackman agreed that he did not witness a single instance of racial or sexual animus directed toward Plaintiff during his time at InductEV. Id.

98.    None of Plaintiff's witnesses could identify conduct suggesting racial animus toward Plaintiff. (Schauer Dec. at Ex. 1, 132:7-16; Ex. 7, 42:8-15; Ex. 6, 94:14-96:7;  Ex. 5, 38:20-21, 67:6-18).

99.    Rob Rosenberger provided a positive review of Plaintiff in the written notes of her interview, describing her as "very intelligent," and "very enthusiastic and outgoing" with an "excellent technical aptitude." (Schauer Decl. at Ex. 11, pp. 1-2).

100.    Rob Rosenberger recognized that Plaintiff lacked experience and "might not be happy in a Technician based on her comment that "she wanted to learn as a Technician before moving into an Engineering position."  (Id. at p. 1).

101.    Bruce Mitchell noted that Plaintiff was "still honing and practicing her skills after graduation, possible she was limited on what she was allowed to do from previous employers but doesnt [sic] seem to fully fit the skills for a Sr tech role." (Id. at p. 11).

102.    Bruce Mitchell also observed that Plaintiff "would need to be trained still on certain technical abilities" and that she "seemed to have little tool knowledge and experience, wiring, cabling stripping and crimping which are needed for a senior tech role." (Id. at p. 12).

103.    Bruce Mitchell further stated that Plaintiff had a "good enginerring [sic] mindset of thinking how and why components work and understanding it" and that she "seems to fit an enginerring [sic] position instead of a senior tech role." (Id. at pp. 11-12).

104.    Ryan Taggart indicated that Plaintiff "struggled with a drill and center punch" and that she "did not know which direction to put the drill in to [sic] drill a hole." (Id. at p. 6).

105.    Mr. Taggart also found that Plaintiff lacked "experience with hand tools and will need a lot of time and attention to hone her knowledge into practical experience." (Id. at p. 7).

106.    Plaintiff began to think she was suffering discrimination between April 25, 2022 and May 4, 2022 when Ms. Judy Talis, InductEV's Chief Administrative Officer, told Plaintiff she needed to make up time off due to alleged disability by using PTO.  (Schauer Dec. at Ex. 1, 45:20-49:18)

107.    Judy Talis, InductEV's Chief Administrative Officer provided several positive reviews of Plaintiff.  (Schauer Dec. at Ex. 11, p. 3).

108.    In an April 28, 2021 Interview Evaluation Form, Ms. Talis noted that Plaintiff "has a very innovative take on her work" and "has always looked beyond the task and thinks out of the box." (Id.).

109.   Ms. Talis also noted that while Plaintiff "may not have the exact skills we are looking for she is certainly capable with her background o[f] learning them." (Id.).

110.   Yet Plaintiff testified that most of her allegations of improper treatment based on race and gender focused on Judy Talis. (Schauer Dec. at Ex. 1, 116:12-19).

111.   Plaintiff testified that Ms. Talis' April 28, 2021 evaluation reflects racial or gender bias. (Id. at 130:24-135:6).

112.   There is nothing in Plaintiff's April 28, 2021 evaluation form reflecting racial or gender bias. (Schauer Decl. at Ex. 11).

113.   Plaintiff testified that the series of messages contained in Doc. 15 (ECF No. 40) captures her belief that she was accused of stealing time at InductEV. (Schauer Dec. at Ex. 2, 226:8-12, 243:21-245:23).

114.   Plaintiff was not accused of stealing time during her employment.  Doc. 15 (ECF No. 40) at p. 22, ¶ 14.

115.   Plaintiff missed meetings at InductEV.  Id. at p. 16, ¶ 2; id. at p. 17.

116.   Plaintiff produced no evidence of any "sabotage" by any coworkers.

117.   Plaintiff produced no evidence of derogatory jokes by any coworkers.

118.   Plaintiff testified that the message:  "This is Assata. She's a technician with a Physics degree . . . she'll be doing better things . . ." is evidence of a

"derogatory comment[] from [her] coworkers." (Schauer Dec. at Ex. 2, 226:13-18, 230:12-231:10).

119.   Plaintiff further testified that that message bothered her because the message was "making a big deal to a stranger about my role and my degree . . . like I was some commodity, and it made me feel uncomfortable," despite acknowledging that this message was not an attempt to "belittle [her]." (Id. at 231:8-10).

120.   Plaintiff produced no evidence to support her allegation that she was told she is from "the wrong side of the tracks."

121.   Plaintiff could not remember the details of her allegation that she was compared to chocolate ice cream or dark chocolate. (Schauer Dec. at Ex. 1, 274:4-15).

122.   Plaintiff testified that the "exact words" were more accurately recounted to [her] boss" but she can't remember his direct quotes right now." Id.

123.   Plaintiff recounted the alleged comparison in Doc. 15 (ECF No. 40) at p. 11, ¶ 2.

124.   Plaintiff produced no other evidence of ever being compared to chocolate ice cream or dark chocolate.

125.   Plaintiff could not explain her allegation that she was tapped on the shoulder and grazed by a Mike Russel. (Schauer Dec. at Ex. 2, 218:3-219:8).

126.   Plaintiff testified that Mr. Russel walked past her in a hallway that was roughly six-feet wide.  (Id. at 219:9-17).

127.   Plaintiff testified that Mr. Rosenberger used the word "bitch" in front of her and not toward her. (Id. at 256:16-23).

128.   In or about February 2022, Plaintiff met with Judy Talis, then Human Resource Director, and discussed a number of concerns she had regarding occurrences in the InductEV workplace, none of which involved facially discriminatory or hostile and offensive statements or behaviors. (Id. at 40:18 – 44:18; 45:1-56:14).

129.   Despite Plaintiff's belief that any work performed outside of her job description was outside of her contract, Plaintiff acknowledged that she was an at-will employee and provided no evidence that she was forced to take on additional labor due to any purported harassment based on race. (Schauer Dec. at Ex. 1, 143:2-144:15).

130.   On May 16, 2022, Plaintiff left active employment on a non-work-related disability. (Schauer Dec. at Ex. 2, 28:18-23).

131.   Plaintiff continues receiving full time disability benefits from InductEV's long term disability insurance provider and testified in she is not making a claim for lost wages. (Id. at 26:24-28:17).

132.   Plaintiff felt that Judy Talis acted improperly and displayed sex discrimination when she recommended that Plaintiff might want to visit her daughter's gynecologist and "barely stopped herself from asking if [she] was pregnant." (Id. at 251:10 – 255:9).

**FOX ROTHSCHILD LLP**

By: */s/ Randall C. Schauer*
    Randall C. Schauer, Esquire
    Alberto M. Longo, Esquire
    Eagleview Corporate Center
    747 Constitution Drive, Suite 100
    Exton, PA  19341-0673
    Tel – (610) 458-4967
    Fax – (610) 458-7337
    rschauer@foxrothschild.com
    alongo@foxrothschild.com

    *Attorneys for InductEV*