# EXHIBIT 8

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

Assata Acey,
    **Complainant(s)**

PHRC Case No. 202102397

v.

EEOC No. 17F202261016

Momentum Dynamics Corporation,
    **Respondent(s)**

## COMPLAINT

1. **COMPLAINANT(S) (name(s)/address(es)/phone number(s))**
   Assata Acey
   5121 Brown St, Philadelphia PA 19139
   770-231-1017

2. **RESPONDENT(S) (name(s)/address(es)/phone number(s))**
   (person, employer, union, labor organization or other entity against whom you are filing this complaint)
   Momentum Dynamics Corporation
   3 Pennsylvania Ave Malvern, PA 19355
   484-320-8222

3. **Number of Employees Employed by Respondent(s):**
   ☐ Fewer than 4   ☐ 4 to 14   ☐ 15 to 20   ☑ 20+

4a. ☑ I was employed by Respondent as **Technician** since **06/14/2021**.

4b. ☐ I applied for employment with Respondent as _____ on _____.

5. **Protected Class(es)** (check all reasons you have been discriminated against and specify the class, e.g. race, African American; sex, female)

   ☑ Race: African American    ☐ Religious Creed:
   ☐ Color:    ☐ National Origin:
   ☑ Sex: Female    ☐ Ancestry:
   ☐ Age/Date of Birth:    ☑ Retaliation
   ☐ Disability:    ☐ Use of Guide or Support Animal
   ☐ Other (specify):

6. **Dates of Discrimination:**

   Beginning: 05/21/2021        Ending: _____

   Continuing?  ✔ Yes        ☐ No

7. **DESCRIBE THE DISCRIMINATORY CONDUCT, WITH SPECIFICITY, AND EXPLAIN HOW THE DISCRIMINATORY CONDUCT IS RELATED TO YOUR PROTECTED CLASS:**
   (e.g. failure to hire, discharge from employment, demotion, leave denied, forced transfer, denial of religious or disability accommodation, retaliation)

   Please see following page for description of discriminatory conduct

**WARNING: FAILURE TO COMPLETE THIS SECTION MAY RESULT IN YOUR COMPLAINT BEING REJECTED FOR INSUFFICIENCY.**

A. Discriminatory terms and conditions of classification for employment and failure to promote on the basis of race and gender.
   1. On Mar 25, 2021, Assata was recruited by Jennifer Orloski on behalf of Momentum Dynamics Corporation (MD) for the role of Senior Technician.
   2. From 04/05/2021 to 05/14/2021 Assata matriculated through 5 rounds of extensive review, each indicated for the position of Senior Technician.
   3. At no point during the interview process, was Assata notified of her perceived disqualification from the role of Senior Technician.
   4. On May 21, 2021, Assata was presented with a written employment offer by Chief Administrative Officer (CAO, Judy Talis) for the role of Technician.
   5. During a negotiation of terms on May 24, 2021, CAO informed Assata that she was being offered the Technician role due to being "unqualified" for the Senior Technician role.
   6. CAO expressed Assata's being "unqualified" for the Senior Technician role as a basis for her to be given less compensation.
   7. However, CAO confirmed that Assata was still expected to conduct duties discussed during her interviews for the role of Senior Technician.
   8. MD's human resources department has the power to make and execute final recommendations for offers of employment, subject to the approval of the CEO.
   9. While feedback is collected during each hiring process, the final recommendations of the CAO are not required to align with all the employee feedback regarding said hiring process.
   10. CAO has made and executed recommendations for offers of employment in the face of opposing employee feedback.
   11. One such recommendation was for the hire of the Mechanical Engineering Manager, Kerry Guarino.
   12. CAO's recommendation limited Assata's classification and terms of employment to a level below that which she was interviewed or eventually completed work for.
   13. From the beginning of employment, Assata engaged in work tasks that were noticeably different from the general perception of her title and the contributions of her teammates.
   14. On Sept 7, 2021, two members of Assata's then 5-member team were promoted to Senior Technician, leaving Assata as the lowest ranking member and the only technician without senior designation on the PIT team until October 4.
   15. From Sept 7, 2021 to now, there has not been any communicated quota for senior technicians within Assata's team or MD.
   16. On Dec 6, 2021, Assata submitted her performance review, detailing her span of work from the previous 6 months.
   17. By Feb 6, 2022, Assata's Manager (Joren Wendschuh) and CAO had reviewed and discussed her performance review.
   18. In Feb 2022, Assata began work with her supervisor to adjust her formal role so as to formally incorporate:
      a) Assata's previous and current work within MD
      b) Opportunities for Assata to grow within MD.
   19. From June 2021 to today, MD has been in a self-professed period of "growth", involving the creation of and hiring for numerous new and pre-existing roles within the company.
   20. From June 2021 to today, a great majority of MD's new hires have been white and more than 80% or a great majority MD's workforce has been white.

