# EXHIBIT 16

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|
| X  FEPA | 202102397 |
| X  EEOC | 17F-2022-61016 |

PHRC _____ and EEOC
*State or local Agency, if any*

| Name (indicate Mr. Ms. Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Assata Acey | 7702311017 | [redacted] |

| Street Address | City, State and ZIP Code |
|---|---|
| 5121 Brown Street | Philadelphia, PA, 19139 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Induct EV (Formerly Momentum Dynamics Corp.) | 76 | 484-320-8222 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3 Pennsylvania Ave | Malvern, PA 19355 |

DISCRIMINATION BASED ON (Check appropriate box(es).)

X  RACE   __ COLOR   X  SEX   __ RELIGION   __ NATIONAL ORIGIN

X  RETALIATION   __ AGE   X  DISABILITY   __ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 05/24/2021   Latest:
X  CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

1. Discriminatory Terms, conditions, privileges of employment (05/24/2021-present) based on race and gender
2. Harassment based on Race and gender (07/21/2021-present)
3. Retaliation for protesting ADA/PTO policy (04/21/2022)
4. Discrimination based on disability (06/07/2022)
5. Retaliation for filing EEOC complaint (09/23/2022-present)

Please see attached 3 pages for details of each claim.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

10/24/2022
Date       *Charging Party Signature*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Discriminatory Terms Conditions and privileges of employment based on race and gender.
1. I am an African American Woman, and Citizen of the United States and Pennsylvania, formerly employed by Momentum Dynamics Corp (MD) from June 14, 2021-09 27, 2022.
2. While at MD, I held job duties comparable to internal roles of:
    i) senior quality technician (review assembly documents, find/report defects, and recommend/document preventative actions, exhibits 126, 131, 132, 134)
    ii) project management (engage conflict resolution, intradepartmental structure, create procedure/implementation plans, exhibits 136,137, 141, 146, 147, 155, 156)
    iii) R&D electrical engineer roles (provide theoretical and design background to various products, calculate safety threshold and test concepts, exhibits 142,157, 160-162).
3. I believe there is significant overlap between my duties and the duties described in the job descriptions emailed to internal interviewers (including recruiters Ryan Mackenzie and Jennifer Orloski) for each of those roles.
4. The Human Resources Department (HR) was aware of my job duties and received detailed description of several of them as well as an ask to be compensated for my work tasks on 12/04/2022 when I submitted my performance review (exhibit 29).
5. Around 01/07/2022, my performance review was discussed between my manager and HR (exhibit 28).
6. Between 12/20/2022 and 03/20/2022, employees Diana Wilmes (white, female), Taylor Johnson (white, male), Harry Nask (white, male), and Andrea Neff (white, female) were reclassified based on company structure, qualifications, and job duties (exhibits 108-123).
7. Around 03/14/2022 I was granted (3%) pay increase on basis of performance within my formal role.
8. Within 4 years before and sometime after my employment, Bill Gallagher (white, male) was reclassified from his role of Principal Electrical Engineer to Principal Test Engineer, and Senior Technician, Rob Rosenberger (white, male) was also reclassified from Product Introduction to the Testing Team.
9. The denial of my request for proper compensation and reclassification to match my job duties was a harmful act of discrimination based on my race and gender.
10. This act barred me from similar compensation or classifications granted to employees satisfying duties in departments of Quality, Project Management and R&D engineering.
11. I believe that this practice of biased classification is evidenced through my negotiation experience where I was:
    i) Presented an offer in contradiction to written communications given to me and interviewers of the Product Introduction team throughout my 1 month, 5-round interview process (exhibits 3-12).
    ii) Told that the lower role was the new basis for my starting compensation ($34/hr vs the $40/hr I asked for, exhibits 14-16).
    iii) Assured that despite the lower role, I would be expected to perform the same duties discussed in interviews for the Senior Technician Role (exhibits 15 and 16).
12. The motivating bias of this classification is further evidenced through the race and gender-based harassment I experienced from CAO (exhibits 34, 54-61, 63, 65), and their response to my complaints of workplace bias (exhibits 31, 32, 35, 89).
13. This act of harm caused me to feel anxious (acutely manifested as nausea and digestive urgency) about my work performance and professional qualifications, while affecting my ability to collaborate with and relate to my coworkers (exhibits 18-24, 26-27).

Race and Gender Harassment
14. During my employment at Momentum Dynamics, I was subject to continuous harassment based on my race and gender as a Black woman.
15. This would involve HR disparate treatment (exhibits 54-61) and comments suggesting that I was "stealing time" (exhibits 63, 65), pregnant and should see daughter's gynecologist (exhibit 34), as well as coworker complaints that I wasn't performing adequately, false accusations of safety violation, and a comic placed at my cubicle to mock my degree (exhibits 25 and 88).
16. One such severe instance of harassment is where the cell phone reimbursement process (09/2021-10/2021) was made more severe due to my race and gender (exhibits 52-53).

17. On 02/07/2022 I suggested a movie list for black history month to reduce microaggressions and was told to meet with HR for "discussion" (exhibit 89).
18. In my meeting, I spent 73 minutes discussing detailed instances of harassment I experienced from coworkers and why I felt the current diversity training was not effective (exhibits 31, 32).
19. On 02/11/2022 Hr called me, for 16 minutes, to "clarify details" of experienced bias (exhibits 32, 35).
20. On 02/14/2022 Hr emailed me to claim that I had not provided specific instances or enough information asking me to provide "brief notes" for use in training (exhibit 35).
21. I took these statements HR to be contradictory to the full content discussed, and time invested to recount stressful experiences.
22. I moreover assumed HR's email as an attempt to establish a specific narrative about our conversation while also discouraging me from making suggestions or complaints by implying that my concerns would not be taken seriously.
23. The harassment suffered and HRs response strained my mental health and physical nervous system through numerous panic attacks and time spent to objectively present experiences, defend my work, apologize for otherwise common employee behavior, despite the sense that my emotional health was not as valued as my performance and the comfort of those harassing me (exhibits 18-19, 54-55, 61).

