UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASSATA ACEY, | : |
|     *Plaintiff* | :   **CIVIL ACTION** |
|     v. | : |
| INDUCTEV, | : |
|     *Defendant.* | : |
| | :   No. 2:23-1438 |

**Amended Rule 56 Motion for Partial Summary Judgement**

Proposed Facts

I.

    A)

        i) On 05/08/2022, I filed my original dual-filed complaint with EEOC and PHRC against the defendant (pp. 2, 9 Doc 15-5, Appendix p. 3).

        ii) On 09/19/2022, I attended a virtual mediation session with the Defendant. (Ex 1, Appendix p. 5)

        iii) Adverse Action 1: On 09/23/2022, I was informed by the Defendant that I was not permitted to take PTO during my disability leave. (p. 1 of Doc 15-75, Denial of PTO, Appendix p. 63).

        iv) Causal Connection: This communication occurred 4 days after the mediation session.

        v) Adverse Action 2: On 09/27/2022, my employment was deemed terminated and I was locked out of my employee accounts. (Doc 10-5, Appendix p. 9). (Ex. 2, Appendix p.15)

        vi) Causal Connection 2: The termination occurred 7 days after my virtual mediation session with the Defendant and was concurrent with the Defendant's submission of a written contract to resign and dismiss my claims in exchange for $50, 000. (Ex. 1, Appendix p. 5). (Doc 10-5, Appendix p. 9).

       vii)       Adverse action and Causal Connection 3: On 10/17/2022 the Defendant informed me that if I continued to pursue my claims and reject their contract the defendant would sue me

              (Ex. 3, Email from May Mon Post on 10/17/2022, Appendix p. 21)

B)

       i)       On 09/23/2022 the Defendant stated via email that I was not permitted to take PTO because it could not be taken during disability leave

              . (p.1 of Doc 15-75, Email from May Mon Post, Appendix p. 63)

       ii)       On 06/17/2022 and 06/17/2022 I had received assurances by then-CAO Judy Talis, that I would be permitted to use PTO during my disability leave

              (Ex. 12 and 13, 06/07/2022 Email from Ms. Talis, Appendix p.65, 68)

       iii)       The defendant has claimed that they were legally acting on a verbal agreement to resign and drop my claims in exchange for $50,000.

              (pp.5-6, Part I of Discussion in 02/28/2024 Memorandum (Doc 49)) Appendix, p. 17)

       iv)       The defendant has failed to produce any compelling evidence of there being a final agreement between myself and the Defendant to release all of my claims and resign in exchange for $50,000.

              (pp.5-6, Part I of Discussion in 02/28/2024 Memorandum (Doc 49)) Appendix, p. 18)

    v)    The only attendees of the mediation on the Defendant's behalf were Alexa Heisler, Patti Rensel and May Mon Post

        (Ex. 4: p.9 lines 19-24 and p.10 lines 1-2 of Alexa Heisler Deposition Transcript, Appendix p. 27)

    vi)    In her deposition, Ms. Heisler, (who is former counsel for the defendant and who was represented by the defendant's legal counsel) admitted that she was not present for the second half of mediation and had not witnessed any agreement being reached

        (Ex. 4 lines 12-18 of p. 11 of Alexa Heisler Deposition Transcript, Appendix p. 27)

    vii)    In her Deposition, Ms. Rensel testified that she was not aware of any particular wording or statement used to convey my agreement, and that she was unable to recall several terms in May Mon Post's alleged agreement:

(p.22 lines 9-21 of Patti Rensel Deposition Transcript, Appendix p. 42)

(p.24 lines 17-21 of Patti Rensel Deposition Transcript, Appendix p. 42)

| | |
|---|---|
| viii) | The only remaining witness to the mediation (on defendant's behalf) is May Mon Post, and the email that alleged a final binding agreement (including terms of resignation, general release, confidentiality etc.) was sent from her email account. (Doc 10-5, Appendix p. 9). |
| ix) | May Mon Post has not been disclosed on the defendant's witness list and was not called for deposition. |

      x)      The morning after mediation, I attended therapy with Chantele Mallory, of which she noted my anxiety over not having reached a final agreement

      (Ex. 4, 09/20/2022 Session Note from Response to Defendant's Subpoena, Appendix p. 50)

      xi)      Less than 36hours after mediation, I texted my former supervisor that a final agreement had not been reached, and outlined the anticipated process for settlement and any outstanding conditions precedent:

      (Ex. 7, Text messages from myself to Joren Wendschuh on 09/20/2022, Appendix p. 52)

C)

      i)      At the time of my termination, the defendant was allowing employees to be paid for time spent completing their virtual osha-40 training.

      ii)      After submitting my return-to-work letter, I continued to receive disability benefits totaling $3,348 per month, in the amount of $10,044.

| | |
|---|---|
| iii) | At the time of Termination, my employment with the defendant included terms of $35.19 per hour, 3% 401k match, and $100 biweekly health plan opt-out payments |

(Ex. 11 Paystub for 04/29/2022, Appendix p. 61)

| | |
|---|---|
| iv) | I continued to interview and search for new roles in my field that would accommodate my disability through December 31, 2022, but never received a job offer. |
| v) | Had I continued to work for the defendant (through Dec 31, 2022) at my previous hourly rate of $35.19 with reduced hours of 30hrs/week, my net pay would have been $12,668, which is $2,624.40 more than I received on disability. Had I returned to work for the defendant full time with accommodations, my net pay would have been $16,891, which is a difference of $6,847. |
| vi) | The 3% gross income 401k match and $100 biweekly health coverage opt out payments would have then amounted to $980 had I worked reduced hours of 30hr/wk and $1,106 had I worked full time with accommodations. |
| vii) | Therefore, the defendant's termination of my employment cost me a total of $3,604 at least and $7,953 at most in lost wages and benefits, not including interest. |

    viii)    A week after my termination, I attended my then-weekly therapy with Chantele Mallory, who noted a psychosomatic effect from termination

(Ex. 8, 10/04/2022 Session note from response to Defendant's Subpoena, Appendix p. 54)

    ix)    On 09/26/2023, I attended weekly therapy with Chantele Mallory, LCSW who noted my increase intrusive thoughts related to pursuing my claims

(Ex. 9, 09/26/2023 Therapy Session Note from Response to Defendant's Subpoena, Appendix, p. 56)

x) On 04/15/2024, I was seen by my primary care provider, Jennifer Flom, DO (who also at that time increased the prescription amount of Sertraline for my depression), who noted the stress caused by pursuing my claims:

(Ex. 10, Visit Note from Dr. Flom 04/15/2024, Appendix p. 58)

(Ex 10, Visit Note from Dr. Flom 04/15/2024, Appendix p. 59)

Sincerely,

/s/ Assata Acey Hackman

Assata Acey Hackman (Pro Se)

5121 Brown St,

Philadelphia, PA 19139

aceyassata@gmail.com

770-231-1017

Date: 05/06/2024