IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ASSATA ACEY HACKMAN** | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Civ. No. 23-1438 |
| | : | |
| **INDUCTEV** | : | |
| **Defendant.** | : | |
| | : | |

**O R D E R**

Pro se Plaintiff Assata Acey Hackman proceeds against her former employer InductEV, alleging discrimination, harassment, and retaliation under Title VII, § 1981, and the Pennsylvania Human Relations Act. (Doc. No. 1-2.) Judge Pratter (late of this Court) previously dismissed several of Hackman's disability discrimination claims. (Doc. Nos. 49, 50.) InductEV moves for Summary Judgment on all remaining claims. I will grant InductEV's Motion. (Doc. No. 131.)

I. **FACTUAL AND PROCEDURAL BACKGROUND**

I have construed the facts most favorably to Ms. Hackman. Because she is pro se, I have construed Hackman's submissions liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

On June 14, 2021, Hackman began work at InductEV as a Product Introduction Technician; she was the only Black woman then employed at the company, which had 80 employees. (Doc. 131-5 at 30; Doc. No. 1-2 at 5.) Although Hackman was disappointed not to be hired as a Product Senior Technician, she did not have the eight or more years of experience that the position required. (Doc. No. 131-18 at 3; Doc. No. 131-5 at 10.)

Over some four months, Hackman came to believe she was the subject of discrimination. (Doc. No. 49.) By the end of 2021, Hackman believed that her duties exceeded the scope of her title and felt that she had not yet been promoted due to her race and gender. (Id.) Hackman also

complained that her white colleagues were treating her with "hostility." (Id.) She communicated these concerns to her supervisor. (Id.)

In April of 2022, Hackman "experienced an onset of symptoms that would later become a chronic condition," including dizziness, migraines, heat flashes, nausea, vertigo, and pituitary macroadenoma, which eventually required her to take an unpaid medical leave beginning on May 16, 2022. (Doc. No. 109.) There is nothing in the record to identify Hackman's "chronic condition."

Hackman was disappointed with InductEV's policy, which initially required her to use paid time off instead of immediately starting unpaid leave. (Doc. No. 1-2.) Hackman then "resolved to evaluate [her] experiences in totality" and filed a complaint with the Pennsylvania Human Relations Commission on May 9, 2022. (Doc. No. 15 at 1.)

Because the PHRC lacked jurisdiction, it transferred the matter to the EEOC in late June. (Id.) The Parties then privately mediated the dispute on September 19, 2022. (Id.) As I discuss below, the Parties came to an oral settlement agreement: InductEV would pay Ms. Hackman $50,000 in return for her immediate resignation and the release of her claims. (Doc. No. 131-2.)

On September 27, 2022, counsel for InductEV emailed Hackman a written settlement agreement that was "sent concurrently with [her] being locked out of company databases." (Doc. No. 49.) Although Hackman refused to sign the agreement, InductEV believed that a settlement had been reached and declined to allow Hackman to return to work.

On October 24, 2022, Hackman filed an amended complaint before the EEOC. (Doc. No. 49.) On December 16, 2022, the Commission issued a Notice of Right to Sue, informing Hackman that she had 90 days to file a lawsuit against InductEV. (Doc. No. 49.) On March 14, 2023 (exactly 90 days later), Hackman filed a complaint against InductEV in the Chester County Common Pleas

Court.  (Doc. No. 49.)  InductEV removed to this Court, and the matter was assigned to Judge Pratter.  (Doc. No. 1.)  Hackman moved for summary judgment, which Judge Pratter treated as a motion for default judgment.  (Doc. Nos. 1, 5.)  InductEV moved to dismiss all claims.  (Doc. No. 10.)

On February 27, 2024, Judge Pratter denied Hackman's motion for default judgment ("summary judgment") and granted InductEV's Motion to Dismiss in part.  (Doc. Nos. 49, 50.)  She dismissed several claims with prejudice and dismissed Hackman's three disability claims without prejudice, allowing Hackman leave to amend.  (Id.)  Judge Pratter did not, however, provide a deadline for amendment.  (Id.)  On April 22, 2024, Hackman moved for leave to amend the claims dismissed with prejudice, which Judge Pratter denied.  (Doc. Nos. 84, 87.)  On May 6, 2024, Hackman filed a Motion for Partial Summary Judgment (which she has since amended.) (Doc. Nos. 89, 92.)