21. From June 2021 to today, a great majority of MD' new hires have been male, and more than 80% or a great Majority of MD workforce has been male.
22. Assata is and has been the only woman, the only African American woman on her team and is one of two African American women employed by MD.
23. As attached to her interview documents in 2021 and emailed to her by CAO on April 18, 2022, the descriptions for Senior Technician and Technician have the same requirements and duties.
24. To date, Assata has received no notification of any discussions or action within the HR department to reclassify her role in alignment with Assata's work tasks or ability for growth.
25. Assata alleges that her disqualification from the Senior Technician role was not the result of a bona fide occupational qualification.
26. Assata alleges that her race and gender were the basis of CAO's decision to classify, and present terms of employment to Assata that were below her demonstrated qualifications for the Senior Technician role on May 21, 2021.
27. Assata alleges CAO's discriminatory behavior and or attitudes towards her have hindered Assata in:
    a. Acquiring employment terms or classification as appropriate to her work tasks
    b. Receiving consideration for promotion or opportunities for continued growth within MD.
28. Assata alleges that the conflict between her employment classification and job duties was created on the basis of her race and gender and that this conflict contributed to pervasive and/or severe workplace tension which affected her ability to fulfill her job.

B. Harassment on the basis of race and gender and in retaliation for disclosing a workplace incident that involved policy in violation of Pa. Code § 44.5.
1. Throughout the time of Assata's employment at MD, employees have occasionally elected to physically lift items (equipment, products etc.) themselves instead of using the electronic lift equipment.
2. Prior to review of Assata's workplace incident, there had been no established, and or/ actively adopted procedure within MD's policy to ensure her safety in using Momentum Dynamics Corp's electronic lift equipment or in the event that such equipment buckled or failed.
3. Due to the lack of procedure, employees who needed to use electronic lift equipment were subjected to preventable risks that were avoidable to employees that were able to physically lift items themselves.
4. MD's lack of safety protocol for using electronic lift equipment violated Pa. Code § 44.5 by placing undue risk on employees whose disability would limit them from lifting items at work on their own.
5. Assata's workplace incident initiated through equipment failure and would not have occurred if she had been willing and able to physically lift the item in question herself.
6. Assata's disclosure of a work-place incident brought attention to MD's lack of protocol.
7. On Sept 30, 2021:
    a) Assata's cell phone was crushed in the workplace incident.
    b) Assata immediately disclosed the incident to her manager, who then disclosed it to upper management.
    c) Assata purchased a new replacement phone from a Target within 6 minutes of her workplace.
    d) VP of Engineering (Ben Cohen, sibling to CAO) initiated a process to reimburse Assata for her crushed phone, also referenced here as reimbursement or "reimbursement for a workplace incident".
8. It is generally accepted that Operations and Human Resources Coordinator (OHC, Diana Wilmes) has and will:
    a) relay messages and directions to employees of MD on behalf of her supervisor, the CAO
    b) work to execute procedures and protocols that have been orchestrated by CAO.
9. The procedure and protocol for this reimbursement was orchestrated by CAO and OHC served as a liaison for CAO in the execution of CAO's procedure.