Policy Protest Retaliation

24. On 04/18/2022 I wrote to Hr to protest a policy that I felt to be discriminatory under ADA and its consequent disparate effects on me (exhibits 62, and 69).
25. On 04/18/2022, I met with HR to discuss this, and was told that xxx, giving the impression that I would only need to disclose my medical condition, pending a doctor's note to excuse timesheet gaps (exhibits 62 and 69).
26. On 04/21/2022 I was informed by HR that accommodations would be granted only after the next pay period.
27. The stress of this information and how it was relayed (in a cubicle/within earshot of coworkers) caused me to return to work after 2 geographically separated doctors' appointments (related to my urgent health issues) to make up the missing hours, in pain, until 9:30pm (exhibits 76, 77, 106, 107, 164, 165).
28. I believe that the CAO attempted to retaliate against me for making an ADA complaint by misrepresenting the accommodations process until the later part of the workweek.

Disability Discrimination

29. On 04/18/2022 I disclosed my chronic illness to CAO while complaining about the PTO policy.
30. CAO received additional physician relayed information regarding my disability on:
    i)     04/23/2022 (initial diagnosis sent through manager, exhibit 71)
    ii)    04/25/2022 (accommodation request form, exhibits 71 and 72)
    iii)   05/13/2022 CAO received PCP (short-term disability forms, exhibits 90, 91).
31. On 06/07/2022 date, I was asked to sign FMLA form if my insurance-managed disability leave would extend beyond 06/17/2022 (exhibit 78).
32. On 06/13/2022, I emailed back to enquire why the document I was asked to sign left fields blank that would indicate whether I would be let go while on leave, eligibility for leave/concurrent use of PTO, deadlines/frequency/depth of medical information required, etc (exhibit 78).
33. I also asked that all fields could be specified in the document for my review (exhibit 78).
34. On the same day, CAO emailed the same blank form (this time without my name on the file title) stating, without explanation, that I would not have fields filled out until my leave was extended by disability insurance (exhibit 78).
35. On 06/27/2022 date, after my leave was extended, I was sent a filled FMLA notice.
36. I believe that the company's attempt to have me certify receipt of a blank notice was harmful act made to provide pretext to discriminatory discharge on the basis of my disability.
37. I assert that the combined stress of my employment experience with MD and this act of harm is a contributing factor to my diagnosis and episode of recurrent major depressive disorder (exhibit 183).

EEOC complaint Retaliation

38. On 06/26/2022, Dual Filed FEPA/EEOC complaint was served to the defendant.

39. On 09/19/2022 date, I participated in private mediation with the defendant over terms of compensation, resignation (with no agreed date), confidentiality, pending the receipt, review, and execution of a written agreement for all material terms (exhibit 103)
40. With or without successful mediation, I had planned to return to work and/or begin use of PTO starting 09/22/2022, date of FMLA leave expiration, and (if applicable) ending on the date of settlement-executed resignation (exhibit 95).
41. No written agreement from mediation was presented to me either review or sign before 09/23/2022.
42. On 09/21/2022, MD's representative emailed EEOC mediator to suggest that we had come to a complete agreement and ask about dismissing the charge (exhibit 97).
43. On (09/21/23), I emailed Hr and my supervisor of my intent to request PTO for the dates of 09/22/2022-09/23/2022 but for being locked out of the Employee time system (BambooHR) for months (exhibit 94).
44. On 09/23/2022, I completed company tech support session and gained access to request PTO (exhibit 99)
45. Within 11 minutes, I received an email from representation advising me (exhibit 98) that:
    i) I could not take PTO during my medical (FMLA) leave.
    ii) I "had resigned or would be resigning shortly" and should send a resignation letter.
    iii) I would receive payment for PTO after resigning.
    iv) I would receive sooner payment of PTO if I resigned over the weekend.
46. I immediately attached references of and requested confirmation of deviation from previous communications of company FMLA policy and PTO use to no response.
47. Later that same day, 09/23/2022, I submitted PTO for 09/21/2022-09/27/2022.
48. On 09/27/2022 I virtually reported to work, in accordance with current worksite construction (exhibit 101).
49. I have received no additional acknowledgement of my system PTO request.
50. On 09/27/2022, I was simultaneously locked out of my work accounts and emailed by MD rep that I had already agreed to resign at mediation (09/19/2022) "effective immediately" and that MD "accepts my resignation" (exhibits 102, 104, 105).
51. I believe that the company tried to coerce me to resign by misrepresenting PTO policy and FMLA policy in retaliation for my filing an EEOC complaint.
52. I also believe that the company wrongfully terminated me to prevent me from gathering evidence relevant to my claims process and in retaliation for my filing an EEOC complaint and EEOC mediator moving my complaint back from ADR to investigation.
53. I also believe that the company attempted to tamper with processing of my EEOC/FEPA claim by misrepresenting the status of mediation to the EEOC mediator and trying to coerce my unwritten execution of their mediation proposal conditions without providing me any written contract to review or execute.
54. On 09/16/2022, I began treatment for secondary autonomic disorder (ANS/Autonomic Nervous System), which is reasonably enhanced by stress, and has been enhanced by the stress of MDs conduct (exhibits 166).
55. On 06/18/2022 I began weekly therapy to help process the weight of my employment experience (exhibits 167-182) and have considered changing to biweekly sessions to accommodate the additional acts of MD.