On May 21, 2024, this case was reassigned to me.  (Doc. No. 95.)  On May 24, 2024, Hackman moved to amend the Complaint to revive the disability claims that Judge Pratter had dismissed without prejudice.  (Doc. No. 97.)  On June 3, 2024, Hackman submitted another Motion to Amend, in which she sought to add to her existing retaliation claims.  (Doc. No. 105.)  I denied both Motions and Hackman's two subsequent Motions for Reconsideration.  (Doc. Nos. 109, 110 128, 153.)  InductEV now moves for Summary Judgment on all remaining claims.  The matter is fully briefed.  (Doc. Nos. 131, 148, 150.)

## II. LEGAL STANDARDS

Upon motion of any party, summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  I "must view the facts in the light most favorable to the non-moving party," and

take every reasonable inference in that party's favor.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party must initially show the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  An issue is material only if it could affect the result of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The opposing party must then support each essential element with concrete evidence in the record.  See Celotex, 477 U.S. at 322-23; Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment); Hugh, 418 F.3d at 267 ("[T]he non-moving party cannot solely rest upon her allegations.").

### III. DISCUSSION

InductEV moves for Summary Judgment on Hackman's eight remaining claims: hostile work environment (Counts V, VI, X, XI, and XII), race discrimination (Count VII), and retaliation (Counts XVII, XVIII, and XIX).

**1. Hostile Work Environment**

Hackman brings these claims under Title VII and the PHRA.  42 U.S.C. § 2000e-3(a); 43 Pa. Cons. Stat. § 955.  "[C]laims brought under the PHRA are analyzed under the same standards as their federal counterparts."  Bowser v. Clarion Cnty., 206 A.3d 68, 75 (Pa. Commw. Ct. 2019).  To make out hostile work environment based on a co-worker's conduct, a plaintiff must demonstrate:

(1) She suffered intentional harassment based on her race or sex;
(2) the harassment was severe or pervasive;
(3) the harassment detrimentally affected h[er];
(4) the harassment would have detrimentally affected a reasonable person in similar circumstances; and
(5) a basis for employer liability.

Hanafy v. Hill Int'l, Inc., No. CV 22-878, 2023 WL 3010176, at *13 (E.D. Pa. Apr. 19, 2023).

Hackman must show that her workplace was so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). I look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." Whitesell v. Dobson Commc'n., 353 F. App'x 715, 717 (3d Cir. 2009).

InductEV argues that Hackman has not shown that she was subjected to a hostile work environment based on her sex or race. I agree. Judge Pratter summarized Hackman's hostile work environment allegations:

> [Hackman was] accused of stealing time and missing meetings, subject to criticism for her work attendance and work ethic, sabotaged by coworkers, and the butt of jokes about studying physics and coming from the "wrong side of the tracks." A senior co-worker of Ms. Hackman's at InductEV also "[c]ompared [her] to dark chocolate in front of another colleague during a company ice cream day." Tensions between Ms. Hackman and her coworkers allegedly forced Ms. Hackman to undertake "additional labor," including documenting her work for her teammates and getting manager approval before sending emails to her teammates.

(Doc. No. 50 at 12 (citations omitted.)) Hackman offers no evidence to support any of these allegations.

Hackman's arguments are often difficult to understand. To show that she was unfairly accused of stealing time, Hackman offers messages between herself and supervisor Joren Wendschuh, where Hackman recounts a conversation with Judy Talis, InductEV's Director of Human Resources. (Doc. No. 40 at 22.) At no point does Wendschuh accuse Hackman of stealing time—instead, Hackman says that Talis "lightly implied" it during their conversation. (Id.) Light implications, however, do not make out hostility.

Hackman also provides no evidence for her claims that Ms. Talis was dismissive of

Hackman's claims that she was being sexually harassed. Hackman testified that Talis was "the focus" of her discrimination claims and cited the alleged "condescension" in one of Talis's evaluations of Hackman. (Doc. 131-5 at 130.) Hackman contended the evaluation "at least subconsciously" revealed that Talis harbors gender or racial animus. (Id. at 135.) In summary, Hackman relies on Talis's apparent recommendation that Hackman consider visiting the gynecologist treating Ms. Talis' daughter. (Doc. 131-6 at 251.) Hackman provides no context for the remark. Regardless of the remark's appropriateness, however, Hackman has not explained how the recommendation constituted severe and pervasive harassment.