10. The requirements for reimbursement, as dictated by the CAO, were not satisfied by only the provision of the make, model, or other information as sufficient to prove the current market price of the damage phone.
11. The CAO's dictated requirements for reimbursement included (as chronologically given to Assata):
    a) The brand, model, memory size of the damaged phone
    b) the brand, model, and memory size of the new phone that Assata purchased as a replacement
    c) an "acceptable" proof of purchase for the new phone
    d) receipt of original purchase for the damaged phone.
12. No pre-existing procedure or guidelines for reimbursement requirements were presented to Assata and the need for new or different "proof" was only disclosed to her after the preceding requirement had been met.
13. On Oct 5,2021, Assata disclosed to OHC that she had lost her physical receipt.
14. On Oct 5,2021, OHC rejected Assata's initial submission of her credit card statement as proof of purchase and instructed her to solicit a new itemized receipt from Target.
15. Assata's digital confirmation of purchase from Target (submitted Oct 06, 21) was also not accepted as proof of purchase.
16. When local Target was unable to provide a new itemized receipt of purchase, OHC encouraged Assata to solicit a "Mock receipt."
17. The "mock receipt" provided by target on was not accepted as proof of purchase.
18. To prove purchase of the damaged phone, Assata had to reopen records of an inactive account with a cell phone provider.
19. Assata's effort to complete the reimbursement requirements resulted in sufficient time away from work tasks and several visits to the local Target, and even required her to reopen records of an inactive account with a cell phone provider.
20. By chance or design, the reimbursement process proved to be so difficult for Assata, that she tried to opt out of reimbursement altogether.
21. When Assata tried to opt out of reimbursement altogether, OHC told her to "at least try".
22. Bringing forward paragraphs 20-22 of subparagraph A, Assata alleges that the CAO's arbitrarily arranged course of reimbursement subjected her to severe and or pervasive harassment on the basis of her race and gender, and in retaliation of her involvement in workplace incident and willingness to review the incident and be compensated for damages associated.
23. On October 14, 2021, OHC came to Assata's desk in person to relay CAO's instruction: "we will replace... [the damaged phone] this time but [Assata] cannot have her phone out in the lab from now on".
24. CAO's instruction also expressed that:
    a) any issues with CAO's instruction should be expressed by Assata to her manager and not to CAO directly
    b) Assata should not feel singled out in being asked to comply because a policy would be enacted in the future to prohibit all employees from having their phones in the lab.
25. The CAO's instruction on phone access came only after a reimbursement amount had been determined for Assata's damaged phone and entailed a standard of conduct that would only immediately apply to Assata.
26. Prior to this instruction, Assata had anxiously been relying on phone access to deescalate the unequal scrutiny and reprimands received regarding timeliness to meetings and responsiveness to meeting invites.
27. After immediately disclosing the exchange to and receiving direction from her manager, Assata sought confirmation and direct wording of CAO instruction from OHC.

28. When asked for exact wording, OHC iterated that Assata was not to have her phone on her person "wherever safety glasses are needed".
29. In response to OHC's iteration, and to prevent grounds for reprimand, Assata's Manager advised her to comply while a solution was worked out for her.
30. On Oct 14, 2021, implications of CAO's instruction were discussed within Assata's team, as well as between Assata's Manager, VP of Engineering and VP of research and Development (Frank McMahon).
31. At no time was any additional communication written or otherwise given to suggest the emergence of company-wide policy on phone access.
32. At no time before October 18, was any information given to Assata to construe relief from CAO's instruction on phone access.
33. On Oct 15, 2021, and in direct contradiction to CAO's message, Assata reached out to CAO for clarity on all communications and policies surrounding her reimbursement and workplace access to her phone.
34. CAO declined to provide sufficiently conclusive clarification in writing and insisted on discussing the matter in person.
35. During an in-person meeting on, Oct 18, 2021, CAO maintained that none of the relayed message was true and that OHC had "misconstrued" CAOs words.
36. Assata avers that the CAO orchestrated the reimbursement process and denied her access to her phone in retaliation to this disclosure, and on the basis of her identity as an African American woman.
37. By denying any involvement, CAO failed to provide any reflection or assurances that she:
    a) would not punish associated employees for her own actions
    b) would cease from use of retaliatory harassment in the future.
38. CAO's lack of assurances added to the effect of feeling singled out and being made to fear loss of good standing at her job--because they added an anticipation of future instances of CAO's discretionary retaliation and harassment.
39. While Assata eventually received reimbursement for her phone, and verbal permissions to access her phone at work, the CAO's instruction and orchestration concerning these were reasonably intimidating subjected Assata to severe and/or pervasive harassment.