Regarding missed meetings, Hackman acknowledges that she did miss at least one meeting. (Doc. No. 40 at 15.) Moreover, her supporting evidence is a conversation with Wendschuh during which Hackman and Wendschuh discussed Hackman's meeting attendance, with Wendschuh assuring Hackman that it was "just something to watch out for details wise . . . no worries here." (Doc. No. 40 at 20.) Once again, this does not make out hostility.

Hackman's belief that she was the "butt of jokes" appears to stem from a coworker's statement made in introducing Hackman to a new hire: "This is Assata. Shes a technician with a Physics degree . . . she'll be doing better things." (Doc. No. 40 at 17.) Once again, it is difficult to see how this evinces any hostility, especially with respect to Hackman's race or sex. Hackman explained that the statement made her feel like a "commodity." (Doc. No. 131-6 at 231.) In any event, this is not a hostile work environment. See Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) ("[W]e are mindful that 'offhanded comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

Hackman acknowledges that she has produced no evidence to support the "wrong side of

the tracks" remark. (Doc. No. 26.) Hackman's allegation that she was compared to dark chocolate is also unsupported: by Hackman's own account, a coworker simply answered Hackman's question about his favorite ice cream flavors by saying he would be ordering "dark chocolate, if they have it." (Doc. No. 40 at 11.) Finally, Hackman's submissions that ostensibly show she was compelled to do extra work are once again offered with little context, making their significance unclear. Nothing in these submissions or the rest of the record, however, indicates that the additional work she was purportedly ordered to perform had anything to do with her gender or race.

In sum, I will grant Summary Judgment for InductEV on Hackman's hostile work environment claims.

### 2. Racial Discrimination

To make out that she was not promoted to the Senior Technician position because of her race, Hackman must show that (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she was discharged, denied the position, or suffered adverse employment consequences; and (4) those who were not members the protected class were treated more favorably. Tolani v. Upper Southampton Twp., 158 F. Supp. 2d 593, 597 (E.D. Pa. 2001) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). InductEV must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. Hackman must then show "by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

InductEV contends that Hackman cannot make out a prima facie case because the undisputed evidence shows that she was unqualified for the Senior Technician position. I agree.

"A plaintiff must possess the minimal qualifications for a position to establish a prima facie

case of racial discrimination." Satterwhite v. Montgomery Cnty., 497 F. App'x 247, 249 (3d Cir. 2012) (citing Makky v. Chertoff, 541 F.3d 205, 215 (3d Cir. 2018). According to its job description, a Senior Technician requires "8+ years' experience in a test environment for emerging technology." (Doc. No. 131-17 at 3). Hackman acknowledges both this requirement and that she could not meet it. (Doc. No. 141 ¶¶ 26-27, 29.)

Even if I assume arguendo that Hackman has made out a prima facie case, she has not shown that InductEV's legitimate, non-discriminatory reason for not promoting her—that she lacked the requisite experience— was pretextual.

Hackman must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Opsatnik v. Norfolk Southern, 335 F. App'x. at 220, 222 (citing Fuentes, 32 F.3d at 764). Hackman may show more favorable treatment of similarly situated non-class members to make out pretext. Oliver v. Clinical Practices of Univ. of Pa., 921 F. Supp. 2d 434, 450 (E.D. Pa. 2013).

Hackman has not met this burden. She acknowledges that individuals promoted to Senior Technician all had more experience than she did. (Doc. No. 141 ¶ 36.) Hackman alleges that purported "controversy" surrounding the simultaneous promotions of Omar Jackson, an African-American man, and a white male colleague to Senior Technician is circumstantial evidence of InductEV's "ongoing practice of limiting employees on the basis of their race." (Doc. No. 1-2 ¶ 156.) It is difficult to see how this shows racial discrimination. Indeed, Mr. Jackson testified in his deposition that he had "no reason to believe that InductEV made decisions based on race." (Doc. No. 131-9 at 82.) Moreover, as Hackman acknowledged in her Complaint, the white male

colleague had the required eight or more years of experience for the Senior Technician position. (Doc. No. 1-2 ¶ 153.)

In sum, Hackman has not shown that similarly situated non-class member employees received more favorable treatment. She has offered no evidence that InductEV had a discriminatory motive for not promoting her to a position for which she was not qualified.