C. Harassment in retaliation to complaining about paid time off /unpaid time off policy that was believed to violate Pa. Code § 44.5.
1. On April 18, 2022, Assata complained via email about a previously intimated work policy which was requiring her and other employees whom Momentum Dynamics classified as full-time to use paid time off (as opposed to unpaid time off) for any absence resulting in a workweek of less than 40 hours.
2. Assata's specific concern was that the policy, as enforced and communicated, created an unfair penalty (and hazard) for worker's whose short-term or long-term disability prevented them from (or behooved them against) working more than 30 hours per week or 130 hours per month.
3. Assata's email went to lengths to explain her perception of the work policy as a discriminatory practice, her current health symptoms and how she felt effected by using her PTO in this manner.
4. In a meeting held later April 18(same day), CAO expressed to Assata that employees who needed time off for medical reasons would be allowed to do so and retain full time status, so long as they continued to meet ACA requirements, and met with CAO to express such need.
5. On April 21, CAO initiated conversation with Assata in which she disclosed that her doctor would have a signed ADA (accommodations request) form before or by April 22.
6. CAO sounded out Assata's use of acronym "ADA" as "accommodation request form."
7. CAO's sounding out was done in an office cubicle that was within earshot of several other cubicles where employees were actively working.

8. During this same conversation, CAO advised Assata to "put in PTO" for hours missing for a pay period (April 11-24) that would be up for approval April 25.
9. At the moment of this advisement:
   a) Assata had disclosed her medical condition as the cause of her missing work hours in previous weeks
   b) CAO had made no indication of doubt that Assata was attempting use of unpaid PTO for non-medical reasons
   c) no reason was given as to why she should "put in PTO" for a timesheet whose approval date was after the anticipated arrival of her doctor's certification
   d) no written communications were (or had been) made to document that Assata was being instructed (and had not voluntarily elected) to "put in PTO"
   e) CAO had been privy to written and verbal discussion of the stress and pressure Assata experienced as a result of having to use PTO for her emerging disability.
10. Assata alleges that CAO's actions in paragraphs 6 and 8 were made in retaliation for making a good-faith complaint about a work policy that Assata believed to be discriminatory towards ill or otherwise disabled employees.
11. Assata alleges that this retaliation is a continuation of the harassment CAO has enacted towards Assata with discrimination to her status as a African American woman.
12. Assata also alleges that subparagraphs B and C represent a pattern of ongoing severe and/or pervasive harassment that she has been subjected to on the basis of her race and gender.
13. Assata anticipates this pattern to remain continuous in the future.

8.  Based upon the foregoing, I/we allege that the Respondent(s) violated Section 5 of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, and the implementing regulations, 16 Pa. Code §§ 41.1-47.74.

9.  The Pennsylvania Human Relations Commission has jurisdiction over this matter pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963.

10. I/we pray that the Respondent(s) be required to provide all appropriate remedies under Section 9 of the Pennsylvania Human Relations Act.

11. If applicable, this Complaint will be dual-filed with the U.S. Equal Employment Opportunity Commission (EEOC), pursuant to the work-sharing agreement between the PHRC and the EEOC. Based upon the foregoing, I/we allege that the Respondent(s) violated one or more of the following federal statutes: Title VII of the Civil Rights Act of 1964 and/or The Pregnancy Discrimination Act and/or The Equal Pay Act of 1963 and/or The Age Discrimination in Employment Act of 1967 and/or Title I of the Americans with Disabilities Act of 1990 and/or Sections 102 and 103 of the Civil Rights Act of 1991 and/or Sections 501 and 505 of the Rehabilitation Act of 1973 and/or The Genetic Information Nondiscrimination Act of 2008.

## VERIFICATION

I hereby verify that the statements contained in this Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities.

05/08/2022
Date

Signature
Assata Acey
Printed Name

Date

Signature

Printed Name

**WARNING: COMPLAINTS MUST BE SIGNED AND FILED WITHIN 180 DAYS OF THE ALLEGED ACT OF HARM.**

**WARNING: IF YOU FAIL TO COMPLETE ANY PORTION OF THIS COMPLAINT, THE PHRC MAY NOT ACCEPT YOUR COMPLAINT FOR FILING.**

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

RE: Assata Acey vs. Momentum Dynamics Corporation
PHRC Case No. 202102397
EEOC Case No. 17F202261016

## Certificate of Service

Pursuant to the requirements of 1 Pa. Code § 33.31, I hereby certify that I have this day served the foregoing Complaint by first class mail, postage prepaid, as follows:

**Complainant:**
Assata Acey
5121 Brown Street
Philadelphia, PA 19139

**Respondent:**
Momentum Dynamics Corporation
3 Pennsylvania Avenue
Malvern, PA 19355

**Complainant Attorney:** (if applicable)

**Respondent Attorney:** (if applicable)

Date: 6/22/2022

By: *Samantha Lopez*