Accordingly, because Hackman cannot make out a prima facie case of racial discrimination or show pretext, her discrimination claim under Title VII fails.

### 3. Retaliation Claims and Purported Settlement Agreement

Hackman alleges that InductEV retaliated against her by terminating her on September 27, 2022 in response to her filing an administrative complaint on May 9, 2022. 42 U.S.C. § 2000e–3(a); (Doc. No. 1-2 at 39.) InductEV contends that Hackman's retaliation claims fail because Hackman was not terminated but resigned pursuant to the settlement the Parties reached during mediation. Hackman counters that the Parties did not reach an enforceable, binding settlement agreement. I will grant InductEV's Motion because, regardless of whether the settlement agreement was legally enforceable, the undisputed evidence shows that the company did not allow Hackman to return to work because it believed the matter had settled—not for a retaliatory motive. Hackman thus cannot meet her burden under Title VII.

To make out a prima facie case of retaliation, a plaintiff must provide evidence that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her after or contemporaneous with the protected activity; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 340–341 (3d Cir.2006).

Once an employee establishes a prima facie case, the employer must articulate a

permissible reason for the action. Krouse v. Am. Sterilizer Co._, 126 F.3d 494, 500 (3d Cir.1997). The employer's burden at this stage is "relatively light: it is satisfied if the [employer] articulates any legitimate reason for the [adverse employment action]; the [employer] need not prove that the articulated reason actually motivated the [action]." Id. (quoting Woodson v. Scott Paper, 109 F.3d 913, 920 n. 2 (3d Cir.1997)). If the employer satisfies this burden, the employee must establish by a preponderance of the evidence that the employer's purportedly legitimate reason was a pretext. Id.

Both Parties have focused on the validity of the oral settlement agreement. Indeed, Judge Pratter ruled that an oral settlement agreement could be enforceable. (Doc. No. 49 at 5.) Regardless of the enforceability of the agreement, however, Hackman still cannot make out retaliation under Title VII. Hackman has shown no causation between the filing of her EEOC Complaint and her termination. Both Hackman and InductEV's supporting evidence reveal no genuine dispute of material fact regarding the reasoning behind Hackman's termination: InductEV believed that this case had settled.

Hackman's sole evidence of a causal connection is that she was fired on September 27, 2022, eight days after the mediation session on September 19th. (Doc. 100 at 2.) This is absurd. To prevail on a retaliation claim based on timing alone, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). Almost five months elapsed between the filing of Hackman's administrative Complaint on May 9, 2022, and her "firing." (Doc. No. 100 at 2.). This timing is not suggestive of a retributive motive. Compare Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n.5 (3d Cir. 2000) (two days between protected activity and adverse action sufficient to establish causation), with Killen v. N.W. Human Servs., Inc., No. 6-4100, 2007

WL 268541, at *8 (E.D. Pa. Sept. 7, 2007) (temporal proximity of seventeen days insufficient to establish causation).  Moreover, although "mere passage of time is not legally conclusive proof against retaliation," there must be "evidence of intervening antagonism or retaliatory animus."  Krouse, 126 F.3d at 503-04.  Hackman makes no such showing.  To the contrary, her termination eight days after the mediation confirms that InductEV believed it had reached a settlement at the mediation.

Once again, even if I assume arguendo that Hackman has made out a prima facie case, she has not shown that InductEV's legitimate, non-retaliatory reason for terminating her—that she had agreed to resign and release all her claims— was pretextual.  Hackman offers no evidence, much less an evidentiary preponderance, that InductEV's belief that the case has settled was a pretext to retaliate against her for filing an administrative Complaint five months earlier.

Accordingly, I will grant Summary Judgment in InductEV's favor on the retaliation claims.  I will also deny Hackman's various Motions for Summary Judgment on these claims.  (Docs. No. 89, 92, 100.)

## IV.  CONCLUSION

In sum, I grant Summary Judgment in favor of InductEV.

*          *          *

**AND NOW**, this 27th day of November, 2024, it is hereby **ORDERED** that:

1. Hackman's Motions for Summary Judgment (Doc. Nos. 89, 92, 105) are **DENIED**.

2. InductEV's Motion for Summary Judgment (Doc. No. 131) is **GRANTED**.

3. Judgment is **ENTERED** in favor of InductEV.

4. The Clerk of Court **SHALL** close this case.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*<br>Paul S. Diamond, J.